UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

IPS WORLDWIDE, LLC                          Chapter 11

                                                                 Case No. 6:19-bk-00511-KSJ

       Debtor.
_____/

**EMERGENCY MOTION OF RESOURCE LOGISTICS GROUP, INC., AND
STEVEN HUNTLEY TO DECLARE ASSET PURCHASE AGREEMENT
NULL AND VOID, TO DEEM THE EMPLOYMENT AGREEMENT
OF STEVEN HUNTLEY REJECTED OR, IN THE ALTERNATIVE,
FOR ENTRY OF AN ORDER COMPELLING THE DEBTOR TO ASSUME
<u>OR REJECT THE AGREEMENTS PURSUANT TO 11 U.S.C. § 365(D)(2)</u>**

*[EMERGENCY HEARING REQUESTED]*

Resource Logistics Group, Inc. ("Resource") and Steven Huntley, individually, and as the principal owner of Resource, move this Court, pursuant to 11 U.S.C. § 365(d)(2) and Fed. R. Bank. P. 6006(b) and 9014, for the entry of an order declaring the Asset Purchase Agreement ("APA") (redacted and attached as **Exhibit "A" without exhibits due to length**) executed post-petition between Resource and IPS Worldwide, LLC (the "Debtor") to be null, void and of no effect, and to deem the pre-petition Employment Agreement between the Debtor and Steven Huntley (the "Employment Agreement") to be rejected or, in the alternative, for the entry of an order compelling the Debtor to assume or reject the APA and the Employment Agreement (collectively the "Agreements"). In support, Resource states:

1
**GUNSTER**
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

WPB_ACTIVE 9171370.1

**STATEMENT OF RELEVANT FACTS**

1. Since May of 2018, Resource and Debtor have been engaged in extensive and exhaustive negotiations regarding Resource's potential acquisition of the assets of the Logistics Carrier Contract Management Division of IPS (the "Division"), including, without limitation, certain contracts between IPS and customers of the Division (the "Contracts").

2. Stated in its simplest terms, the proposed transaction contemplated Resource purchasing the Contracts for a stated monetary consideration (the "Monetary Consideration"), Resource thereafter continuing to provide the required services under the Contracts, and Resource paying the Debtor a percentage of the net profits received by Resource in connection with the servicing of such Contracts ("Post-Closing Payments").

3. After an extensive negotiation process, during which the economic terms of the transaction, including the Monetary Consideration and the terms of the Post-Closing Payments were heavily negotiated, the closing of the transaction occurred on January 25, 2019 at approximately 4 o'clock p.m. with the execution of the APA. Although the APA was executed on January 25, 2019, the Debtor, Resource and Mr. Huntley agreed to an effective date of January 1, 2019 for purposes of the transaction.

4. Upon information and belief, the Debtor's voluntary Chapter 11 bankruptcy petition was filed approximately two (2) hours prior to its execution of the APA, or around 2:10 p.m.

5. At all times prior and through the execution of the APA, the Debtor concealed from Resource, Mr. Huntley, and their associated professionals that it was considering filing bankruptcy.

6. In fact, during the negotiation process, Resource proposed, on or about January 10, 2019, that its obligations for the Post-Closing Payments would automatically terminate in the event of the Debtor's filing of a bankruptcy petition or similar event, and when the Debtor rejected this proposal on or around January 17, 2019, it did not then indicate that it was considering filing for bankruptcy.  Also, in the APA, the Debtor expressly represents and warrants that, among other things: (a) it has no knowledge of any facts which will or may reasonably be expected as of the closing date of the transaction to have any adverse effect on the value of any of the assets purchased or upon any of the prospects or earning power for any such asset following the closing date, (b) as of the closing date, there are no proceedings involving IPS [the Debtor], the Division or the assets being purchased, and (c) any representation or warranty of IPS [the Debtor] under the APA, or any statement or other document delivered by or on behalf of IPS [the Debtor] under the APA contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained herein or therein not misleading.

7. The APA also provided for the termination of the Employment Agreement that existed between Mr. Huntley and the Debtor in Section 3.2.  Section 3.2 provided, in part, that the Employment Agreement:

> " . . . is hereby terminated, and – except as provided in the following sentence – Huntley shall have no obligations or liabilities of any kind in connection with the Employment Agreement, including, without limitation, the restrictive covenants contained in Section 7 of the Employment Agreement.  Notwithstanding the preceding sentence to the contrary, both Huntley and Assignee (Resource) shall be bound by Sections 8 and 9 of the Employment Agreement, which Sections are, by this reference, made a part hereof and incorporated herein, but such obligations shall not apply to the Business, the Assets, or the Contracts.  On or before the Closing Date, Assignor shall pay all amounts due to Huntley under the Employment agreement through the Effective Date, including, without limitation, all salary, expense reimbursements, incentive compensation and commissions.

8. It was not until Saturday, January 26, 2019 at about 9:45 a.m., the day after the APA was executed by the parties, that Mr. Huntley learned the Debtor filed its bankruptcy petition [ECF No. 1] on January 25, 2019. This was obviously a shocking and concerning development.

