**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| In re | Chapter 11 |
| IPS WORLDWIDE, LLC, | Case No. 6:19-bk-00511-KSJ |
| Debtor. | |

**STANLEY BLACK & DECKER INC.'S MOTION**
**TO APPOINT CHAPTER 11 TRUSTEE**

**Hearing Previously Scheduled**
**March 26, 2019 at 1:00 p.m.**

Stanley Black & Decker, Inc. ("**SBD**"), by and through undersigned counsel and pursuant to Section 1104(a) of the Bankruptcy Code, 11 U.S.C. §1104(a), hereby files this Motion to Appoint Chapter 11 Trustee (the "**Motion**"). In support of this Motion, SBD respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.  The Examiner's Interim Report (ECF #182) (the "**Interim Report**"), taken together with the entire history of the record before the Court, amply demonstrates the compelling need for the appointment of a Chapter 11 Trustee under the standard imposed by section 1104(a) of the Bankruptcy Code. Indeed, as argued to the Court at the hearing on March 7,[1] this Debtor checks all four of the itemized "cause" boxes of "fraud, dishonesty, incompetence [and] gross mismanagement" set forth in that section.

---

[1] In light of the Interim Report and the argument already presented to the Court at the March 7 hearing, the instant Motion will not revisit all of the points of reference in great detail, but rather incorporates that argument by reference as if fully set forth herein.

2.	In addressing the circumstances here, SBD requests that the Court take note of two of the mandatory provisions of section 1104:

a.	That upon a showing of "cause" as referenced above, or "if such appointment is in the best interests of creditors, equity security holders, and other interests of the estate" under section 1104(a) and (b), the Court "shall order the appointment of a trustee."  11 U.S.C. §1104(a)(1), (2).

b.	That similarly, "if there are reasonable grounds to suspect that current members of the governing body of the debtor, the debtor's chief executive or chief financial officer, or members of the governing body who selected [those officers],[2] participated in actual fraud, dishonesty, or criminal conduct in the management of the debtor" as set forth in section 1104(e), "[t]he United States trustee shall move for the appointment of a trustee under [1104](a)." 11 U.S.C. §1104(e).

3.	From the very first hearing in this case on February 4, 2019 it has been made abundantly clear to the Court by SBD and other of the largest creditors in the case[3] that a yet-unconfirmed amount of customer money estimated at no less than $50-70 million has been lost, diverted or stolen and remains unaccounted for.  Notwithstanding its instructive glimpses into other aspects of the sordid history of the Debtor's internal operations – *including the express finding that "The company's leadership does not have sufficient knowledge to lead the day to*

---

[2]  In this regard, neither the Examiner's recent "lock-out" of the Debtor's CEO and CFO from the premises and computer systems, nor their removal from those executive capacities, can remove Messrs. Davies and McNett from "the governing body" of the Debtor.  Only a Trustee can supplant the board of members or replace Davies and McNett on the board, should they seek to avoid the appointment of a Trustee by resigning from the board.

[3]  The Debtor's repeated revision of the liability amounts set forth in its Schedules and List of 20 Largest Creditors are, at minimum, but further evidence of the continuing incompetence and "gross mismanagement" of its affairs by current management.

*day operations effectively*"[4] -- the Interim Report fails to mention this unexplained loss. Instead, the Interim Report presents to the Court a picture of a Debtor facing common financial challenges when, in point of fact and as amply demonstrated below, there is nothing that is routine or commonplace about the pre-petition history of this Debtor, and abundant "cause" exists to mandate the appointment of a Chapter 11 Trustee.[5]

## GENERAL FACTUAL BACKGROUND

4. On January 25, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code (the "**Code**").

5. The Debtor is operating its businesses and managing its financial affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Code. Prior to this Motion, no chapter 11 trustee had been appointed and no request for a chapter 11 trustee had been made.

6. On February 14, 2019, the United States Trustee ("**UST**") appointed Maria Yip as Examiner (the "**Examiner**"). On March 6, 2019, Ms. Yip filed the Interim Report. ECF#182.

7. On February 15, 2019, the UST appointed an Unsecured Creditors Committee. ECF #130

---

[4] ECF #182 at ¶140(c). Again here, it is regrettable that the Interim Report would attribute the unexplained loss or diversion of customer funds that occurred under the watch of Davies and McNett to a lack of "sufficient knowledge" or effectiveness in their leadership.

