ORDERED.

Dated: **June 25, 2019**

Karen S. Jennemann
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:                                               CASE NO.: 6:19-bk-00511-KSJ

**IPS WORLDWIDE, LLC**                    CHAPTER 11

                    **Debtor.**
_____/

**ORDER (A) AUTHORIZING SALE OF SUBSTANTIALLY ALL**
**OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS,**
**CLAIMS AND INTERESTS; (B) APPROVING ASSET PURCHASE**
**AGREEMENT; (C) AUTHORIZING ASSUMPTION AND**
**ASSIGNMENT AND REJECTION OF CERTAIN EXECUTORY CONTRACTS AND**
**UNEXPIRED LEASES; AND (D) GRANTING OTHER RELIEF**

THIS MATTER came before the Court on June 20, 2019 at 10:00 a.m. (the "Sale

Hearing"), upon the motion (the "Sale Motion") of the Trustee,[1] pursuant to sections 105(a), 363

and 365 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004,

6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

---

[1] Unless otherwise noted, capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Sale Motion, Doc. No. 392 and the Asset Purchase Agreement attached hereto as Exhibit "A".

for entry of an order (the "Sale Order" or "Order"): (a) authorizing the sale (the "Sale") of the Purchased Assets (as defined in Section 2.2 of the APA (as defined below)) free and clear of all liens, claims and interests to Europe Management, SPRL, a Belgian company (together with its designees or assignees, the "Purchaser"); (b) approving the Asset Purchase Agreement, attached hereto as **Exhibit "A"**, between the Debtor and the Purchaser (the "APA"), as may be amended from time to time; (c) authorizing the procedure for assumption and assignment to the Purchaser and/or, if applicable, the rejection of the executory contracts designated by the Purchaser (the "Assumed Contracts"); and (d) granting certain related relief, all as more fully set forth in the Sale Motion.

The Court (i) having entered an order dated May 30, 2019 (Doc. No. 412) (the "Bid Procedures Order," and, attached as Exhibit 1 thereto, the "Bid Procedures") approving the Bid Procedures, scheduling an Auction and final Sale Hearing, approving the form and manner of notice in connection therewith and establishing procedures relating to the assumption and assignment and/or rejection of certain contracts; and authorizing the Trustee to take any and all action necessary or appropriate to implement the Bid Procedures; (ii) having authorized the Trustee in the Bid Procedures Order to sell the Purchased Assets free and clear of all liens, claims, encumbrances and interests pursuant to 11 U.S.C. §§ 363(f)(2), (4) and (5), with all liens claims, encumbrances, and interests to attach to the proceeds of such sale in and to the same extent, validity and priority as respectively existed in the Debtor as of the Petition Date; (iii) having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and (iv) having considered the Sale Motion and all responses and objections, if any, thereto which have been duly noted in the record of the Sale Hearing; overruled, resolved or withdrawn; and it appearing that the relief requested in the Sale

2

Motion is in the best interests of the Debtor, its creditors, the estate and all other parties in interest; and after due deliberation and sufficient cause appearing therefore, **IT IS HEREBY FOUND, DETERMINED, AND CONCLUDED THAT**:

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.

B.     This Court has jurisdiction over the Sale Motion and the transactions contemplated by the APA pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue in this District is proper under 28 U.S.C. §§ 1408 and 1409.

C.     This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

D.     Good and sufficient notice of the Sale Hearing and Sale Motion and the relief sought therein has been given to all interested persons and entities, including, without limitation, (i) the U.S. Trustee; (ii) counsel for the Debtor; (iii) counsel for Creditors Committee; (iv) all creditors or their counsel known to the Trustee to assert a lien (including a security interest), claim, right, interest or encumbrance or record against all or any portion of the Purchased Assets; (v)  all taxing authorities having jurisdiction over any of the Purchased Assets; (vi) all contract and lease counterparties to the extent known; (vii) all parties known or reasonably believed to have expressed an interest in the Purchased Assets; (viii) all other creditors of the Debtor (whether liquidated, contingent or unmatured) other than the creditors specifically excluded from such service, as agreed by the Debtor and Purchaser; (ix) all parties to any governmental

3

approvals or permits; (x) any applicable state environmental agency; (xi) all parties to any litigation involving the Debtor; (xii) all potential bidders previously identified or otherwise known to the Trustee; and (xiii) all parties who have filed a request for notice in the above-captioned cases pursuant to Bankruptcy Rule 2002. No other or further notice of the Sale Hearing, the Sale Motion or this Sale Order is necessary or required.

E.       A sound business purpose justifies the Sale of the Purchased Assets outside of the ordinary course of business.

F.       The Bid Procedures set forth in the Bid Procedures Order were non-collusive and substantively and procedurally fair to all parties.

G.       The Trustee complied with the Bid Procedures and the Bid Procedures Order and the Trustee provided sufficient notice of the Sale.

H.       The Trustee solicited offers for, scheduled an auction of, and selected the Successful Bidder (as defined in the Bid Procedures) for the Sale of the Purchased Assets in accordance with the Bid Procedures Order. The Trustee (i) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as a Qualified Bidder (as defined in the Bid Procedures) and submit their highest or otherwise best offer to purchase the Purchased Assets, (ii) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets and (iii) considered any bids submitted on or before the bid deadline.

I.       The Auction was held fairly and openly on June 19, 2019, and the Purchaser submitted the highest and best bid for the Purchased Assets at $2,300,000.00, (the "Cash Purchase Price") provided, however, the Purchaser shall receive a credit against the Cash Purchase Price to the extent the estate collects any receivables listed on the account receivable

49262641;7

report exhibits distributed at the Auction, dated May 31, 2019 and June 6, 2019 respectively, prior to the Closing Date (as hereinafter defined).[2]

      J.      The consideration to be paid by the Purchaser to the Debtor pursuant to the APA: (i) is fair and reasonable; (ii) is the highest and/or best offer for the Purchased Assets; (iii) is in the best interests of the Debtor's creditors and the estate; and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and any state fraudulent conveyance law applicable to the contemplated transactions.

      K.      Entry into the APA and consummation of the transactions contemplated thereby constitute the exercise of the Debtor's sound business judgment and fiduciary duties and such acts are in the best interests of the Debtor, its creditors and the estate.

      L.      The transactions contemplated by the APA are undertaken by the Debtor and the Purchaser at arms' length, without collusion and in good faith within the meaning of section 363(m) of the Bankruptcy Code.  The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby and otherwise has proceeded in good faith in all respects in connection with this proceeding in that:  (a) the Purchaser recognized that the Debtor was free to deal with any other party interested in acquiring the Purchased Assets; (b) the Purchaser in no way induced or caused the chapter 11 filing of the Debtor; (c) the Purchaser made the highest and/or otherwise best bid for the Purchased Assets; (d) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the transactions have been disclosed; and (e) the negotiation and execution of the APA and any other agreements or

---

[2] AFS Logistics, LLC is the Back Up Bidder with an offer for the Purchased Assets of $2,275,000.00.

49262641;7

instruments related thereto was in good faith and an arms' length transaction between the Purchaser and the Debtor.

M.    The Debtor and the Purchaser have not engaged in any conduct that would permit the APA or the Sale to be avoided under Section 363(n) of the Bankruptcy Code.

N.    The Purchased Assets constitute property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code.  The Debtor has all right, title and interest in, to and under the Purchased Assets to transfer and convey the Purchased Assets as contemplated by the APA.

O.    Except as permitted under the express terms of the APA and the Bid Procedures Order, the consummation of the Sale pursuant to the APA will be a legal, valid and effective Sale of the Purchased Assets and will vest the Purchaser (and its designees or assignees, as applicable; the Purchaser is authorized to assign part or all of the APA and its rights thereunder to affiliates or subsidiaries of the Purchaser) with all right, title and interest in and to the Purchased Assets free and clear of all (a) liens, mortgages, security interests, pledges, claims, encumbrances, liabilities, demands, judgments  and interests of whatever kind and nature, whether known or unknown, including but not limited to liens, claims, encumbrances, interests or liabilities asserted by any of the Debtor's creditors, vendors, suppliers, employees, executory contract counterparties, governmental units or interested parties in these proceedings; and (b) all debts arising under, relating to or in connection with any acts of the Debtor, claims (as that term is defined in 11 U.S.C. § 101(5)), obligations, demands, guarantees, options, rights, contractual commitments, restrictions, interests and matters of any kind and nature, in the case of (a) or (b), whether imposed by agreement, understanding, statute, regulation, law, equity or otherwise (collectively, only as they relate to the Debtor, and the Purchased Assets, the "Interests"), except

49262641;7

for: all debts, obligations and liabilities relating to the Purchased Assets (as defined in the APA) or the Purchased Assets arising after the "Closing Date" (as hereinafter defined) (other than those liabilities that may arise after the Closing Date but are a result of any act, omission or circumstance taking place prior to the Closing Date, including, without limitation, any liabilities with respect to environmental violations, employee plans or any other employment-related matter), whether known or unknown, fixed, absolute, contingent, material or immaterial, matured or unmatured, and in any case including the following: (a) all liabilities and obligations of Debtor under the Assumed Contracts arising after the Closing Date; (b) subject to Section 2.4 of the APA, all debts, liabilities and obligations for state and local real and personal property taxes that are imposed directly with respect to any Purchased Asset and payable after the Closing Date; and (c) all debts, liabilities and obligations arising out of the ownership or operation by Purchaser of any Purchased Asset after the Closing Date (the "Assumed Liabilities").  The "Closing Date" shall mean July 1, 2019, or at such later time as reasonably agreed to by the Purchaser and Seller.

P.      A sale of the Purchased Assets other than one free and clear of the Interests (other than the Assumed Liabilities) would be of substantially less benefit to and would adversely affect the Debtor's bankruptcy estate and its creditors.

Q.      With respect to all parties asserting any Interests (other than the Assumed Liabilities) in, to, or against the Acquired Assets, the Sale complies with all the requirements of section 363(f) of the Bankruptcy Code. With respect to each such Interest in the Purchased Assets: (a) applicable non-bankruptcy law permits the sale free and clear of such Interest; (b) the holder of such Interest consents to the Sale free and clear of its Interest; (c) such Interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the Purchased Assets; (d) such Interest is in bona fide dispute; or (e) the holder of such

7

Interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Interest.

R.    All parties with Interests (other than the Assumed Liabilities) in the Purchased Assets, if any, who did not object to the Sale Motion and the relief requested therein, or who withdrew their objections to the Sale Motion, are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code; and all such parties who objected to the Sale Motion, but who did not withdraw any such objection, (a) fall within one or more of the subsections of 363(f) and are adequately protected by having their Liens, Claims and/or Interests, if any, attach to the proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor alleges an interest, in the same order and priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Debtor and the estate may possess with respect thereto, and (b) in each case, are enjoined from taking any action against the Purchased Assets, the Purchaser, its affiliates, financing sources, or any agent of the foregoing, to recover any claim which such person or entity has solely against the Debtor.

S.    The Sale and all transactions related thereto are not and do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtor and the Debtor's estate, there is not substantial continuity between the Purchaser and the Debtor, there is no significant common identity between the Purchaser and the Debtor, there is no continuity of enterprise between the Purchaser and the Debtor, the Purchaser is not a mere continuation of the Debtor or the estate and the Purchaser does not constitute a successor to the Debtor or the estate.

T.    By virtue of the APA or otherwise, the Purchaser will not acquire any liabilities of the Debtor, other than the Assumed Liabilities specifically set forth or referenced herein.

49262641;7

U.      Without limiting the generality of the foregoing, other than the Assumed Liabilities, the Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, the estate and the creditors, if the Sale of the Purchased Assets to the Purchaser and the assignment of the Assumed Contracts to the Purchaser were not free and clear of the Interests, other than the Assumed Liabilities, or if the Purchaser would, or in the future could, be liable with respect to the Interests.

V.      Good and sufficient notice of the possible transfer, assumption and assignment of the Assumed Contracts has been given to the parties to the Assumed Contracts and no other or further notice is required, as further addressed in paragraph 28 herein.  A reasonable opportunity to object or be heard has been offered to the party in interest.