9. To make matters worse, contrary to the provisions of section 3 and 4 of the Employment Agreement, Mr. Huntley has not received the compensation set forth therein and the total amount the Debtor owed Mr. Huntley as of the petition date is $48,288.35. The $48,288.35 is comprised of pre-petition wages of $16,084.62 and a 4th Quarter 2018 bonus of $32,203.73.

10. While Mr. Huntley and Resource learned the execution of the APA and the Debtor's bankruptcy filing occurred on the same day, it was initially unclear whether the Debtor's petition was filed before or after the APA's execution. Resource and Mr. Huntley recognized this timing issue would need to be presented to this Court.

11. After learning that the execution of the APA did in fact occur after the Debtor's bankruptcy filing, Resource and Mr. Huntley (through counsel) attempted to work out terms and conditions for an asset purchase agreement with the Debtor (through its counsel) to be brought before and approved by this Court (the execution of the APA was null and void and of no effect given that the Debtor no longer had authority to enter into a contract after its bankruptcy filing without this Court's approval). See 11 U.S.C. § 549. The parties have been unable to reach an amicable resolution as of the filing of this Motion.

12. Resource seeks an order of this Court declaring, determining, or clarifying that the APA is null, void and of no effect as an unauthorized post-petition transfer without Court

authority and that Resource is relieved of and release from any obligation or responsibility relating thereto.

13. Mr. Huntley, individually, seeks an order of this Court that the Debtor's actions, both pre and post-petition, constitute a *per se* rejection and pre-petition breach by the Debtor of Mr. Huntley's Employment Agreement. Further, that the consequence of the deemed rejection and declaration of the Debtor's pre-petition breach relieves Mr. Huntley of his obligations thereunder including the restrictions contained in paragraph 7 of the Employment Agreement.

14. Alternatively, if it is determined that the APA or the Employment Agreement are neither void nor previously rejected, then Resource and Mr. Huntley submit that cause exists for this Court to enter an Order (a) scheduling a hearing on this Motion on shortened and limited notice for February 11, 2019 at 11:00 a.m., (b) directing the Debtor to immediately assume or reject the APA and the Employment Agreement, (c) relieving Resource from any obligations set forth in the APA until the Debtor assumes or rejects the APA, (d) providing that if the Debtor fails to timely assume or reject the APA, then the APA shall be deemed rejected pursuant to 11 U.S.C. § 365(g), and (e) providing that if the Debtor fails to timely assume or reject the Employment Agreement, then the Employment Agreement shall be deemed rejected and that Mr. Huntley be relieved of all of his obligations thereunder, including all restrictive covenants.

15. The consequences of the Debtor's pre- and post-petition actions have severely damaged Resource and Mr. Huntley. Any delay in addressing the issues raised by this Motion will cause continuing damage to Resource, Mr. Huntley, and the Debtor's customers under the Contracts which were the subject of the APA.

**ARGUMENT**

I.    **The APA is Null, Void, and of No Effect**.

It is fundamental law under the Bankruptcy Code that all assets of a debtor become property of the bankruptcy estate upon the filing of a bankruptcy petition. See 11 U.S.C. § 541(a). The automatic stay of 11 U.S.C. § 362(a) and the restrictions against unauthorized post-petition transfers in 11 U.S.C. § 549 effectively prohibit post-petition transfers of the debtor's assets to occur where such transactions are outside the ordinary course of business.

The Debtor, acting with full knowledge that it had already filed its Chapter 11 petition, proceeded with the execution of the APA without informing Resource or Mr. Huntley. The Debtor failed to identify the APA transaction in its initial filings and has not sought Court authorization or approval for its post-petition actions. As such, the legal consequence of the Debtor's purported sale of certain assets of the Debtor as set forth in the APA is null, void and of no effect. However, for the sake of clarity and disclosure to all parties in interest, Resource requests that this Court make that declaration and determination.

If, however, this Court determines the APA to be a valid contract between the parties, then, in the alternative, Resource moves to compel the Debtor to immediately assume or reject the APA. If the Debtor elects to assume the APA, then such assumption must be founded upon strict compliance with the provisions of section 365(b)(1) of the Bankruptcy Code, requiring that the Debtor (A) cure, or provide adequate assurance that it will promptly cure, its defaults under the APA, (B) compensate, or provide adequate assurance that it will promptly compensate, Resource for its actual pecuniary loss resulting from such defaults, and (C) provide adequate assurance of future performance under the APA. Failing strict compliance by the Debtor with

these statutorily mandated conditions precedent to assumption, the Court should deem the Agreement immediately rejected and return the parties to the status quo.

### II. This Court Should Determine that the Debtor Rejected the Employment Agreement and that Mr. Huntley is Relieved from the Restrictions Contained in the Employment Agreement.