[5] SBD continues to believe that if this case is allowed to remain a case under Chapter 11 the estate will become administratively insolvent in short order. Nevertheless, SBD elects at this stage to seek appointment of a Chapter 11 Trustee in the belief that once appointed the Trustee will make an appropriate determination whether to seek conversion of the case to a case under Chapter 7 under 11 U.S.C. §1112.

## FACTS SUPPORTING APPOINTMENT OF A TRUSTEE

**A.    Fraud and Dishonesty Regarding Segregation of the Missing Customer Funds**

8.    It should not be lost on the Court that notwithstanding the various service lines in which the Debtor has been engaged throughout its existence, the essence of its business operation always has involved the handling of other people's money.  In recent years the amount of customer funds entrusted to the Debtor has reached or exceeded One Billion Dollars ($1,000,000,000) a year, including more than $306 million funded by or for the benefit of SBD alone for the sole and express purpose of paying invoices generated by as many as 380 separate freight partners.  Throughout this same period the Debtor's own gross revenues were far more modest; indeed, its sworn filings in this case show revenues of $8.6 million in 2018.  *See* Statement of Financial Affairs for Non-Individuals Filing Bankruptcy (ECF # 92 & 100).

9.    Notably, and as admitted repeatedly at the February 4 and 11 hearings in this case, the amounts funded by customers were intended to be held in what Debtor's counsel referred to as "trust accounts" – designated, segregated accounts for each customer earmarked and administered solely for the purpose of paying the carrier and other obligations of that IPS customer.  SBD sought and obtained express confirmation of this segregation policy from Debtor's Chief Financial Officer Michael McNett in April of 2018 (ECF #193), and relied on that clear and unqualified confirmation in maintaining its substantial business relationship with the Debtor.

10.    Alas, it now appears that there was no "trust account" or segregated account for the payment of SBD's freight partners -- that McNett <u>fraudulently and dishonestly</u> misrepresented that fact, in writing, to SBD.  It further appears that the email exchange referenced above is not the first or only one of the transgressions committed by McNett in his

capacity as a chief financial officer. As reflected in the Request for Judicial Notice filed by March 7, 2019 (ECF #192), McNett previously stipulated to the entry of a $4 million federal judgment against him in the Central District of California in 2001, for fraud and defalcation in connection with his role as CFO for an entity involved in the construction of the Singapore Convention Center. And as further announced to the Court at the hearing on March 7, SBD is in the process of obtaining admissible copies of public records confirming that on the basis of that same fraud McNett was indicted on 14 counts of grand larceny and related charges in Queens County, New York in 2006, pleaded guilty to two of those counts, and served 6 ½ years in prison prior to his release on terms that are not entirely clear and are believed to include parole that continues to this day.[6]

11. Notwithstanding the time expended by the Examiner in preparing and presenting a 42-page Interim Report, it was left to SBD to report to the Court at the March 7 hearing that on the basis of its independent investigation into McNett's background, his Singapore escapade and the $4 million civil judgment entered against him led to a criminal indictment, plea, conviction, and imprisonment. SBD is in the process of obtaining admissible evidence to establish the fact of that criminal proceeding.

B.  **Fraud and Gross Mismanagement Regarding Multiple Insider Transactions**

12. As amply demonstrated in the Interim Report, throughout an extended period of years prior to the Chapter 11 filing – right up to the Petition Date itself – the senior management

---

[6] Against this background, is it mere coincidence that for reasons that remain unclear to the Examiner, the Debtor maintains a business office in Singapore that "sends a monthly expense package and the US operations funds the bank accounts in Singapore, replenishing the funds as needed"? ECF #182 at ¶40(c). And is it not deeply disturbing that, like the Debtor's other foreign offices, the Singapore office "rel[ies] on monthly funding from the Debtor's U.S. operations to cover payroll, rent and utilities expenses" or that the source of funds for maintaining these foreign offices was likely co-mingled, *customer* money—allowing the Debtor to maintain its foreign offices/entities with other people's money? *Id.* at ¶41.

of the Debtor has engaged in a series of insider loans and transactions from which the conclusion is inescapable that Davies and McNett utilized the Debtor – and presumably the customer funds that were to have been earmarked for payment of specific obligations – as a personal piggy bank for themselves, their families and other affiliates. *See* ECF #182 at pp. 27-32.  In particular, and without overlooking the many other transparently fraudulent and improper transfers, three specific transactions stand out:

    a. Dacaco Loan to ExFreight -- In the very first transaction described at page 27 of the Interim Report, the Debtor's parent company Dacaco made what was purported to be a loan to the Debtor's sister entity Exfreight of Florida, LLC in the amount of $1.25 million.  Of that amount, the Interim Report reflects that $905,000 came from Bank of America account no. 4157 that consisted of commingled customer funds.  These funds were not the Debtor's to lend, and certainly not Dacaco's to lend; however, the sum and substance of the transaction is that the Debtor's parent was permitted to invade customer funds in the Debtor's accounts so that the parent could make what purported to be a loan to another related entity that would be payable not to the Debtor but to the parent!  And as the Interim Report further concludes, as of the Petition Date the amount of $1.147 million of this misappropriation and diversion of customer funds masquerading as a "loan" remains unpaid.  *See* ECF #182 at ¶¶84-91.  Equally disconcerting, the Interim Report does not acknowledge that on its face, the Dacaco loan *cannot* be legitimate, and that the money used for this purported inter-company "loan" belonged to *neither* of the identified parties to that loan.

    b. IPS loans to Freight Rate Co.—From May 2013 through January 2019, IPS purported to lend over $1.7 million to a company that is owned by Davies. According to the Debtor's (and Freight Rate's) accountants at Klayer and Associates, those funds were necessary because, "Freight Rate has trouble making payroll and paying rent and often relies on loans from the Debtor to keep the company operating." ECF #182 at ¶ 82. Essentially, the Debtor used the money deposited by its customers to keep another of Davies undercapitalized and mismanaged companies afloat.[7]

    c. Davies Sale of River View Road Property – Of all the illicit insider transactions, this one is not the largest but certainly the most blatant. As described in the Interim Report, "According to Davies, he sold the [628 River View Road Property] to the Debtor ***because he needed the funds***." ECF #182 at ¶103 (emphasis added). The Interim Report proceeds to explain that the Debtor paid 2016-2018 real estate taxes on this property that it bought for $375,000, and then sold it for a $69,000 loss – *on the Petition Date!* Nowhere does the Examiner describe what evidence she obtained from Davies regarding the putative business purpose of the sale of a personally-owned undeveloped parcel to IPS. The Interim Report is silent as to why IPS, a freight pay business with too many offices to begin with, would need or want a piece of unimproved land. Certainly, the rationale offered by Davies for the sale -- that *he*, *personally*, *needed the funds* --

---

[7] In evaluating the Debtor's pending Application to employ Klayer and Associates as its accountants and the Objection to that Application filed by SBD (ECF #201 & 203), it is important for the Court to consider that firm's apparent justification for this grossly improper misuse of funds.

constitutes an outright admission of self-dealing and financial mismanagement -- an admission that is left hanging, without comment.

13. Standing alone, these three insider transactions would be enough to compel the appointment of a Chapter 11 Trustee. Standing on the shoulders of an unexplained $50-70 million loss of customer funds that were to have been placed in "trust accounts" or otherwise segregated and earmarked for the payment of specific expenses, the insider transactions reflect a pattern of fraud, dishonesty, incompetence and gross mismanagement seldom encountered even in the worst of Chapter 11 debtors.[8] Upon these facts and the authorities referenced below, the Court must appoint a Trustee under section 1104(a) of the Code.

## STANDARD FOR REQUESTED RELIEF

14. "The appointment of a trustee is a power which is critical for the Court to exercise in order to preserve the integrity of the bankruptcy process and to insure that the interests of creditors are served." *In re Matter of Intercat, Inc.*, 247 B.R. 911, 920 (Bankr. S.D. Ga. 2000).

15. Pursuant to 11 U.S.C. § 1104(a), courts are directed to appoint a trustee upon the finding of cause, or if the appointment is in the best interest of creditors and the estate, and provides in pertinent part as follows:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee--
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;

---

[8] It should not go unmentioned here that even in the aggregate these and the other illicit insider transactions described in the Interim Report do not begin to offer an explanation for the loss or diversion of over $50 million in customer funds.

>> (2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate, without regard to the number of holder of securities of the debtor or the amount of the assets or liabilities of the debtor;
>
> ….

11 U.S.C. § 1104(a)(1) and (2) (2007). SBD asserts both that "cause" exists for the appointment of a Chapter 11 trustee and that the appointment of a Chapter 11 trustee is in the best interests of the Debtor's estate and creditors under 11 U.S.C. § 1104.

16. The inquiry into whether "cause" exists for the appointment of a trustee is not limited to the enumerated list of "fraud, dishonesty, incompetency or gross mismanagement," but also includes, (a) lack of evenhandedness in dealing with insiders or affiliated entities vis-à-vis other creditors or customers; (b) the existence of pre-petition voidable preferences or fraudulent transfers; and (c) self-dealing by management or waste/squandering of corporate assets. *See Intercat,* 247 B.R. at 921 (finding cause to appoint a trustee based on the debtor's management's loans to himself and failure to repay those loans during periods when corporation was sustaining large financial losses, management's charging of thousands of dollars for personal travel expenses and causing the corporation to deduct those expenses as business expenses, and the diversion of royalty payments from the Debtor to a company owned by management).