W.      The legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein.

X.      Upon entry of this Sale Order, the Debtor shall have full power and authority to consummate the Sale contemplated by the APA.  The APA and the Sale have been duly and validly authorized by all necessary action of the Debtor and no shareholder vote, board resolution or other corporate action is required of Debtor or the Trustee for Debtor to consummate such Sale or the other transactions contemplated in the APA.

Y.      Cause has been shown as to why this Sale Order should not be subject to the stay provided by Bankruptcy Rules 6004 and 6006.

Z.      The entry of this Sale Order is in the best interests of the Debtor, its creditors and the estate and other parties in interest.

49262641;7

**NOW THEREFORE, IT IS HEREBY ORDERED:**

1.      The Sale Motion, the APA and the transactions contemplated thereby shall be, and hereby are, granted and approved in all respects as modified by this Sale Order.

2.      All objections, responses and requests for continuance concerning the Sale Motion are resolved in accordance with the terms of this Sale Order as set forth in the record of the Sale Hearing.  To the extent any such objection, response or request for continuance was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied with prejudice.

3.      Notice of the Auction and the Sale Hearing was fair and equitable under the circumstances and complied in all respects with Bankruptcy Rules 2002 and 6004.  The Sale Motion or notice thereof shall be deemed to provide sufficient notice of the Sale free and clear of all Interests except for the Assumed Liabilities, in accordance with Local Rule 6004-1.

4.      The Debtor is authorized and directed to close, consummate and comply with the APA and all other agreements and documents related to and contemplated thereby (collectively, the "Sale Documents") and to execute such other documents, and take such other actions as are necessary or appropriate to effectuate the Sale pursuant to the terms of the APA.  The Purchaser is authorized to assign part or all of the APA and its rights thereunder to affiliates or subsidiaries of the Purchaser.  The Purchased Assets includes, but it not limited to, the receivables on attached **Exhibits B** and **C**, as well all ownership equity owned by the Debtor, if any, in IPS Brussels, S.A.

5.      The terms and provisions of this Order shall be binding in all respects upon the Purchaser and the Debtor, the estate and any trustees thereof, and all creditors and shareholders of the Debtor, all interested parties and their respective successors and assigns, including, but not limited to, any creditor asserting an Interest in the Purchased Assets.

10

6.      The Purchaser's offer for the Purchased Assets, as set forth in this Sale Order and as otherwise embodied in the APA and the Auction, is the highest and/or best offer for the Acquired Assets and is hereby approved.

7.      Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, the Sale by the Debtor to the Purchaser of the Purchased Assets and the transactions related thereto, upon the Closing under the APA, are authorized and approved in all respects.

8.      Subject to the payment or delivery by the Purchaser of the consideration provided for in the APA (as modified by this Sale Order) pursuant to sections 363 and 365(a) of the Bankruptcy Code, the Sale of the Purchased Assets by the Debtor to the Purchaser shall constitute a legal, valid and effective transfer of the Purchased Assets and shall vest the Purchaser with all right, title and interest of Debtor in and to the Purchased Assets free and clear of the Interests (except the Assumed Liabilities) pursuant to section 363(f) of the Bankruptcy Code, effective as of the Closing Date; with any liens and claims attaching to the proceeds of the Sale as set forth in paragraph 12 herein.

9.      The Purchaser will not be subject to the Interests nor any other liabilities of the Debtor, other than the Assumed Liabilities expressly set forth in the APA.

10.      Upon the Closing Date, and in accordance with the APA, the "Purchase Price" (as hereinafter defined) shall be paid in immediately available funds as set forth in Article 3 of the APA.  The aggregate consideration for the Purchased Assets (the "Purchase Price" or "Cash Purchase Price") shall be cash in an amount of $2,300,000 less the "Post Report Date Receivable Collection Credit" (as hereinafter defined).  The "Post Report Date Receivable Collection Credit" shall mean a dollar for dollar credit for the aggregate amount of receivables collected

11

between the dates of the Debtor's account receivable reports (North America dated as of June 6, 2019 and Europe dated as of May 31, 2019) and the Closing Date.

11.     To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any certificates, license, permit, registration and governmental authorization or approval of the Debtor with respect to the Purchased Assets, and all such certificates, licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, authorized to be transferred to the Purchaser as of the Closing Date. Pursuant to Section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of the chapter 11 cases or the consummation of the transactions contemplated by the APA.

12.     Pursuant to Section 363(f) of the Bankruptcy Code, the Sale of the Purchased Assets shall be free and clear of the Interests (except for the Assumed Liabilities). The Purchaser shall not be liable in any way (as successor entity or otherwise) for any claims of any party or any other third party may have against the Debtor on account of the Interests (other than the Assumed Liabilities). Any and all valid and enforceable liens, claims and interests on, against or in the Purchased Assets, other than the Assumed Liabilities, shall be transferred, affixed and attached to the proceeds of the Sale with the same validity, priority, force and effect such liens, claims and interests had on the Purchased Assets immediately prior to the Sale and subject to the rights, claims, defenses and objections, if any, of the Debtor and all interested parties with respect to any such asserted liens, claims and interests. The Sale of the Purchased Assets to the Purchaser shall vest the Purchaser with all the right, title and interest of the Debtor to the Purchased Assets free and clear of the Interests, other than the Assumed Liabilities.

49262641;7

13.     The Purchaser has not assumed or otherwise become obligated for any of the Debtor's liabilities other than the Assumed Liabilities, and the Purchaser has not purchased any of the "Excluded Assets" as defined in Section 2.3 of the APA.

14.     Notwithstanding the foregoing, the Purchaser shall retain all books, records and other documents pertaining to the Debtor (as purchased assets) in existence on the Closing Date, and subject to compliance with applicable law, make the same available for inspection and copying by Seller, Chapter 11 Trustee and the Official Committee of Unsecured Creditors ("OCUC") for any reasonable business purpose during normal business hours of the business upon reasonable request and upon reasonable notice.   This obligation extends for 6 years following the Closing Date, provided, however, the Purchaser shall be reimbursed for any costs associated with such inspection.

15.     Nothing contained in this Order shall transfer any rights that the Debtor may have in Exfreight Zeta, LLC and Exfreight of Florida, LLC (collectively "Exfreight").

16.     The Chapter 11 Trustee will take down all references on Debtor's webpage (www.jpsww.com) and any other webpages of the Debtor on entry of this Order of references to Exfreight, including but not limited to references to Exfreight Zeta, LLC's Lake Worth office at 2290-10th Avenue, Suite 501, Lake Worth, FL 33461 and Exfreight's Zeta, LLC's office in China at Room 1617 Wanda Business Bldg A, No. 37 Lianyungang, Qingdao, China.

17.     Except for the Assumed Liabilities expressly set forth herein, pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, all persons and entities, including, without limitation, the Debtor, all holders of Interests, all debt security holders (if any), equity security holders, the Debtor's employees or former employees, governmental, tax, and regulatory authorities, lenders, parties to, beneficiaries under, sponsors of or contributors to any benefit

plan, trade and other creditors or interested parties asserting or holding any liens, claims and interests, in or with respect to the Debtor or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtor, the Purchased Assets, the operation of the Debtor's business prior to the Closing Date under the APA or the transfer of the Purchased Assets to the Purchaser, shall be forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such liens, claims and interests against the Purchaser or any affiliate, successor or assign thereof and each of their respective members, officers, directors, financial advisors, attorneys, employees, partners, affiliates, financing sources, and representatives (each of the foregoing in its individual capacity), or the Purchased Assets, including claims under section 365(n) of the Bankruptcy Code against the Purchaser with respect to the Purchased Assets.

18.    Except as otherwise expressly provided in the APA, the Purchaser shall have no liability for and no obligation to pay wages, bonuses, severance pay, termination indemnity, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any and all pension plans) or any other payment with respect to employees or former employees, independent contractors, or other construction-related creditors of the Debtor or its subsidiaries. Except as otherwise expressly provided in the APA, the Purchaser shall have no liability with respect to any collective bargaining agreement, employee pension plan, employee welfare or retention, benefit and/or incentive plan to which the Debtor or its subsidiaries is a party and relating to the Purchased Assets (including, without limitation, arising from or related to the rejection or other termination of any such agreement) and the Purchaser shall in no way be deemed a party to or assignee of such agreement and except for

14

Assumed Liabilities, all parties to any such agreement are hereby enjoined from asserting against the Purchaser any and all Claims arising from or relating to such agreement.  Except for the Assumed Liabilities, the Purchaser shall not acquire or assume, and shall have no liability or obligation for any liabilities of the Debtor or its subsidiaries as a successor in interest, successor-in-title or otherwise, including, without limitation any liability for any remedies sought by any Person under the WARN Act or similar state or foreign statute or ERISA or any liability with respect to COBRA Coverage for employees or consultants of the Debtor or its subsidiaries terminated prior to or as part of the consummation of the transaction set forth in the APA with regard to any conduct by the Debtor occurring prior to the Closing Date or any other liability to, arising out of or related to the Excluded Assets, in each case whether arising prior to or after the Closing Date.

19.    If any Person that has filed any financing statement, mortgage, mechanic's lien, *lis pendens* or other document or instrument evidencing liens with respect to any of the Purchased Assets shall have failed to deliver to the Debtor and the Purchaser at or prior to the Closing of the APA, in proper form for filing and executed by the appropriate entity or entities, termination statements, instruments of satisfaction and releases of any Interests with respect to the Acquired Assets, then (a) the Debtor is authorized to execute and file such statements, instruments, releases and other documents on behalf of such Person; (b) after the Debtor executes, the Purchaser is also authorized to file such statements, instruments, releases and other documents on behalf of such Person; and (c) the Purchaser is authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims and interests in

15

the Purchased Assets as of the Closing of the Purchase Agreement, in each case, other than the Assumed Liabilities.

20.    This Sale Order (a) is and shall be effective as a determination that, upon Closing, other than the Assumed Liabilities, any and all Interests existing as to the Purchased Assets conveyed to the Purchaser have been and hereby are adjudged and declared to be unconditionally released, discharged and terminated, and (b) is and shall be sufficient evidence of the transfer of title to the Purchaser and the Sale shall be binding upon and govern the acts of all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state, foreign and local officials and all other Persons who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets conveyed to the Purchaser.

21.    The provisions of this Sale Order authorizing the sale of the Purchased Assets free and clear of the Interests, other than the Assumed Liabilities, shall be self-executing, and neither the Debtor nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments to effectuate, consummate and implement the provisions of this Sale Order.   However, the Debtor and the Purchaser, and each of their respective officers, employees and agents, are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtor or the Purchaser deem necessary or appropriate to implement and effectuate the terms of the APA and this Sale Order.

49262641;7

22.    Each and every foreign, federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and this Sale Order.

23.    Other than with respect to the Assumed Liabilities, after the date of Closing of the APA, no Person, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect liens or a security interest against any of the Purchased Assets on account of, or (b) collect or attempt to collect from the Purchaser or any of its affiliates, any tax (or other amount alleged to be owing by Debtor) (i) for any period commencing before and concluding prior to or on the Closing Date; (ii) assessed prior to and payable after the Closing; and (iii) related to or on account of any personal and/or real property taxes, which will be prorated as of the Closing as set forth in the APA.

24.    Other than the Assumed Liabilities, pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, all "persons" (as that term is defined in section 101(41) of the Bankruptcy Code) are hereby enjoined from taking any action against the Purchaser, the Purchaser's affiliates or the Purchased Assets to recover any claim which such "person" has against the Debtor.  In furtherance of the foregoing, the Lenders, respectively, shall be deemed to have consented to the sale of the Purchased Assets to Purchaser.

25.    The transactions contemplated under the APA and the Sale Documents do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtor and/or the Debtor's estate.  Other than the Assumed Liabilities, the Purchaser shall not assume, nor be deemed to assume or in any way be responsible for any liability or obligation of the Debtor and/or the estate and neither the purchase of the Purchased Assets by the Purchaser, nor the fact that the Purchaser or its affiliates are using any Purchased Assets previously used by the Debtor,

17

will cause the Purchaser or any of its affiliates to be deemed a successor in any respect to the Debtor's business.