The APA, which is null and void, purported to terminate Mr. Huntley's Employment Agreement with the Debtor. *See* Exhibit A at ¶ 3.2. To make matters worse, the Debtor is in breach of the Employment Agreement, by amongst other things, failing to pay Mr. Huntley pre-petition wages of $16,084.62 in salary and a bonus of $32,203.73. Given the circumstances which include, the Debtor's knowing misrepresentations to Mr. Huntley concerning its bankruptcy filing, along with its failure to pay Mr. Huntley his owed salary and bonus, this Court should determine that the Debtor has rejected the Employment Agreement. Indeed, given the facts as currently constituted, there is no possible way that the Debtor could provide the necessary cure or assurances required by 11 U.S.C. § 365(b)(1) in order for it to assume the Employment Agreement.

The legal effect of the Debtor's rejection of the Employment Agreement is that it constitutes a breach of the contract deemed to have occurred immediately prior to the petition date. See 11 U.S.C. § 365(g). Furthermore, it cannot be disputed that the Debtor is already in breach of the Employment Agreement, for amongst other reasons, failing to pay Mr. Huntley pre-petition wages he has earned.

The legal effect of these breaches requires this Court to relieve Mr. Huntley from the restrictions contained in the Employment Agreement. *See* Hipcricket, Inc. v. mGage, LLC, CV 11135-CB, 2016 WL 3910837, at *15 (Del. Ch. July 15, 2016), judgment entered, (Del. Ch. 2016).

In Hipcricket, the court was asked to determine what effect a debtor's rejection of an employment agreement, which contained a restrictive covenant, had on the debtor's ability to enforce that covenant. It went through a thorough analysis starting with the premise that the rejection of the employment agreement constituted a breach of contract. *Id.* at * 11. Next, the court reasoned that state law determines the parties' rights as a result of the breach. *Id.* (citing *In re Lavigne*, 114 F.3d 379, 387 (2d Cir. 1997)). The court, applying Washington law (which recognizes the first breach doctrine), found that the non-compete agreement was no longer enforceable given the debtor's breach. *Id.*

This Court should follow Hipcricket's analysis. Indeed, Florida, like Washington, recognizes the doctrine of first breach. *See i.e.* Taylor v. Genesee & Wyoming Inc., 2015 WL 12683821, * 5-7 (M.D. Fla. Sep. 25, 2015) (applying Florida law); Cordis Corp. v. Prooslin, 482 So. 2d 486, 490 (Fla. 3d DCA 1986). The Debtor's breach of the Employment Agreement relieves Mr. Huntley from the non-solicitation restriction provision contained therein.

If, however, this Court does not deem the Employment Agreement to be rejected *per se* it should require the Debtor to immediately assume or reject the same. The Debtor essentially defrauded Mr. Huntley into executing the APA, while simultaneously failing to pay him monies he was owed. Now Mr. Huntley is out of a job and is in limbo. He is currently unable to respond to the customers whose Contracts he thought Resource was purchasing under the APA, and his reputation is further damaged with every second that goes by. Requiring the Debtor to make this decision expeditiously will give Mr. Huntley the certainty necessary to pursue his career and earn a living. On the other hand, the Debtor will suffer no prejudice by being required to make this decision on an expedited basis.

WHEREFORE, Resource and Mr. Huntley seek an order of this Court: (a) scheduling a hearing on this Motion on an emergency basis for February 11, 2019 at 11:00 a.m.; (b) declaring, determining, and clarifying that the APA is null, void and of no effect as an unauthorized post-petition transfer without Court authority and that Resource is relieved of and released from any obligation or responsibility relating thereto; (c) declaring, determining and clarifying that the Debtor's actions, both pre and post-petition, constitute a *per se* rejection and pre-petition breach by the Debtor of Mr. Huntley's Employment Agreement; (d) directing that the consequence of the deemed rejection and declaration of the Debtor's pre-petition breach relieves Mr. Huntley of his obligations thereunder including the restrictions contained in paragraph 7 of the Employment Agreement; (e) Alternatively, if it is determined that the APA or the Employment Agreement are neither void nor previously rejected, then Resource and Mr. Huntley submit that cause exists for this Court to enter an Order directing the Debtor to immediately assume or reject the APA and the Employment Agreement, relieving Resource from any obligations set forth in the APA until the Debtor assumes or rejects the APA, providing that if the Debtor fails to timely assume or reject the APA, then the APA shall be deemed rejected pursuant to 11 U.S.C. § 365(g), and providing that if the Debtor fails to timely assume or reject the Employment Agreement, then the Employment Agreement shall be deemed rejected and that Mr. Huntley be relieved of all of his obligations thereunder, including all restrictive covenants; and (f) granting such other relief as

may be just and proper, including but not limited to an award of costs, including a reasonable attorneys' fees.

        Respectfully submitted,

        GUNSTER

        401 E. Jackson Street, Suite 2500
        Tampa, Florida 33602
        (813) 222-6630; Fax: (813) 228-6739

        and

        600 Brickell Avenue, Suite 3500
        Miami, Florida 33131
        (305) 376-6000; Fax: (305) 376-6010

        By: /s/ Kenneth G.M. Mather
        Kenneth G.M. Mather
        Florida Bar No. 619647
        E-mail: kmather@gunster.com
        Michael B. Green
        Florida Bar No. 0087571
        E-mail: mgreen@gunster.com