17. In a business where the Debtor's primary purpose is to receive money from customers to pay those same customers' vendors (*see* ECF #182 at ¶29 ("freight audit, IPS Pay"), there is no explanation as to why those vendors were not paid and why customers are out between $50 million and $70 million, other than fraud, dishonesty, incompetency or gross mismanagement. *See* Debtor's Schedules, ECF #92 & 100. In addition to the missing funds, the Interim Report gives further evidence of cause through the management's use of Debtor funds (which were really customer funds) to fund homes for management and management's family

9

members (ECF #182 at ¶¶92-102 & 109-112), as well as the additional insider transactions as described in ¶12, *supra*. *See Abdulla v. Klosinski*, 523 Fed. Appx. 580, 587 (11th Cir. 2013) (concluding that the district court's finding that "[t]he catalogue of [Abdulla]'s personal transfers in and out of the corporation is long, and the corporation's financial situation was quickly deteriorating" were reasonable grounds to seek appointment of a trustee under §1104(a)).

18. In addition, the Court should consider the Singapore situation in which McNett stipulated to an entry of a $4 million judgment. As the Director of Finance for Seacliff Limited, he "made false representations to [Seacliff] by submitting false payment vouchers for personal advances and cash advance requests"…"with the expectation that [Seacliff] would reimburse him; Mr. McNett submitted the false claims with the intention and purpose of deceiving [Seacliff]." ECF # 192.

19. The Bankruptcy Code makes clear that once creditors have established and the Court has found "cause" to exist under § 1104(a)(1), the creditors have an absolute entitlement to the mandatory appointment of a Chapter 11 Trustee. *See In re SunCruz Casinos, LLC*, 298 B.R. 821, 828 (Bankr. S.D. Fla. 2003) (appointing a trustee where the Court found that the management had numerous conflicts of interest, including significant amounts owed to Debtor, and finding "[u]nder these circumstances it is highly improbable that Debtor can gain and maintain the confidence of unsecured creditors and the secured lenders in sufficient measure to support rehabilitation.").

20. The preference for a debtor to remain in possession is based on its familiarity with the business both before and after the filing of bankruptcy. *See In re Marvel Entertainment Group, Inc.,* 140 F.3d 463, 471 (3d Cir. 1998). However, the Examiner concluded that the "company's leadership does not have sufficient knowledge to lead the day to day operations

effectively and should not continue receiving compensation." ECF #182 at ¶140(c).  Indeed, based on communications with the Examiner, the management of the company, Messrs. Davies and McNett, has been locked out of the company, both physically and technologically, thus further obviating the need for a trustee to be put in place.

21.     The appointment of a chapter 11 trustee will allow a disinterested person to take over the Debtor, remove the current management from the governing body of the Debtor, determine if any value exists for creditors, and move this case forward to maximize that value.

WHEREFORE, SBD respectfully requests that this Court (a) enter an Order appointing a Chapter 11 trustee in this case and (b) grant such other and further relief as is appropriate under the circumstances.

Dated: March 14, 2019                                               Respectfully submitted,

GREENBERG TRAURIG, P.A.
Bank of America Plaza
101 E. Kennedy Blvd., Suite 1900
Tampa, FL 33602-5148
Telephone: 813.318.5700
Facsimile: 813.318.5900

By: /s/ Danielle S. Kemp
Danielle S. Kemp, Esq.
Florida Bar No. 474355
Email: kempd@gtlaw.com

- and –

I. William Spivey II, Esq.
Florida Bar No. 701076
email: spiveyw@gtlaw.com
450 South Orange Avenue
Suite 650
Orlando, FL 33131
Telephone: 407.420.1000
Facsimile: 407.420.5909

-and-

Mark D. Bloom

Florida Bar No. 303836
email: bloomm@gtlaw.com
333 SE 2nd Avenue
Miami, FL 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

*Attorneys for Stanley Black & Decker, Inc.*

# CERTIFICATE OF SERVICE

      I hereby certify that on March 14, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day via transmission of Notice of Electronic Filing generated by CM/ECF on all counsel of record or *pro se* parties who are authorized to receive electronically Notices of Electronic Filing in this bankruptcy case.