26.     All Persons who are presently, or at the Closing of the APA will be, in possession of any of the Purchased Assets conveyed to the Purchaser hereunder are hereby directed to surrender possession of such Purchased Assets to the Purchaser at the Closing or such other period provided by the APA.

27.     From and after the date of the entry of this Sale Order, all persons and entities, including, but not limited to, the Debtor or any creditor or other party in interest shall not take or cause to be taken any action that would interfere with the transfer of the Purchased Assets to the Purchaser in accordance with the terms of this Sale Order.

28.     Pursuant to Section 365 of the Bankruptcy Code and in accordance with Section 2.2(d) of the APA the Purchaser may elect to have the Trustee assume and assign certain executory contracts and leases and any contract that is neither accepted nor rejected by the Trustee shall be deemed rejected.  The Purchaser shall have ten (10) days after Seller provides a list of contracts and cure amounts to notice Trustee of any Assumed Contract, without prejudice to request at any time an extension of time to identify contracts to be assumed for good cause shown.  The Trustee will then immediately file a notice of such Assigned Contract ("Assumption Notice") with the cure amounts, if any.  The counter party to any Assumed Contract shall have ten (10) days after filing of the Assumption Notice to file an objection to assumption of cure amounts. If no objections is timely filed, the Assumed Contracts shall be deemed assumed and assigned without further order of the court and Purchaser shall pay the noted cure amount.  If a counter party objects, such obligation shall be set for hearing on July 17, 2019 at 2:00p.m. and the hearing shall be held at Courtroom 6A, 400 Washington Street, Orlando, FL 32801.  The

49262641;7

notice provisions of this paragraph 28 are without prejudice to parties right to extend the period for Purchaser to select contracts for assignment (and the period for counter parties to object).  If the notice period is extended, Trustee shall file and serve a new notice period.  Purchaser has no obligation to assume any contract.  To the extent Purchaser wants to reject any contract Purchaser may promptly notify the Trustee after the Closing Date, which contracts it wants to reject.  Upon receipt of such notice, the Trustee will promptly notify the counter-party to those contracts of such rejection and the Purchaser may at that time communicate with the counter-parties.

29.    If the Purchaser determines to receive assignment of the Assumed Contracts, the Purchaser shall make provision for the payment of the cure amounts (the "Cure Amounts"), if any, to the counterparty to such Assumed Contract.  Except as set forth herein, the Cure Amounts, when paid, shall be deemed the entire cure obligation of the Debtor due and owing under section 365 of the Bankruptcy Code.

30.    The assumption and assignment of the Assumed Contracts, if such option is exercised by the Purchaser in accordance with paragraph 28 above, satisfies the requirements of the Bankruptcy Code including, *inter alia*, sections 365(b)(1) and (3) and 365(f) of the Bankruptcy Code to the extent applicable.

31.    The Assumed Contracts, if assumed and assigned to the Purchaser in accordance with paragraph 28 above, shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Sale Order and, pursuant to section 365(k) of the Bankruptcy Code, the Debtor shall be relieved from any further liability thereunder.

19

32.     Any provision in an Assumed Contract that purports to declare a breach, default or payment right as a result of an assignment or a change of control in respect of the Debtor is unenforceable and is hereby nullified with respect to the sale and assignments authorized by this Sale Order, and the Assumed Contract shall remain in full force and effect, subject only to payment of the appropriate cure amounts, if any.

33.     To the extent any contract or lease of Debtor is not assumed and assigned pursuant to this Sale Order, such contract or lease shall be deemed rejected as of the Petition Date and Purchaser shall not have any liability or responsibility with respect to any claim arising from any such contract or lease.  In regard to any contract which the Purchaser does not elect for the Debtor to assume and assign to the Purchaser, the Debtor will not sell or assign that contract to anyone else.

34.     The Purchaser is a good faith purchaser entitled to the benefits and protections afforded by Section 363(m) of the Bankruptcy Code (including with respect to the transfer of the Assumed Contracts assigned as part of the Sale of the Purchased Assets pursuant to Section 365 of the Bankruptcy Code and this Sale Order); accordingly, the reversal, modification on appeal or vacatur by subsequent order of the Court of the authorization provided herein to consummate the Sale of the Purchased Assets shall not affect the validity of the Sale of the Purchased Assets to the Purchaser (including with respect to the transfer of the Assumed Contracts assigned as part of the Sale of the Purchased Assets pursuant to Section 365 of the Bankruptcy Code and this Sale Order).

35.     The consideration provided by the Purchaser for the Purchased Assets under the APA is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any state

fraudulent conveyance law and may not be avoided under Section 363(n) of the Bankruptcy Code.

36.    This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of the APA, the Bid Procedures Order and this Sale Order in all respects and further to hear and determine any and all disputes related thereto including between the Debtor and/or the Purchaser; *provided*, *however*, that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the APA, the Bid Procedures Order and this Sale Order, such abstention, refusal or lack of jurisdiction shall have no effect upon, and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

37.    The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, in accordance with the terms thereof without further order of the Court; provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

38.    From and after the date hereof, each Debtor and the Purchaser shall act in accordance with the terms of the APA and this Sale Order and the Debtor and the Purchaser, to the extent it already has not done so, shall execute any Sale Document at or prior to Closing.

39.    The failure specifically to include any particular provisions of the APA, the Sale Documents or any related agreements in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtor and the Purchaser that the APA, the Sale Documents and any related agreements are authorized and approved in their

49262641;7

entirety with such amendments thereto as may be made by the parties in accordance with the Sale Order prior to Closing.

40.     To the extent that any money is collected by Debtor or Trustee from any client or customer on any client or customer any accounts receivable identified on the list of receivables dated May 31, 2019 and June 7, 2019, Purchaser shall receive a credit towards the purchase price of the Purchased Assets.   That credit shall be applied at Closing.   The proceeds from any invoicing done by the Debtor after June 7, 2019 shall be the property of the Purchaser.   In the event the Debtor receives funds from the invoicing the Debtor shall turnover over those funds at the later of the Closing Date or within five (5) business days of receipt of those funds.

41.     To the extent of any inconsistency between the provisions of this Sale Order and the APA, or any documents executed in connection therewith, the provisions contained in this Sale Order shall govern and control.

42.     Debtor will pay all staff salaries, electricity, rent and other current operational expenses of Debtor and its foreign offices (including as applicable, Brazil, Singapore, Hong Kong and Mexico) through the Closing Date.

43.     The Trustee will make reasonably prompt efforts to provide Purchaser with the shareholders' register (*registre d'actionnaires*) identifying in reasonable detail the names of current owners and their respective equity ownership in IPS Europe, SA (the "Belgian Shareholders' Register"), including making post-Closing turnover demand and filing necessary judicial enforcement proceedings in Belgium or with this Court to obtain turnover.

44.     The Trustee at or immediately after Closing Date shall make best efforts to transfer the equity of IPS Brussels to the Purchaser or its designee.

49262641;7

45.    If Purchaser pays money to pay debts, including items such as accrued employee bonuses and holiday pay, of IPS Brussels that exist as of the Closing Date and which may be due several months later, which IPS Brussels cannot pay from its cash on hand and collections on receivables existing on the Closing Date, the Purchaser may file an administrative claim for such money paid.  The Trustee will not object to such an administrative claim up to $100,000 or less.

46.    This Sale Order shall inure to the benefit of the Purchaser, the Debtor and their respective successors and assigns, including, but not limited to, any chapter 11 trustee or chapter 7 trustee that may be appointed in the Debtor's cases and shall be binding upon any trustee, party, entity or fiduciary that may be appointed in connection with these cases or any other or further case involving the Debtor, whether under chapter 7 or chapter 11 of the Bankruptcy Code.

47.    This Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the stay of (i) orders authorizing the sale, use or lease of property of the estate, as set forth in Bankruptcy Rule 6004(h); (ii) orders authorizing the assignment of an executory contract or unexpired lease, as set forth in Bankruptcy Rule 6006(d); and (iii) proceedings to enforce a judgment, as set forth in Bankruptcy Rule 7062, or otherwise shall not apply to this Sale Order.

48.    The Debtor is authorized and directed to close the Sale in accordance with the APA as modified by this Sale Order upon entry of this Sale Order.

49.    The 14 day stay period pursuant to Fed. R. Bankr. P. 6004(h) is hereby waived.

###

Attorney R. Scott Shuker is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

23

## ASSET PURCHASE AGREEMENT

ASSET PURCHASE AGREEMENT, effective as of June _12_, 2019 (this "Agreement"), is by and between Europe Management SPRL "" a/an [jurisdiction of organization] [entity type] — *a Belgian company* ("Purchaser"), and IPS Worldwide, LLC, a Florida limited liability company ("Seller" or "Debtor") (Seller and Purchaser are sometimes together referred to herein as the "Parties" or individually as a "Party").

### WITNESETH:

WHEREAS, On January 25, 2019 (the "Petition Date"), Seller filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division (the "Bankruptcy Court" or the "Court") (Case No. 6:19-bk-00511-KSJ) (the "Bankruptcy Case");

WHEREAS, on April 5, 2019 (the "Appointment Date"), the United States Trustee and Creditor Stanley Black & Decker, Inc. filed motions for appointment of a Chapter 11 Trustee, and the Bankruptcy Court entered its order approving the appointment of Alex D. Moglia to serve as Chapter 11 Trustee in the Bankruptcy Case (the "Trustee");

WHEREAS, On May __, 2019, Trustee filed with the Court its Motion pursuant to 11 U.S.C. §§105, 363 and 365 and Fed. R. Bankr. P. 2002, 6004 and 9014 and Local Rules 20021(C)(2) and 6004-1 for the entry of an Order (1) approving competitive bidding and sale procedures for the sale of substantially all of Debtor's assets (the "Bidding Procedures"), (2) scheduling dates to conduct auction and hearing to consider final approval of sale, (3) approving the form and manner of notices, (4) approving the sale of substantially all of Debtor's assets free and clear of all liens, claims, encumbrances and interests, and (5) granting related relief (the "Sale Motion");

WHEREAS, Seller desires to sell, transfer and assign to Purchaser, and Purchaser desires to purchase, acquire and assume from Seller, pursuant to Section 363 and 365 of the Bankruptcy Code, and in accordance with an order to be entered by the Bankruptcy Court and in accordance with this Agreement, all of the Purchased Assets and Assumed Liabilities, all as more specifically defined and provided herein; and

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements hereinafter contained, and intending to be bound hereby, the Parties hereby agree as follows:

### ARTICLE I

### DEFINITIONS

1.1    Certain Definitions.

For purposes of this Agreement, the following terms shall have the meanings specified in this Section 1.1:

1

EXHIBIT "A"

"Bidding Procedures Order" means an order of the Bankruptcy Court, substantially in the form filed in the Case on May __, 2019 as Docket # _____ approving the Bidding Procedures, as shall be modified by agreement of the Parties in a manner consistent with the terms of this Agreement and entered by the Bankruptcy Court.

"Business" shall mean the business of offering and providing manufacturers, distributors and others freight audit solutions, logistics consulting, carrier contract management and analytics, North American and international transportation management and related services currently conducted by Seller.

"Business Day" means any day of the year on which national banking institutions in Florida or New York are open to the public for conducting business and are not required or authorized to close.

"Business Office" means the office building currently used for the Business and located at 265 Clyde Morris Blvd., Ste. 100, Ormond Beach, FL 32174.

"Liability" means any debt, liability or obligation (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due), and including all costs and expenses relating thereto.

"Lien" as applied to any Person means any lien, encumbrance, pledge, mortgage, deed of trust, security interest, claim, lease, charge, option, right of first refusal, easement, servitude, proxy, voting trust or agreement, transfer restriction under any shareholder or similar agreement or encumbrance or any other right of a third party in respect of an asset of such Person.

"Person" means any individual, corporation, limited liability company, partnership, firm, joint venture, association, joint-stock company, trust, unincorporated organization, governmental agency or authority or other entity.