                                                 */s/ Danielle S. Kemp*
                                                  Danielle S. Kemp Esq.

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

Audrey M Aleskovsky Audrey.M.Aleskovsky@usdoj.gov

Mark D Bloom bloomm@gtlaw.com, mialitdock@gtlaw.com;miaecfbky@gtlaw.com

Daniel C Bruton dbruton@belldavispitt.com

Robert W Davis, Jr robert.davis@hklaw.com, Migdalia.Petrovich@hklaw.com

Denise D Dell-Powell ddpowell@burr.com, dmartini@burr.com;ccrumrine@burr.com

Gregory R. Farkas gfarkas@frantzward.com, dlbeatrice@frantzward.com

George W. Fitting gfitting@mcguirewoods.com

Holmes P Harden hharden@williamsmullen.com

Michael A. Kaufman michael@mkaufmanpa.com, kaufmanesq@gmail.com,diamondmk@aol.com,

Danielle S Kemp kempd@gtlaw.com, muehlfeldern@gtlaw.com;tpalitdock@gtlaw.com

Samuel M Koda, Jr. samuel.koda@te.com

John F. Kostelnik jkostelnik@frantzward.com

Lawrence M Kosto lkosto@kostoandrotella.com, lmksec@kostoandrotella.com

Justin D Kreindel justin.kreindel@wilsonelser.com

Rhys P Leonard rpleonard@trenam.com, mwoods@trenam.com;mmosbach@trenam.com

Stephanie C Lieb slieb@trenam.com, dmedina@trenam.com,mmosbach@trenam.com

Jordan D Maglich jordan.maglich@quarles.com, donna.santoro@quarles.com

Kenneth G M Mather kmather@gunster.com, tkennedy@gunster.com;mweaver@gunster.com

Courtney A McCormick cmccormick@mcguirewoods.com, sjerreld@mcguirewoods.com; flservice@mcguirewoods.com

Brian A McDowell brian.mcdowell@hklaw.com, migdalia.petrovich@hklaw.com

Leanne McKnight Prendergast Leanne.Prendergast@fisherbroyles.com, l3annemp@gmail.com

Glenn M Reisman glenn.reisman@ge.com

Edwin G Rice erice@bradley.com, ddecker@bradley.com; djones@bradley.com; mmckay@babc.com

Traci H Rollins traci.rollins@squirepb.com, lauren.kennedy@squirepb.com; carol.lesnick@squirepb.com;wpb_dckt@squirepb.com

Bradley M Saxton bsaxton@whww.com, scolgan@whww.com; scolgan@ecf.courtdrive.com;csmith@whww.com;csmith@ecf.courtdrive.com

Elliot M Smith elliot.smith@squirepb.com

Scott W Spradley scott@flaglerbeachlaw.com, suzy@flaglerbeachlaw.com; danielle@flaglerbeachlaw.com

Mark E Steiner MES@lgplaw.com, pm@lgplaw.com

Charles R Sterbach Charles.R.Sterbach@usdoj.gov

James A Timko jtimko@shutts.com, kgranofsky@shutts.com

Jared A Ullman jared.ullman@uulaw.net, joshua.brownlee@uulaw.net; diana.simon@uulaw.net;michael.ullman@uulaw.net;claudette.henry@uulaw.net

United States Trustee - ORL USTP.Region21.OR.ECF@usdoj.gov

Aaron A Wernick awernick@furrcohen.com, cworkinger@furrcohen.com; ltitus@furrcohen.com; atty_furrcohen@bluestylus.com;wernickar84158@notify.bestcase.com

Maria M Yip trustee@yipcpa.com

Rafael X. Zahralddin-aravena rxza@elliottgreenleaf.com

**Manual Notice List**

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service).

Jason R. Alderson
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060

Deborah L Fletcher
Katten Muchin Rosenman, LLP
401 South Tryon Street
Suite 2600
Charlotte, NC 28202

Mark E Freedlander
McGuireWoods LLP
Tower 260
260 Forbes Avenue
Pittsburgh, PA 15222

Hal Levenberg
Yip Associates
One Biscayne Tower
2 S. Biscayne Boulevard, Suite 2690
Miami, FL 33133

Eric M Sutty
Elliott Greenleaf, P.C.
1105 N. Market Street, Suite 1700
Wilmington, DE 19801

True Value Company, LLC
8600 W. Bryn Mawr Ave.
Chicago, IL 60631

Union Pacific Railroad Company
1400 Douglas St. STOP 1580
Omaha, NE 68179

Craig A. Wolfe
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060

*ACTIVE 42130023v4*