"Sale Order" shall be a final order (or orders) of the Bankruptcy Court which is not subject to a stay pending appeal (but may still be subject to appeal), in form and substance reasonably acceptable to Purchaser and Seller approving this Agreement and all of the terms and conditions hereof, and approving and authorizing Seller to consummate the transactions contemplated hereby. Without limiting the generality of the foregoing, such order shall contain the following provisions:

(a)    a finding that notice of the Sale Motion and the proposed sale of the Purchased Assets was proper and sufficient under the Bankruptcy Code and Bankruptcy Rules, and that all parties in interest entitled to notice of the Sale Motion received such notice;

(b)    the sale and transfer of the Purchased Assets to the Purchaser is approved pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code;

(c)    the assignment and assumption of the Assumed Contracts (as defined below) as provided herein is approved pursuant to Sections 365(a) and (f) of the Bankruptcy Code;

(d)    all defaults under the Assumed Contracts have been cured or waived by the counterparties to the Assumed Contracts or Purchaser has provided adequate assurances of future performance in respect of the Assumed Contracts;

2

(e)    the sale of the Purchased Assets to Purchaser pursuant to this Agreement will be free and clear of all Liens pursuant to Section 363(f) of the Bankruptcy Code, with such Liens, attaching to the sale proceeds;

(f)    Purchaser is not a mere continuation of Seller, there is no continuity of enterprise between Seller and Purchaser, Purchaser is not a successor to Seller and the transactions contemplated by this Agreement do not amount to, or otherwise constitute a consolidation, merger or de facto merger of Purchaser and Seller;

(g)    Purchaser has acted in good faith within the context of and is entitled to the protections of Section 363(m) of the Bankruptcy Code;

(h)    the transactions contemplated hereunder are not avoidable pursuant to Section 363(n) of the Bankruptcy Code;

(i)    Purchaser is not assuming or acquiring any of the Excluded Assets;

(j)    all Persons are enjoined from in any way pursuing Purchaser or the Purchased Assets by suit or otherwise to recover on any Liens which they may have against Debtor or the Purchased Assets as of the Closing Date (as defined below); and

(k)    the Sale Order shall contain a waiver of the 14 day stay pursuant to, and shall be effective immediately notwithstanding the provisions of, Bankruptcy Rules 6004(h) and 6006(d).

1.2    Other Definitional and Interpretive Matters.

(a)    Unless otherwise expressly provided, for purposes of this Agreement, the following rules of interpretation shall apply:

Calculation of Time Period. When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded. If the last day of such period is a non-Business Day, the period in question shall end on the next succeeding Business Day.

Dollars. Any reference in this Agreement to $ shall mean U.S. dollars.

Exhibits/Schedules. All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein. Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein shall be defined as set forth in this Agreement.

Gender and Number. Any reference in this Agreement to gender shall include all genders, and words imparting the singular number only shall include the plural and vice versa.

Headings. The division of this Agreement into Articles, Sections and other subdivisions and the insertion of headings are for convenience of reference only and shall not affect or be utilized in construing or interpreting this Agreement. All references in this Agreement to any "Section" are to the corresponding Section of this Agreement unless otherwise specified.

3

Herein. The words such as "herein," "hereinafter," "hereof" and "hereunder" refer to this Agreement as a whole and not merely to a subdivision in which such words appear, unless the context otherwise requires.

Including. The word "including" or any variation thereof means "including, without limitation" and shall not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it.

(b)    The Parties hereto have participated jointly in the negotiation and drafting of this Agreement and, in the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by the Parties hereto and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any provision of this Agreement.

## ARTICLE II

### PURCHASE AND SALE OF ASSETS; ASSUMPTION OF LIABILITIES

2.1    Bankruptcy Court Approval. The Parties' respective obligations to purchase and sell the Purchased Assets pursuant to this Agreement are subject to Bankruptcy Court approval after notice and a hearing, subject to higher and better offers, and the provisions, requirements and limitations of the Sale Order. Seller shall use commercially reasonable efforts to obtain Bankruptcy Court approval of the Bidding Procedures and if Purchaser is the successful bidder at the Auction contemplated in the Bidding Procedures, then to use commercially reasonable efforts to obtain Bankruptcy Court approval, in the form of the Sale Order, of the sale of the Purchased Assets to Purchaser pursuant to this Agreement.

2.2    Purchase and Sale of Assets.

(a)    On the terms and subject to the conditions set forth in this Agreement and in the Sale Order, and subject in all events to the approval of the Court, at the Closing on the Closing Date (as those terms are defined hereinafter), Purchaser shall purchase, acquire and accept from Seller, and Seller shall sell, transfer, convey and deliver to Purchaser all of Seller's right, title and interest in, to and under the Purchased Assets, free and clear of all Liens.

(b)    For all purposes of and under this Agreement, the term "Purchased Assets" shall mean all of the properties, assets and rights of Seller (other than the Excluded Assets) existing as of the Closing, real (only to the extent leased), personal, tangible or intangible, relating to the Business, including:

(i)    all accounts receivable;

(ii)    any prepaid expenses, advance payments, security deposits, rents and other items related to the Business that are applicable to the period prior to Closing, or that relate to executory contracts, in all such cases, solely with respect to any Assumed Contracts;

4

(iii)    all rights of Seller with respect to the real property lease or use of the Business Office, together with all improvements, fixtures and other appurtenances thereto and rights in respect thereof, together with furniture and equipment;

(iv)    all equity ownership interests in its subsidiaries or other entities except for such interests which are Excluded Assets;

(v)    all intellectual property rights used or intended for use in the Business, to the extent assignable and transferable, exclusive of Seller's corporate name and any other intellectual property identified as Excluded Assets;

(vi)    the Assumed Contracts;

(vii)    all permits, approvals, authorizations, consents, licenses, or certificates of a governmental agency or other governmental authority used by Seller in the Business, to the extent assignable;

(viii)    all office supplies owned by Seller and used or intended for use in the Business;

(ix)    all rights of Seller under or pursuant to all warranties, representations and guarantees made by suppliers, manufacturers and contractors to the extent relating to products or services provided to Seller or the Business to the extent applicable to any Purchased Assets but excluding any warranties, representations and guarantees primarily pertaining to any Excluded Assets;

(x)    all goodwill and other intangible assets associated with the Business, including customer and supplier lists and any goodwill associated with Seller's intellectual property; and

(xi)    all other tangible or intangible assets relating to the Business other than Excluded Assets.

(c)    Purchaser and Seller agree:

(i)    Following the date hereof, Purchaser may designate any Purchased Asset as an additional Excluded Asset any time prior to the Closing Date by giving written notice to Seller setting forth in reasonable detail the Purchased Asset so designated.

(ii)    Any time prior to the Closing, Purchaser and Seller may designate any Excluded Asset as an additional Purchased Asset upon written agreement of Purchaser and Seller setting forth in reasonable detail the Excluded Asset so designated. Any increase in the Purchase Price, if any, relating to such designation shall be set forth in such written agreement (along with any other terms relating thereto).

(iii)    Notwithstanding anything to the contrary herein, Purchaser and Seller acknowledge and agree that there shall be no reduction in the Purchase Price if there is a change in the designation of any Purchased Assets pursuant to this Section 2.2(c).

(d)    At the Closing, Seller shall assume and assign to Purchaser and Purchaser shall assume from Seller the executory contracts which are listed on Schedule 2.2(d) attached hereto (the "Assumed Contracts"). Purchaser agrees to: (i) cure all defaults, if any, existing under the Assumed Contracts or provide adequate assurance that it will promptly cure all defaults; (ii) compensate or provide adequate assurance that it will promptly compensate the parties to the Assumed Contracts other than the Seller for any actual pecuniary loss to such parties resulting from all defaults; and (iii) provide adequate assurance of future performance under the Assumed Contracts, in each case as determined by the Bankruptcy Court pursuant to Section 365 of the Bankruptcy Code. If Purchaser is required to make any payments to fulfill its obligations under this Section, such payments shall be in addition to the Purchase Price.

*Purchaser hereby agrees and acknowledges that Seller's obligations under this Agreement are subject to higher or otherwise better offers for the Purchased Assets and conditioned upon the entry of the Sale Order approving the sale of the Purchased Assets to Purchaser pursuant to the terms and conditions of this Agreement.*

2.3    Excluded Assets. Nothing herein contained shall be deemed to sell, transfer, assign or convey the Excluded Assets to Purchaser, and Seller shall retain all right, title and interest to, in and under the Excluded Assets. For all purposes of and under this Agreement, the term "Excluded Assets" shall mean:

(a)    any avoidance actions or similar causes of action arising under sections 544 through 553 of the Bankruptcy Code, including any proceeds thereof, and any and all other rights, claims or causes of action, rights of action, claims for damages, rights of setoff, rights of recoupment, demands, actions, judgments and pending litigation of Seller arising or existing at any time prior to the Closing Date, which shall be fully retained and preserved for the benefit of the Trustee, Seller and Seller's estate;

(b)    any prepaid expenses, advance payments, security deposits, rents and other items related to the Business that are applicable to the period prior to Closing, or that relate to executory contracts, other than solely with respect to any Assumed Contracts, and any adequate assurance utility deposits posted during the pendency of the Bankruptcy Case;

(c)    any personal property owned by Seller, or purchased with Seller's funds prior to the Appointment Date, and not used or intended for use in the Business, regardless of the location, possession, or ownership title of such personal property or when such personal property is discovered;

(d)    any real property owned or leased by, or for the benefit of, Seller, other than as set forth in Section 2.2(b)(iii);

(c)    all tax returns and all tax credits, tax benefits and claims for refunds in respect of any federal, state, local, and/or foreign income, gross receipts, capital stock, franchise, profits, withholding, social security, unemployment, disability, real estate, personal property, stamp, excise, occupation, sales, use, transfer, value added, alternative minimum, severance, estimated or other taxes, including any interest or addition thereto, for periods ending on or before the Closing Date;

6

(f)    the Purchase Price delivered to Seller pursuant to this Agreement and all cash, cash equivalents, bank accounts or similar types of investments, such as certificates of deposit, treasury bills and other marketable securities;

(g)    any assets of Seller designated by Purchaser as Excluded Assets pursuant to Section 2.2(c) hereof;

(h)    any and all right, title and interest in any current or prior insurance policy(ies) in connection with the ownership or operation of the Business by the Seller and any and all amounts claimed and/or collected or to be collected pursuant to such insurance policy(ies), and including any prepaid insurance premiums;

(i)    all rights of Seller under this Agreement;

(j)    any and all right, title and interest in any instruments, promissory notes receivable, mortgages and other similar documents or instruments;

(k)    the company seal, minute books, charter documents, membership interests, stock or equity record books and such other books and records pertaining to the organization, existence or capitalization of the Seller, as well as any other records or materials relating to the Seller generally; and

(l)    all equity ownership interests in its subsidiaries Exfreight Zeta, LLC and Exfreight of Florida, LLC.

2.4    Assumption of Liabilities. On the terms and subject to the conditions and limitations set forth in this Agreement, at the Closing, Purchaser shall assume, effective as of the Closing, and shall timely perform and discharge in accordance with their respective terms, the following Liabilities (without duplication) existing as of immediately prior to the Closing (collectively, the "Assumed Liabilities") and no others:

(a)    all Liabilities of Seller under the Assumed Contracts;

(b)    all cure amounts or other amounts that Purchaser is required to pay pursuant to Section 2.2(d); and

(c)    those obligations of Debtor listed on Schedule 2.4 (c) as well as any other Liabilities that this Agreement expressly provides that Purchaser shall assume.

2.5    Further Conveyances and Assumptions. From time to time following the Closing, Seller and Purchaser shall execute, acknowledge and deliver all such further conveyances, notices, assumptions, releases and other instruments, and shall take such further actions, as may be reasonably necessary or appropriate to assure fully to Purchaser and its respective successors or assigns, all of the properties, rights, titles, interests, estates, remedies, powers and privileges intended to be conveyed to Purchaser under this Agreement, and to otherwise make effective the transactions contemplated hereby.

7

ARTICLE III

CONSIDERATION

3.1    Consideration. The aggregate consideration for the Purchased Assets (the "Purchase Price") shall be:

(a)    cash in an amount of $ 1,300,000    (the "Cash Purchase Price"); and

(b)    the assumption of the Assumed Liabilities.

3.2    Payment of Purchase Price. Purchaser shall pay Seller the Cash Purchase Price, less the Deposit (as hereinafter defined), on the Closing Date by wire transfer of immediately available funds to an account designated by Seller two Business Days prior to the Closing Date.

3.3    Purchase Price Deposit.

(a)    Upon execution of this Agreement by the last of Purchaser and Seller, Purchaser shall have deposited an amount equal to the greater of (a) $100,000 or (b) ten (10%) of the Purchase Price with Trustee's Counsel, Latham, Shuker, Eden & Beaudine, LLP (the "Deposit Agent"), in the form of a wire transfer or certified check payable to Deposit Agent, in escrow, as Purchaser's initial deposit under this Agreement (the "Deposit"), which Deposit shall be held without interest and shall be applied against the Purchase Price at Closing, or returned to Purchaser if this Agreement is not approved by the Bankruptcy Court, or paid to Seller in the event of Purchaser's unexcused failure to perform its obligations at Closing.

(b)    If all of the contingencies set forth in Section 9.1 are satisfied or waived in writing by Purchaser, and Seller then fails, after the entry of the Sale Order, to close on the sale of the Purchased Assets to Purchaser as required by this Agreement, Purchaser shall be entitled to a refund of the Deposit, as its sole and exclusive remedy and as liquidated damages for Seller's failure to close.

ARTICLE IV

CLOSING AND TERMINATION

4.1    Closing Date. The closing of the transaction (the "Closing") shall take place within two (2) Business Days after entry of the Sale Order, but in no event later than June 30, 2019 (the "Closing Date"), provided that the Sale Order waives the 14 day stay pursuant to Fed. R. Bankr. P. 6004(h). The Closing shall take place at the offices of Latham, Shuker, Eden & Beaudine, LLP, 111 N. Magnolia Avenue, Suite 1400, Orlando, Florida 32801 (or at such other place as the Parties may designate in writing) at 10:00 a.m. (Orlando time), unless another time or date, or both, are agreed to in writing by the Parties hereto. Notwithstanding anything herein to the contrary, if the Sale Order has been stayed by an order of a court of competent jurisdiction, then the Closing Date shall be postponed until not more than five (5) business days after the stay has been finally dissolved. If such postponement is longer than [       ] days, *beyond June 30, 2019,* Purchaser and Seller shall each have the right to terminate this Agreement by giving written termination notice to the other, in which case neither Party shall have any further

8

obligations under this Agreement except those that expressly survive the termination of this Agreement.

    4.2    <u>Deliveries by Seller</u>. At the Closing, Seller shall deliver to Purchaser:

        (a)    one or more duly executed bills of sale in a form to be agreed upon by the Parties hereto;

        (b)    one or more duly executed assignment and assumption agreements in a form to be agreed upon the Parties hereto and duly executed assignments/assumptions of the U.S. trademark registrations and applications with respect to the intellectual property included in the Purchased Assets, in a form suitable for recording in the U.S. trademark office, and general assignments of all other intellectual property;

        (c)    affidavits executed by Seller that Seller is not a foreign person within the meaning of Section 1445(f)(3) of the Internal Revenue Code; and

        (d)    such other documents as Purchaser may reasonably request to consummate the transaction provided for in this Agreement.

    4.3    <u>Deliveries by Purchaser</u>. At the Closing, Purchaser shall deliver to Seller:

        (a)    the Cash Purchase Price less the Deposit;

        (b)    one or more duly executed assignment and assumption agreements in a form to be agreed upon the Parties hereto and duly executed assignments/assumptions of the U.S. trademark registrations and applications with respect to the intellectual property included in the Purchased Assets, in a form suitable for recording in the U.S. trademark office, and general assignments of all other intellectual property; and

        (c)    such other documents as Seller may reasonably request to consummate the transaction provided for in this Agreement.

## ARTICLE V

## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby represents and warrants to Purchaser that:

    5.1    <u>Organization and Good Standing</u>. Seller is an entity validly existing and its status is active under the laws of the jurisdiction of its organization and is subject to the limitations imposed on Seller as a result of having been the subject of a petition for relief under the Bankruptcy Code and the entry of the order for relief.

    5.2    <u>Authorization of Agreement</u>. Upon entry of the Bidding Procedures Order and the Sale Order and such other authorization as is required by the Bankruptcy Court, Seller, acting by and through the Trustee, will have the requisite power and authority to execute and deliver this Agreement

and each other agreement, document or instrument contemplated hereby or thereby to which it is a party and to perform its respective obligations hereunder and thereunder.

## ARTICLE VI

## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants to Seller that:

6.1    Organization and Good Standing. Purchaser is an entity duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has the requisite entity power and authority to own, lease and operate its properties and to carry on its business as now conducted.

6.2    Authorization of Agreement. Purchaser has the requisite entity power and authority to execute and deliver this Agreement and each other agreement, document or instrument contemplated hereby or thereby to which it is a party and to perform its obligations hereunder and thereunder. The execution and delivery of this Agreement and each other agreement, document or instrument contemplated hereby or thereby to which Purchaser is a party and the consummation of the transactions contemplated hereby and thereby have been duly authorized by all requisite entity action on the part of Purchaser. This Agreement and each other agreement, document or instrument contemplated hereby or thereby to which Purchaser is a party has been duly and validly executed and delivered by Purchaser and (assuming the due authorization, execution and delivery by the other Party hereto) this Agreement and each other agreement, document or instrument contemplated hereby or thereby to which Purchaser is a party constitutes legal, valid and binding obligations of Purchaser enforceable against such entity in accordance with its respective terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

6.3    Conflicts; Consents of Third Parties.

(a)    The execution and delivery by Purchaser of this Agreement and each other agreement, document or instrument contemplated hereby or thereby to which Purchaser is a party, the consummation of the transactions contemplated hereby and thereby, or compliance by Purchaser with any of the provisions hereof or thereof do not conflict with, or result in any violation of or default (with or without notice or lapse of time, or both) under, or give rise to a right of termination or cancellation under any provision of (i) the certificate of incorporation and by-laws or comparable organizational documents of Purchaser; (ii) any contract or permit to which Purchaser is a party or by which any of the properties or assets of Purchaser are bound; (iii) any order of any governmental agency or other authority applicable to Purchaser or any of the properties or assets of Purchaser as of the date hereof; or (iv) any applicable law, other than, in the case of clauses (ii), (iii) and (iv), such conflicts, violations, defaults, terminations or cancellations that would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on Purchaser's ability to consummate the transaction contemplated pursuant to this Agreement.

(b)    No consent, waiver, approval, order, permit or authorization of, or declaration or filing with, or notification to, any Person or governmental agency or other authority is required on

10

the part of Purchaser in connection with the execution and delivery of this Agreement and each other agreement, document or instrument contemplated hereby or thereby to which Purchaser is a party, the compliance by Purchaser with any of the provisions hereof or thereof, the consummation of the transactions contemplated hereby or thereby, the taking by Purchaser of any other action contemplated hereby or thereby, except for such consents, waivers, approvals, orders, permits, authorizations, declarations, filings and notifications, the failure of which to obtain or make, would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on Purchaser's ability to consummate the transaction contemplated pursuant to this Agreement.

6.4     No Claims of Brokers, Finders or Financial Advisors. No Person has acted, directly or indirectly, as a broker, finder or financial advisor for Purchaser in connection with the transactions contemplated by this Agreement and no Person is entitled to any fee or commission or like payment in respect thereof. Purchaser acknowledges and agrees that Seller shall not be responsible for any brokers' commissions, finders' fees or any other advisors' fees and expenses. Purchaser shall indemnify and hold the Seller harmless from the claims of any broker, finder or advisor claiming through the Purchaser. The provisions of this Section shall survive the Closing and any termination of this Agreement.

6.5     Financial Capability. Purchaser will have when due sufficient funds available to pay the Purchase Price and any expenses incurred by Purchaser in connection with the transactions contemplated by this Agreement.

6.6     ACQUIRED ASSETS "AS IS". PURCHASER AGREES, WARRANTS AND REPRESENTS THAT (A) PURCHASER IS PURCHASING THE PURCHASED ASSETS ON AN "AS IS" AND "WITH ALL FAULTS" BASIS BASED SOLELY ON PURCHASER'S OWN INVESTIGATION OF THE PURCHASED ASSETS (INCLUDING AFTER THE DATE HEREOF) AND (B) EXCEPT AS PROVIDED IN THIS AGREEMENT, NEITHER SELLER, THE TRUSTEE, NOR ANY REPRESENTATIVE OF SELLER OR TRUSTEE HAS MADE ANY REPRESENTATIONS, WARRANTIES OR GUARANTIES, EXPRESS, IMPLIED OR STATUTORY, WRITTEN OR ORAL, RESPECTING THE PURCHASED ASSETS, ANY PART OF THE PURCHASED ASSETS, THE FINANCIAL PERFORMANCE OF THE PURCHASED ASSETS OR THE BUSINESS, OR THE PHYSICAL CONDITION OF THE PURCHASED ASSETS. PURCHASER FURTHER ACKNOWLEDGES THAT THE CONSIDERATION FOR THE PURCHASED ASSETS SPECIFIED IN THIS AGREEMENT HAS BEEN AGREED UPON BY SELLER AND PURCHASER AFTER GOOD-FAITH ARMS-LENGTH NEGOTIATION IN LIGHT OF PURCHASER'S AGREEMENT TO PURCHASE THE PURCHASED ASSETS "AS IS" AND "WITH ALL FAULTS." PURCHASER AGREES, WARRANTS AND REPRESENTS THAT, EXCEPT AS SET FORTH IN THIS AGREEMENT, PURCHASER HAS RELIED, AND SHALL RELY, SOLELY UPON ITS OWN INVESTIGATION OF ALL SUCH MATTERS (INCLUDING AFTER THE DATE HEREOF), AND THAT PURCHASER ASSUMES ALL RISKS WITH RESPECT THERETO. SELLER MAKES NO EXPRESS WARRANTY, NO WARRANTY OF MERCHANTABILITY, NO WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, AND NO IMPLIED OR STATUTORY WARRANTY WHATSOEVER WITH RESPECT TO ANY REAL OR PERSONAL PROPERTY OR ANY FIXTURES OR THE PURCHASED ASSETS.

ARTICLE VII

BANKRUPTCY COURT MATTERS

7.1    Competing Transaction. This Agreement is subject to approval by the Bankruptcy Court and the consideration by Seller and the Bankruptcy Court of higher or better competing bids. From and after the date hereof until the date of the Auction provided for in the Bidding Procedures Order (the "Auction Date"), Seller is permitted to cause its representatives to initiate contact with, or solicit or encourage submission of any inquiries, proposals or offers by, any Person (in addition to Purchaser, its agents and representatives) with respect to any transaction (or series of transactions) involving the direct or indirect sale, transfer or other disposition of a material portion of the Purchased Assets to a purchaser or purchasers other than Purchaser or effecting any other transaction (including a plan of reorganization or liquidation) the consummation of which would be substantially inconsistent with the transactions herein contemplated (a "Competing Transaction"). Following the Auction Date, Seller will not participate in any discussions with, or furnish any information to, any Person with respect to any Competing Transaction regardless of the terms thereof, provided, however, Seller may participate in discussions with, but not furnish any additional confidential information to, the Back-Up Bidder (as defined in the Bidding Procedures Order).

7.2    Bankruptcy Court Filings. Purchaser agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Sale Order and a finding of adequate assurance of future performance by Purchaser, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Purchaser under this Agreement and demonstrating that Purchaser is a "good faith" purchaser under section 363(m) of the Bankruptcy Code. Purchaser and Seller shall agree on a form of a Sale Order within one Business Day following the applicable Bankruptcy Court hearing. In the event the entry of the Sale Order or the Bidding Procedures Order shall be appealed, Seller and Purchaser shall use their respective reasonable efforts to defend such appeal.

ARTICLE VIII

COVENANTS

8.1    Access to Information. Provided Purchaser has signed a confidentiality agreement with the Trustee in a form acceptable to the Trustee, Trustee agrees that, subsequent to the submission of this Agreement to the Trustee as part of the Bidding Procedures and prior to the Auction Date, Purchaser shall be entitled, through its officers, employees, consultants and representatives (including its legal advisors and accountants), to make such investigation of the properties, businesses, customers and operations of Seller and the Business and such examination of the books and records of Seller and the Business, the Purchased Assets and the Assumed Liabilities as it reasonably requests. Any such investigation and examination shall be conducted upon reasonable advance notice and under reasonable circumstances and shall be subject to restrictions under applicable law. Purchaser and its representatives shall use their reasonable efforts to minimize any disruption to the Business. Notwithstanding anything herein to the contrary, no such investigation or examination shall be permitted to the extent that it would require Seller or Trustee to disclose information subject to attorney-client or other privilege.

12

8.2    Conduct of the Business Pending the Closing. From the date of this Agreement until Closing, Seller shall use commercial reasonable efforts to conduct the Business in the ordinary course of business consistent with current practice except as otherwise ordered by the Bankruptcy Court.

8.3    Consents. Seller shall use its reasonable efforts, and Purchaser shall, cooperate with Seller, to obtain at the earliest practicable date all consents and approvals required to consummate the transactions contemplated by this Agreement; provided, however, that Seller shall not be obligated to pay any consideration therefor to any third party from whom consent or approval is requested or to initiate any litigation or legal proceedings to obtain any such consent or approval.

8.4    Preservation of Records.

(a)    Seller and Purchaser agree that each of them shall preserve and keep all documents (and shall take commercially reasonable efforts to affirmatively safeguard and prevent deletion of all such records) held by it for a period of seven years from the Closing Date (except as provided below) and shall make such documents and personnel available to the other and its representatives as may be reasonably required by such Party in connection with, among other things, the operation of the respective businesses of the Parties, any insurance claims, legal proceedings, tax audits, investigations by any governmental agency or authority or in order to enable Seller or Purchaser to comply with their respective obligations under this Agreement and each other agreement, document or instrument contemplated hereby. For the avoidance of doubt, the foregoing shall include the right to make copies of any such documents, including the right to reproduce or copy any servers containing such documents. In the event Seller or Purchaser wishes to destroy such documents before or after that time, such Party shall first give 90 days prior written notice to the other and such other Party shall have the right at its option and expense, upon prior written notice given to such Party within such 90-day period, to take possession of the records within 180 days after the date of such notice.

(b)    During normal business hours for the first six months after the Closing Date and upon at least one week advance notice, Purchaser shall allow Seller and any of its representatives (i) to remove any documents or personal property items that are Excluded Assets and are located at the Business Office, (ii) access to employees and any Purchased Assets for any purpose related to Seller's business and any investigation or litigation arising therefrom, and (iii) to conduct such activities at the Business Office; provided, in each case, that any such activities do not disrupt Purchaser's business. Purchaser shall not destroy any records or other documents located at the Business Office on the Closing Date during the first six month after the Closing Date.

8.5    Confidentiality. Purchaser and Seller shall, and shall cause their respective affiliates and representatives (including, for the avoidance of doubt, the Trustee, any chapter 7 trustee or any trust established under a Chapter 11 plan of Seller or any other successors of Seller) to keep confidential and not disclose to any other Person or entity or use for its own benefit or the benefit of any other Person or entity any confidential information, technology, know-how, trade secrets, inventions or other intellectual property relating to the Business ("Confidential Information") in its possession or control; provided, however, that Seller may disclose and use any Confidential Information existing on the Closing Date and relating to the period prior to the Closing Date in connection with any Excluded Assets and Seller may disclose such Confidential Information to Seller's customers, creditors and their representatives in connection with claims of Seller's customers or creditors arising prior to the Appointment Date. The obligations under this Section 8.5 do not apply to Confidential Information that (i) is or becomes generally available to the public without breach of the commitment provided for in this Section 8.5 or (ii) is required to be disclosed by law or order of the Bankruptcy Court or any

13

governmental agency or other authority; provided, however, that, in any such case, Purchaser or Seller, as applicable, shall notify the other Party as early as reasonably practicable prior to disclosure to allow such Party to take appropriate measures to preserve the confidentiality of such Confidential Information.

8.6    Publicity. Neither of the Parties hereto shall issue any press release concerning this Agreement or the transactions contemplated hereby without obtaining the prior written approval of the other Party hereto, which approval will not be unreasonably withheld, conditioned or delayed, unless, in the sole judgment of Purchaser or Seller, disclosure is otherwise required by applicable law or by the Bankruptcy Court with respect to filings to be made with the Bankruptcy Court in connection with this Agreement, provided that the Party intending to make such release shall use its commercially reasonable efforts consistent with such applicable law or Bankruptcy Court requirement to consult with the other Party with respect to the text thereof.

## ARTICLE IX

## CONDITIONS TO CLOSING

9.1    Conditions Precedent to Obligations of Purchaser. The obligations of Purchaser to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment at or before Closing of each and every one of the following conditions, which may be waived in whole or in part by Purchaser:

(a)    the Sale Order shall have been entered by the Bankruptcy Court;

(b)    the representations and warranties of Seller shall be true in all material respects on and as of the Closing Date, with the same effect as though made on and as of such date, and Seller shall not be in default in any material respect under the provisions of this Agreement;

(c)    Seller shall have delivered, or caused to be delivered, to Purchaser all of the items set forth in Section 4.2; and

(d)    If any of the foregoing conditions is not satisfied by Seller or waived by Purchaser before or at the Closing, Purchaser may terminate this Agreement and Seller shall forthwith return the Deposit to the Purchaser, and neither Party shall have any further obligations to the other, other than under Section 8.4 and any other provision of this Agreement that expressly provides for such survival.

9.2    Conditions Precedent to Obligations of Seller. The obligations of Seller to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment at or before the Closing of the following conditions, which may be waived in whole or in part, by Seller:

(a)    the Sale Order shall have been entered by the Bankruptcy Court;

(b)    the representations and warranties of Purchaser shall be true in all material respects on and as of the Closing Date, with the same effect as though made on and as of such date, and Purchaser shall not be in default in any material respect under the provisions of this Agreement;

14

(c)     Purchaser shall have delivered to Seller all of the items set forth in Section 4.3; and

(d)     Purchaser shall have paid to Seller the Purchase Price and paid or escrowed the other amounts required by this Agreement to be paid or escrowed at or prior to Closing.

9.3    Frustration of Closing Conditions. No Party may rely on the failure of any condition set forth in Sections 9.1 or 9.2, as the case may be, if such failure was caused by such Party's failure to comply with any provision of this Agreement.

## ARTICLE X

## TAXES

10.1    Transfer Taxes. All documentary, stamp, transfer, motor vehicle registration, sales, use, excise and other similar non-income taxes and all filing and recording fees (and any penalties and interest associated with such taxes and fees) arising from or relating to the consummation of the transactions contemplated by this Agreement (collectively, "Transfer Taxes") will be borne by Purchaser, regardless of the Party on whom liability is imposed under the provisions of the laws relating to such Transfer Taxes. Seller and Purchaser shall cooperate and consult with each other prior to filing any tax returns in respect of Transfer Taxes and shall cooperate and otherwise take commercially reasonable efforts to obtain any available refunds for or exemptions from such Transfer Taxes.

10.2    Cooperation and Audits. Purchaser and Seller shall cooperate fully with each other regarding tax matters (including the execution of appropriate powers of attorney) and shall make available to the other as reasonably requested all information, records and documents relating to taxes governed by this Agreement until the expiration of the applicable statute of limitations or extension thereof or the conclusion of all audits, appeals or litigation with respect to such taxes.

## ARTICLE XI

## MISCELLANEOUS

11.1    Survival of Representations and Warranties; Covenants.    Except Seller's representations and warranties to Purchaser set forth in Article V, the representations and warranties made by Seller in this Agreement shall not survive the Closing, and such representations and warranties and any cause of action based on such representations and warranties, shall terminate and expire on the consummation of the Closing. Purchaser and Seller acknowledge that, except as aforesaid, all of Seller's representations and warranties contained in this Agreement are solely conditions to Closing, and after Closing there shall be no liability or obligation under this Agreement in respect of a breach or claimed breach thereto. All representations, warranties and covenants made by Purchaser in this Agreement shall survive Closing.

11.2    Expenses. Except as otherwise provided in this Agreement, each of Seller and Purchaser shall bear its own expenses incurred in connection with the negotiation and execution of this Agreement and each other agreement, document and instrument contemplated by this Agreement and the consummation of the transactions contemplated hereby.

15

11.3    _Injunctive Relief_. Damages at law may be an inadequate remedy for the breach of any of the covenants, promises and agreements contained in this Agreement, and, accordingly, a Party hereto shall be entitled to injunctive relief with respect to any such breach, including specific performance of such covenants, promises or agreements or an order enjoining a Party from any threatened, or from the continuation of any actual, breach of the covenants, promises or agreements contained in this Agreement. The rights set forth in this Section 11.3 shall be in addition to any other rights which a Party hereto may have at law or in equity pursuant to this Agreement.

11.4    _Submission to Jurisdiction; Consent to Service of Process_.

(a)    Without limiting a Party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 11.8 hereof; provided, however, that if the Bankruptcy Case has closed, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Middle District of Florida or the Circuit Court for Orange County, Florida, and any appellate court from any thereof, for the resolution of any such claim or dispute. The Parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the Parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

11.5    _Waiver of Right to Trial by Jury_. Each Party to this Agreement waives any right to trial by jury in any action, matter or proceeding regarding this Agreement or any provision hereof.

11.6    _Entire Agreement; Amendments and Waivers_. This Agreement (including the schedules and exhibits hereto) represent the entire understanding and agreement between the Parties hereto with respect to the subject matter hereof. This Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by the Party against whom enforcement of any such amendment, supplement, modification or waiver is sought. No action taken pursuant to this Agreement, including any investigation by or on behalf of any Party, shall be deemed to constitute a waiver by the Party taking such action of compliance with any representation, warranty, covenant or agreement contained herein. The waiver by any Party hereto of a breach of any provision of this Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach. No failure on the part of any Party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such Party preclude any other or further exercise thereof or the exercise of any other right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

11.7    _Governing Law_. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida applicable to contracts made and performed in such State, without regard to its conflicts of laws principles.

16

11.8    Notices. All notices and other communications under this Agreement shall be in writing and shall be deemed given (i) when delivered personally by hand, (ii) when sent by facsimile during normal business hours on a Business Day (with written confirmation of transmission) or (iii) one Business Day following the day sent by overnight courier (with written confirmation of receipt), in each case at the following addresses and facsimile numbers (or to such other address or facsimile number as a Party may have specified by notice given to the other Party pursuant to this provision):

If to Trustee, to:

Alex Moglia, Bankruptcy Trustee
c/o Moglia Advisors
1325 Remington Road, Suite H
Schaumburg, IL 60173
Facsimile: (___) ___-____

With a copy (which shall not constitute notice) to:

Latham, Shuker, Eden & Beaudine, LLP
111 N. Magnolia Avenue, Suite 1400
Orlando, Florida 32801
Attention:  R. Scott Shuker, Esq.
Facsimile No.: (407) 481-5801

If to Purchaser, to:

EUROPE MANAGEMENT SPRL
CHAUSSEE SAINT-PIERRE 367
BRUSSELS 1040 BELGIUM
Attention: SURESH C. SAINANEE
Facsimile: (32 2-733 9694
ssainanee@emblogistics.com

With a copy (which shall not constitute notice) to:

Esther McKean, Esq. & Jules Cohen, Esq.
c/o Akerman LLP
P.O. Box 231
Orlando, FL 32801
Facsimile: (407 843 6610
esther.mckean@akerman.com
jules.cohen@akerman.com

11.9    Severability. If any term or other provision of this Agreement is invalid, illegal, or incapable of being enforced by any law or public policy, all other terms or provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any Party. Upon such determination that any term or other provision is invalid, illegal, or incapable of being enforced, the Parties hereto shall negotiate in good faith to modify this Agreement so as to affect the original

17

intent of the Parties as closely as possible in an acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible.

11.10  Assignment. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns. Nothing in this Agreement shall create or be deemed to create any third-party beneficiary rights in any Person or entity not a Party to this Agreement. No assignment of this Agreement or of any rights or obligations hereunder may be made by either Seller or Purchaser (by operation of law or otherwise) without the prior written consent of the other Party hereto and any attempted assignment without the required consents shall be void, provided that Purchaser may assign some or all of its obligations hereunder to one or more subsidiaries formed by it prior to the Closing. No assignment of any obligations hereunder shall relieve the Parties hereto of any such obligations. Upon any such permitted assignment, the references in this Agreement to Seller or Purchaser shall also apply to any such assignee unless the context otherwise requires.

11.11  Counterparts; Electronic Delivery. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. This Agreement, and any amendments hereto, to the extent signed and delivered by means of a facsimile machine or other electronic transmission, will be treated in all manner and respects as an original agreement and will be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person.

11.12  Trustee Liability. The Trustee was appointed by the Bankruptcy Court to manage and oversee the business affairs and properties of the Seller as an agent and without personal liability. Except in the case of fraud, neither the Trustee, nor any agent, advisor, representative, employee, partner, servant, trustee, attorney or other person acting on behalf of, or otherwise related to or affiliated with the Trustee, shall have any personal liability directly or indirectly, under or in connection with: (i) this Agreement, (ii) any agreement made or entered into under or pursuant to the provisions of this Agreement, or (iii) any amendment or amendments to any of the foregoing made at any time or times, heretofore or hereafter. Except in the case of fraud, Purchaser and its successors and assigns, hereby waives any right to bring any claims related to this Agreement against individual persons. This Section shall survive notwithstanding any other provisions or termination of any other obligations. For avoidance of doubt, the provisions of this paragraph do not override Seller's express obligations under this Agreement.

11.13  Deposit Agent Provisions.

(a)  If conflicting demands relating to this Agreement are made upon the Deposit Agent, the parties hereto expressly agree that the Deposit Agent shall have the absolute right to do either or both of the following: (i) withhold and stop all actions in performance of this escrow and await settlement of the controversy by final appropriate legal proceedings or as otherwise mutually directed in writing by Purchaser and Seller; or (ii) file suit in declaratory relief or interpleader and obtain an order from the Bankruptcy Court requiring the parties to interplead and litigate in such court their several claims and rights amongst themselves. Upon the filing of any such declaratory relief or interpleader suit and depositing with the Bankruptcy Court all funds deposited by the Parties under this Agreement, the Deposit Agent shall thereupon be fully released and discharged from any and all obligations to further perform the duties or obligations imposed upon it by this Agreement.

18

(b)     In no event shall Deposit Agent be liable for any act or omission under or in respect of this Agreement except where Deposit Agent's acts or omissions are the result of its gross negligence or willful misconduct. Accordingly, Deposit Agent shall not incur any liability with respect to (i) any action taken or omitted in good faith, including upon advice of its legal counsel given with respect to any questions relating to the duties and responsibilities of the Deposit Agent under this Agreement, or (ii) any action taken or omitted in reliance on any instrument, not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and accuracy of any information contained therein, which Deposit Agent shall in good faith believe to be genuine, to have been signed or presented by a person or persons having authority to sign or present such instrument, and to conform with the provisions of this Agreement.

(c)     Deposit Agent reserves the right to resign from its role as escrow agent by giving the Seller and the Purchaser written notice of such resignation. If Seller and Purchaser have jointly designated a successor escrow agent in writing, then Deposit Agent shall deliver any funds held by Deposit Agent under this Agreement to such successor escrow agent. However, if no such successor escrow agent is designated by Seller and Purchaser in writing within ten days after any notice of resignation from Deposit Agent, then Deposit Agent may deliver any such funds to the Bankruptcy Court and interplead Purchaser and Seller in connection therewith.

(d)     Purchaser acknowledges that Deposit Agent also serves as Trustee's legal counsel in connection with this Agreement and the Bankruptcy Case, and each of Seller, Trustee and Purchaser consent to Deposit Agent serving in such dual capacity. In the event of any actual dispute or adversity between Trustee and Purchaser, Deposit Agent shall be entitled to resign as Deposit Agent and to represent Trustee in such dispute or adversity, and in such case shall deliver any funds held by Deposit Agent pursuant to this Agreement either to a successor escrow agent designated by Seller and Purchaser, or to a court of competent jurisdiction as provided for above.

## ARTICLE XII

## DEFAULTS AND REMEDIES

12.1     Default by Purchaser; Seller Remedies. If the Closing fails to occur because of a default, misrepresentation or breach of warranty by Purchaser, Seller shall be entitled to retain the Deposit as Seller's sole remedy at law or in equity for Purchaser's failure to close on the purchase of the Property. In any such event, Purchaser shall continue to be liable under any provisions of this Agreement that expressly survive the termination of this Agreement.

12.2     Default by Seller; Purchaser Remedies. If the Closing fails to occur solely because of a default by Seller under the provisions of this Agreement, the Sale Order or any other order of the Bankruptcy Court applicable to the sale of the Assets hereunder, then Purchaser may, as its exclusive remedy, receive a return of its Deposit and terminate this Agreement by notice to Seller.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their respective officers or other persons thereunto duly authorized, as of the date first written above.

**PURCHASER:**

EUROPE MANAGEMENT SPRL

By: _____
    Name: SURESH SAINANEE
    Title: MANAGING DIRECTOR
        (Gérant)

EUROPE MANAGEMENT SPRL
Chaussée Saint-Pierre, 367
1040 Bruxelles
TVA : BE 0863 819 543

**SELLER:**

IPS WORLDWIDE, LLC

By: _____
    Name: _____
    Title: Trustee

20

**SCHEDULE 2.2 (d)**
**ASSUMED CONTRACTS**

To be determined.

## SCHEDULE 2.4 (c)
## ADDITIONAL ASSUMED LIABILITIES

To be determined.

**IPS WorldWide**
**Accounts Receivable - North America**
As of June 6, 2019

| | 0-30 days | 30-60 days | 60-90 days | Over 90 | Total | Settled (Y/N) | Adjusted Total |
|---|---|---|---|---|---|---|---|
| | - | - | - | - | - | | |
| ACLARA | 13.44 | 25.19 | - | 7.53 | 46.16 | (46.16) | - |
| AMCOR RIGID PLASTICS | 1,684.71 | 3,224.46 | - | - | 4,909.17 | | 4,909.17 |
| ARCELOR MITTAL | 0.88 | 0.85 | 0.85 | - | 2.58 | (2.58) | - |
| ARCONIC | - | 2,934.48 | 4,819.90 | 36,443.49 | 44,197.87 | (44,197.87) | - |
| ARRIS | 2,409.29 | 2,885.87 | 3,490.18 | 12,621.12 | 21,406.46 | | 21,406.46 |
| ATKORE INTERNATIONAL | 4,379.79 | 9,758.27 | 8,320.43 | 12,609.80 | 35,068.29 | (35,068.29) | - |
| B3 DIAGNOSTIC LABORATORY | - | - | 760.00 | 7,220.00 | 7,980.00 | | 7,980.00 |
| BIO-RAD LABORATORIES | 7,027.69 | 5,209.59 | 710.45 | 739.23 | 13,686.96 | (13,686.96) | - |
| BOSSARD INDUSTRIAL PRODUCTS | 80.55 | 80.09 | 224.08 | 2,114.87 | 2,499.59 | | 2,499.59 |
| BRADY CORPORATION | 569.68 | 686.19 | - | - | 1,255.87 | | 1,255.87 |
| CAPITAL LIGHTING | 61.15 | - | - | - | 61.15 | | 61.15 |
| COLGATE-PALMOLIVE COMPANY | 3,952.00 | 3,869.92 | 6,468.06 | 24,769.54 | 39,059.52 | | 39,059.52 |
| CONCAST METAL | 194.62 | 109.77 | 182.14 | 144.44 | 630.97 | | 630.97 |
| ELO TOUCHSYSTEMS | 405.27 | - | - | 718.20 | 1,123.47 | | 1,123.47 |
| FLUIDIGM | 700.00 | 875.00 | 700.00 | 1,750.00 | 4,025.00 | (4,025.00) | - |
| FRISTAM PUMPS USA | 220.00 | 220.00 | 271.58 | 281.84 | 993.42 | | 993.42 |
| GENERAL ELECTRIC COMPANY | 83,969.95 | 115,007.96 | 84,125.99 | 138,326.03 | 421,429.93 | | 421,429.93 |
| GIBRALTAR INDUSTRIES | 35.64 | - | - | - | 35.64 | (35.64) | - |
| HARRIS TEA CO. | 915.74 | 244.30 | 499.45 | 249.22 | 1,908.71 | | 1,908.71 |
| INFINEON | - | - | - | 736.35 | 736.35 | | 736.35 |
| INTEGRATED SUPPLY NETWORK | - | - | 1,315.60 | 657.80 | 1,973.40 | (1,973.40) | - |
| J L FRENCH | 294.65 | 244.75 | 331.68 | 1,369.45 | 2,240.53 | | 2,240.53 |
| JENSEN TOOLS / TEST EQUITY | - | 1.05 | 6.90 | - | 7.95 | | 7.95 |
| KTM MOTORCYCLES | 1.27 | 716.04 | - | - | 717.31 | | 717.31 |
| LATICRETE INTERNATIONAL | 6.65 | 27.55 | 26.60 | 4.75 | 65.55 | | 65.55 |
| LIFE TECHNOLOGIES | 8,420.48 | 7,955.91 | 7,300.46 | 14,357.72 | 38,034.57 | (38,034.57) | - |
| MCLAUGHLIN BODY COMPANY | 20.25 | 18.00 | 27.00 | 283.65 | 348.90 | | 348.90 |
| MSC DIRECT | 11,827.57 | 5,227.03 | 2,176.67 | 9,231.85 | 28,463.12 | | 28,463.12 |
| NATURAL GAS SOLUTIONS | 3.65 | 22.63 | 366.20 | - | 392.48 | | 392.48 |
| NEOGEN CORPORATION | 632.61 | 687.92 | 458.24 | 192.60 | 1,971.37 | (1,971.37) | - |
| NUVASIVE INC. | 2,666.00 | 2,666.00 | 2,666.00 | 10,664.00 | 18,662.00 | (18,662.00) | - |
| REGAL BELOIT CORP | - | - | - | 659.62 | 659.62 | | 659.62 |

EXHIBIT "B"

| | | | | | | |
|---|---|---|---|---|---|---|
| REXNORD | 10,833.00 | 10,833.00 | 10,833.00 | 10,833.00 | 43,332.00 | (43,332.00) | - |
| RIVERSIDE GROUP | - | - | - | 0.85 | 0.85 | | 0.85 |
| SCHNEIDER NATIONAL | 279.67 | 2,719.55 | - | - | 2,999.22 | | 2,999.22 |
| SHEBOYGAN PAINT | 1.25 | - | - | - | 1.25 | (1.25) | - |
| STANLEY | - | - | 3,492.54 | 26,905.02 | 30,397.56 | (30,397.56) | - |
| SUEZ WATER TECHNOLOGIES & SOLUTIONS | 1,512.93 | 2,273.12 | 4,148.01 | 5,928.51 | 13,862.57 | (13,862.57) | - |
| SYNCHRONY FINANCIAL | 3,658.50 | 21,934.78 | 25,776.28 | 12,149.88 | 63,519.44 | (63,519.44) | - |
| TRIUMPH ACTUATION SYSTEMS | 867.95 | - | 271.49 | 850.69 | 1,990.13 | | 1,990.13 |
| TRUE VALUE CO. - ADVERTISING | 21.44 | 5.88 | 27.28 | 5,261.85 | 5,316.45 | | 5,316.45 |
| VEROGEN | - | 390.00 | 390.00 | - | 780.00 | | 780.00 |
| WATLOW | 2,324.53 | 2,907.84 | 2,742.37 | - | 7,974.74 | (7,974.74) | - |
| XERIUM TECHNOLOGIES | - | 17.45 | 109.83 | 16.52 | 143.80 | | 143.80 |
| YRC FREIGHT | - | - | 64.05 | 4,444.50 | 4,508.55 | (4,508.55) | - |
| ZEKELMAN INDUSTRIES | 280.75 | - | - | 30.09 | 310.84 | (310.84) | - |
| | 150,273.55 | 203,780.44 | 173,103.31 | 342,574.01 | 869,731.31 | (321,610.79) | 548,120.52 |

*Note: Some of the underlying invoices to this receivable were in Canadian Dollars.  However, almost all of those were in accounts that were settled so the dollar
  impact from a Canadian traslation is <$100

**Moglia Advisors or the Chapter 11 Trstee makes no representations as the collectibility of the above balances**

GRAND LIVRE
DU COMPTE 400CL047001 AU COMPTE 400IPSLLCMOT
Période du 1/01/2018 au 31/05/2019
Avec brouillon    Avec simulation    A

| N° Mvt | Journal | Date | N° de pièce | Libellé de l'écriture | S | Montant débit | Lett. | Montant crédit | Solde cumulé |
|---|---|---|---|---|---|---|---|---|---|
| **400CL047001** | | **ABACO GB927559189** | | | | | | | |
| 6123 | V | 2/22/2019 | 20190016 | ABACO GB927559189 35497 02/201... | V | 79.58 EUR | | | 79.58 EUR |
| 6124 | V | 2/22/2019 | 20190017 | ABACO GB927559189 35499 02/201... | V | 28.14 EUR | | | 107.72 EUR |
| 6301 | V | 5/31/2019 | 20190060 | ABACO GB927559189 39468 05/201... | B | 445.11 EUR | | | 552.83 EUR |
| 6302 | V | 5/31/2019 | 20190061 | ABACO GB927559189 40020 05/201... | B | 54.47 EUR | | | 607.30 EUR |
| **TOTAL COMPTE 400CL047001** | | | | *Solde compte débiteur* | | **607.30 EUR** | | | **607.30 EUR** |
| **400CL115001** | | **REXNORD NL** | | | | | | | |
| 6222 | V | 4/26/2019 | 20190039 | REXNORD NL 37977 04/2019 | B | 1197.92 EUR | | | 1197.92 EUR |
| 6295 | V | 5/31/2019 | 20190054 | REXNORD NL 39064 05/2019 | B | 1197.92 EUR | | | 2395.84 EUR |
| **TOTAL COMPTE 400CL115001** | | | | *Solde compte débiteur* | | **2395.84 EUR** | | | **2395.84 EUR** |
| **400CL115002** | | **REXNORD BE** | | | | | | | |
| 5692 | V | 7/27/2018 | 20180083 | REXNORD BE 27492 07/2018 | V | 299.31 EUR | | | 299.31 EUR |
| 5826 | V | 9/28/2018 | 20180105 | REXNORD BE 29616 09/2018 | V | 299.31 EUR | | | 598.62 EUR |
| 5878 | V | 10/26/2018 | 20180118 | REXNORD BE 30709 10/2018 | V | 299.31 EUR | | | 897.93 EUR |
| 6294 | V | 5/31/2019 | 20190053 | REXNORD BE 39063 05/2019 | B | 299.31 EUR | | | 1197.24 EUR |
| **TOTAL COMPTE 400CL115002** | | | | *Solde compte débiteur* | | **1197.24 EUR** | | | **1197.24 EUR** |
| **400CL115010** | | **REXNORD DE81126215 (VAG)** | | | | | | | |
| 5284 | V | 1/24/2018 | 20180007 | REXNORD DE81126215 (VAG) 7380 ... | V | 687.43 EUR | | | 687.43 EUR |
| 5367 | V | 2/23/2018 | 20180023 | REXNORD DE81126215 (VAG) 7400 ... | V | 687.43 EUR | | | 1374.86 EUR |
| 5427 | V | 3/30/2018 | 20180031 | REXNORD DE81126215 (VAG) 7420 ... | V | 687.43 EUR | | | 2062.29 EUR |
| 5552 | V | 5/25/2018 | 20180056 | REXNORD DE81126215 (VAG) 7460 ... | V | 687.43 EUR | | | 2749.72 EUR |
| 5619 | V | 6/27/2018 | 20180069 | REXNORD DE81126215 (VAG) 7480 ... | V | 687.43 EUR | | | 3437.15 EUR |
| 5691 | V | 7/27/2018 | 20180082 | REXNORD DE81126215 (VAG) 27495... | V | 687.43 EUR | | | 4124.58 EUR |
| 5755 | V | 8/31/2018 | 20180091 | REXNORD DE81126215 (VAG) 28447... | V | 687.43 EUR | | | 4812.01 EUR |

EXHIBIT "C"

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 5825 | V | 9/28/2018 | 20180104 | REXNORD DE81126215 (VAG) 29619... | V | 687.43 EUR | | | 5499.44 EUR |
| 5870 | BQ | 10/25/2018 | 19 | REXNORD DE81126215 (VAG) | B | | | 1062.88 EUR | 4436.56 EUR |
| 5877 | V | 10/26/2018 | 20180117 | REXNORD DE81126215 (VAG) 30966... | V | 687.43 EUR | | | 5123.99 EUR |
| 5938 | V | 11/30/2018 | 20180131 | REXNORD DE81126215 (VAG) 32012... | V | 687.43 EUR | | | 5811.42 EUR |
| 6117 | ODAU | 12/31/2018 | 201802 | REXNORD DE81126215 (VAG) | B | | | 6498.85 EUR | -687.43 EUR |
| 5998 | V | 12/28/2018 | 20180143 | REXNORD DE81126215 (VAG) 33692... | V | 687.43 EUR | | | |
| TOTAL COMPTE 400CL115010 | | | | Compte soldé | | 7561.73 EUR | | 7561.73 EUR | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 400CL115011 | REXNORD KETTE DE148009254 | | | | | | | | |
| 6077 | BQ | 1/8/2019 | 02 | REXNORD KETTE DE148009254 | B | | | 375.45 EUR | -375.45 EUR |
| 6050 | V | 1/25/2019 | 20190002 | REXNORD KETTE DE148009254 3415... | V | 375.45 EUR | | | |
| 6296 | V | 5/31/2019 | 20190055 | REXNORD KETTE DE148009254 3906... | B | 375.45 EUR | | | 375.45 EUR |
| TOTAL COMPTE 400CL115011 | | | | Solde compte débiteur | | 750.90 EUR | | 375.45 EUR | 375.45 EUR |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 400CL125002 | BRADY NV BE | | | | | | | | |
| 6224 | V | 4/26/2019 | 20190041 | BRADY NV BE 38030 04/2019 | B | 822.85 EUR | | | 822.85 EUR |
| 6299 | V | 5/31/2019 | 20190058 | BRADY NV BE 39129 05/2019 | B | 905.18 EUR | | | 1728.03 EUR |
| TOTAL COMPTE 400CL125002 | | | | Solde compte débiteur | | 1728.03 EUR | | | 1728.03 EUR |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 400CL137002 | Elo Touch Solutions US | | | | | | | | |
| 6218 | V | 4/26/2019 | 20190035 | Elo Touch Solutions US 38907 0... | B | 179.53 EUR | | | 179.53 EUR |
| 6300 | V | 5/31/2019 | 20190059 | Elo Touch Solutions US 40350 0... | B | 280.60 EUR | | | 280.60 EUR |
| TOTAL COMPTE 400CL137002 | | | | Solde compte débiteur | | 460.13 EUR | | | 460.13 EUR |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 400CL197001 | BIO-RAD GMBH - CH116317176 | | | | | | | | |
| 6293 | V | 5/29/2019 | 20190052 | BIO-RAD GMBH - CH116317176 389... | B | 11268.00 EUR | | | 11268.00 EUR |
| TOTAL COMPTE 400CL197001 | | | | Solde compte débiteur | | 11268.00 EUR | | | 11268.00 EUR |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 400CL200601 | GE NL | | | | | | | | |
| 5527 | AN | 1/1/2018 | 15 | (CV) GE NL 22 sur Fac. 5509 | B | | | 7.70 EUR | -7.70 EUR |
| 6177 | V | 3/29/2019 | 20190024 | GE NL  37899 03/2019 | V | 54552.56 EUR | | | 54544.86 EUR |
| 6226 | V | 4/26/2019 | 20190043 | GE NL 38199.66 | B | 38199.66 EUR | | | 92744.52 EUR |
| 6262 | V | 4/30/2019 | 20190048 | GE NL 30655 ASIA 03/2019 | B | 7883.42 EUR | | | 100627.94 EUR |
| 6263 | V | 4/30/2019 | 20190049 | GE NL 31062 ASIA 04/2019 | B | 9388.98 EUR | | | 110016.92 EUR |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 6291 | V | 5/29/2019 | 20190050 | GE NL 31561 Asia 05/2019 | B | 11245.28 EUR | | | 121262.20 EUR |
| 6297 | V | 5/29/2019 | 20190056 | GE NL 40279 05/2019 | B | 57250.88 EUR | | | 178513.08 EUR |
| **TOTAL COMPTE 400CL200601** | | | | *Solde compte débiteur* | | **178520.78 EUR** | | **7.70 EUR** | **178513.08 EUR** |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **400CL450001** | | **LIFE TECH UK** | | | | | | | |
| 6121 | V | 2/26/2019 | 20190014 | LIFE TECH UK 36611 02/2019 | V | 13758.60 EUR | | | 13758.60 EUR |
| 6181 | V | 3/29/2019 | 20190028 | LIFE TECH UK 37743 03/2019 | V | 13758.60 EUR | | | 27517.20 EUR |
| 6259 | V | 4/30/2019 | 20190045 | LIFE TECH UK 39175 04/2019 | B | 13758.60 EUR | | | 41275.80 EUR |
| 6298 | V | 5/24/2019 | 20190057 | LIFE TECH UK 39454 05/2019 | B | 13758.60 EUR | | | 55034.40 EUR |
| **TOTAL COMPTE 400CL450001** | | | | *Solde compte débiteur* | | **55034.40 EUR** | | | **55034.40 EUR** |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **400IPSLLCMOT** | | **IPS LLC / Clients and fee** | | | | | | | |
| 6003 | V | 12/31/2018 | 20180148 | IPS LLC / Clients and fee 127... | V | 563.87 EUR | | | 563.87 EUR |
| 6060 | V | 1/31/2019 | 20190012 | IPS LLC / Clients and fee 1279... | V | 1063.66 EUR | | | 1063.66 EUR |
| 6144 | V | 2/28/2019 | 20190023 | IPS LLC / Clients and fee 1280... | V | 874.31 EUR | | | 874.31 EUR |
| 6188 | V | 3/29/2019 | 20190034 | IPS LLC / Clients and fee | V | 659.33 EUR | | | 659.33 EUR |
| 6258 | V | 4/30/2019 | 20190044 | IPS LLC / Clients and fee 04/2... | B | 864.59 EUR | | | 864.59 EUR |
| 6292 | V | 5/29/2019 | 20190051 | IPS LLC / Clients and fee 1283... | B | 616.76 EUR | | | 616.76 EUR |
| **TOTAL COMPTE 400IPSLLCMOT** | | | | *Solde compte débiteur* | | **4642.52 EUR** | | | **4642.52 EUR** |
| **TOTAL SOUS CLASSE 40** | | | | | | **264166.87 EUR** | | **7944.88 EUR** | **256221.99 EUR** |

Note: This report is in Euros.  Using an exchange of $1.13 $$ to the Euro, the transalted dollars is $289,530.85

**Moglia Advisors or the Chapter 11 Trstee makes no representations as the collectibility of the above balances**