**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

**In re**

**IPS WORLDWIDE, LLC**

**Debtor.**

_____/

**CASE NO. 6:19-bk-00511-KSJ**

**CHAPTER 11**

**DISCLOSURE STATEMENT**
**PURSUANT TO 11 U.S.C. § 1125 FOR IPS WORLDWIDE, LLC.**
**SUBMITTED BY THE CHAPTER 11 TRUSTEE**

R. Scott Shuker, Esq.
Mariane L. Dorris, Esq.
John B. Dorris, Esq.
Shuker & Dorris, P.A.
121 S. Orange Ave., Suite 1120
Orlando, FL 32801
Telephone: (407) 337-2060
Facsimile: (407) 337-2050
_Counsel for Chapter 11 Trustee_

Submitted November 1, 2019

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re

IPS WORLDWIDE, LLC

Debtor.

_____/

CASE NO. 6:19-bk-00511-KSJ

CHAPTER 11

**DISCLOSURE STATEMENT**
**PURSUANT TO 11 U.S.C. § 1125 FOR IPS WORLDWIDE, LLC**

## I.   INTRODUCTION AND SUMMARY

This Disclosure Statement ("Disclosure Statement") is filed pursuant to the requirements of § 1125 of Title 11 of the United States Code (the "Bankruptcy Code"). This Disclosure Statement is intended to provide adequate information to enable holders of claims in the above-captioned bankruptcy case ("Bankruptcy Case") to make informed judgments about the Plan of Liquidation (the "Plan") submitted by the chapter 11 Trustee, Alex D. Moglia, (the "Chapter 11 Trustee"), for IPS Worldwide, LLC ("IPS", or "Debtor"). The Chapter 11 Trustee is soliciting votes to accept the Plan. The overall purpose of the Plan is to provide for the liquidation and collection of assets in a manner designed to maximize recoveries to all creditors.

**THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN. THIS INTRODUCTION AND SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN. THE PLAN IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND ANY HOLDER OF ANY CLAIM OR INTEREST SHOULD READ AND CONSIDER THE PLAN CAREFULLY IN LIGHT OF THIS DISCLOSURE STATEMENT IN MAKING AN INFORMED JUDGMENT ABOUT THE PLAN. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE**

**PLAN, THE PLAN CONTROLS.  ALL CAPITALIZED TERMS USED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE DEFINITIONS ASCRIBED TO THEM IN THE PLAN UNLESS OTHERWISE DEFINED HEREIN.**

**NO REPRESENTATION CONCERNING THE DEBTOR IS AUTHORIZED OTHER THAN AS SET FORTH HEREIN.  ANY REPRESENTATIONS OR INDUCEMENTS MADE THAT ARE OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION ABOUT THE PLAN.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AUDIT.  FOR THAT REASON, AS WELL AS THE COMPLEXITY OF THE DEBTOR'S BUSINESS AND FINANCIAL AFFAIRS, AND THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES, AND PROJECTIONS WITH COMPLETE ACCURACY, THE CHAPTER 11 TRUSTEE IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE.  THIS DISCLOSURE STATEMENT INCLUDES FORWARD LOOKING STATEMENTS BASED LARGELY ON CURRENT EXPECTATIONS AND PROJECTIONS ABOUT FUTURE EVENTS AND FINANCIAL TRENDS AND ARE SUBJECT TO A NUMBER OF RISKS, UNCERTAINTIES AND ASSUMPTIONS.**

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.**

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, CAUSES OF ACTION, AND OTHER ACTIONS, THE DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.**

**THE CHAPTER 11 TRUSTEE BELIEVES THAT THE PLAN IS IN THE BEST INTEREST OF CREDITORS.  ALL CREDITORS ARE URGED TO VOTE IN FAVOR OF THE PLAN.  ALL CREDITORS WHICH ARE ENTITLED TO VOTE ARE ENCOURAGED TO READ AND CAREFULLY CONSIDER THIS ENTIRE DISCLOSURE STATEMENT TOGETHER WITH THE PLAN PRIOR TO COMPLETING AND SUBMITTING A BALLOT PURSUANT TO THIS SOLICITATION.**

As prescribed by the Bankruptcy Code and the Rules, Claims asserted against, and equity

Interests in, the Debtor are placed into "Classes."   The Plan designates three (3) classes of Claims and one class of Interests.   The Plan contemplates paying the class of Claims over time, as more fully set forth *infra*.   Equity Interests will be extinguished.

To the extent the legal, contractual, or equitable rights with respect to any Claim or Interest asserted against the Debtor are altered, modified, or changed by treatment proposed under the Plan, such Claim or Interest is considered "Impaired," and the holder of such Claim or Interest is entitled to vote in favor of or against the Plan.   A Ballot for voting in favor of or against the Plan ("Ballot") will be mailed along with the Plan.

**THE VOTE OF EACH CREDITOR OR INTEREST HOLDER WITH AN IMPAIRED CLAIM OR INTEREST IS IMPORTANT.   TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED AT THE ADDRESS AND BY THE DATE SET FORTH IN THE BALLOT.**

---

**VOTING DEADLINE**

The last day to vote to accept or reject the Plan is _____, 2020.  All votes must be received by the voting Trustee by 5:00 p.m. (EST) on that day.

---

Upon receipt, the Ballots will be tabulated, and the results of the voting will be presented to the Bankruptcy Court for its consideration.   As described in greater detail in Section VII of this Disclosure Statement, the Code prescribes certain requirements for confirmation of a plan. The Bankruptcy Court will schedule a hearing to consider whether the Debtor has complied with those requirements (the "Confirmation Hearing").

The Code permits a court to confirm a plan even if all Impaired Classes have not voted in favor of a plan.   Confirmation of a plan over the objection of a Class is sometimes called "cramdown."   As described in greater detail in Section VII of this Disclosure Statement, the Debtor has expressly reserved the right to seek cramdown in the event the Impaired Classe does not vote in favor of the Plan.

## II.    DESCRIPTION OF DEBTOR'S BUSINESS

A.    <u>In General</u>

The Debtor was founded in 1998 by William Davies, ("Davies"), with the ambition to create a company utilizing sophisticated technology to streamline shipping and freight transactions. The Debtor was wholly owned by DACACO Holdings, LLC, ("DACACO"), a Florida corporation. DACACO originally had five partners developing and/or operating the Debtor: Davies, Charles Casey, ("Casey"), Douglas Cook, "Cook"), Michael McNett, ("M. McNett"), and Lewis Jacques McNett, ("J. McNett"). Casey and Cook eventually withdrew as members of DACACO in 2011 through a separation agreement. At the petition date, Davies served as President and Managing Member holding 67% interest, and M. McNett and J. McNett served as Vice-Presidents holding 22% and 11% interest in the Debtor, respectively.

Davies and his team created a system capable of analyzing millions of freight bills for their customers. The Debtor could process and analyze invoices following its rigorous quality control procedures ensuring efficiency and accuracy. The freight invoice processing data was readily available to its customers through an online portal providing transaction transparency.

The Debtor's business developed into providing two areas of services for its customers. The largest source of revenue came from Freight Auditing. The Debtor analyzed and reviewed shipping transaction invoices earning service fees from the effort. Customers utilizing Freight Auditing services could either pay the freight invoice to the shipping Trust directly, or route payment through the Debtor. The Debtor created numerous bank accounts to facilitate the funds transfers. The second significant revenue stream came from Carrier Contract Management whereby the Debtor negotiated contracts between its customers and shipping companies. Some customers utilized both services.

The Debtor eventually opened offices and operations in multiple cities around the globe.

The Debtor operated with employees and contractors in Florida, Pennsylvania, and Maryland, as well as in Mexico, India, Singapore, Brussels, Brazil, and Hong Kong. Debtor's operations in Brussels and Brazil were through wholly-owned subsidiaries.

B. Reasons for Bankruptcy Filing

The Debtor's Amended Case Management Summary, filed February 11, 2019, indicates the accumulation of trade debt, apparently from operational deficiencies, lead to filing the petition. (Doc. No. 101) Additional analysis during the pendency of the bankruptcy case indicates continuing annual losses over multiple years created significant financial pressure for the Debtor. The Debtor's overseas operations consistently affected profits as domestic funds would consistently be used to supplement operations overseas.

The Debtor engaged in a series of loans with insiders and affiliates which further affected profitability. While some loans were repaid, others were never repaid. As discussed *supra*, analysis continues into conveyances and transfers which may be preferential or fraudulent.

C. Events Subsequent to Chapter 11 Bankruptcy Filing.

The Debtor sought protection under chapter 11 of the Code by filing a voluntary petition with the Court on January 25, 2019. IPS subsequently filed a *Statement of Financial Affairs* and *Schedules* on February 8, 2019, purporting assets of $13.5 million [later revised downward to $2.5 million in *Amended Schedules A/B*, (Doc. No. 100)] and estimated liabilities of nearly $52 million of nonpriority unsecured debt. (Doc. No. 92). A substantial number of potential claims were listed as "unknown" amounts. The *Schedules* indicated the Debtor was continuing to compile information about pre-petition transfers but did identify two transfers of Debtor's assets within two years of the petition date.

On February 6, 2019, the United States Trustee, (the "U.S. Trustee"), filed its *Emergency*

*Unopposed Motion to Appoint a Chapter 11 Examiner*, (Doc No. 56), which was granted on February 14, 2019, (Doc. No. 124). The U.S. Trustee subsequently filed its *Appointment of Chapter 11 Examiner*, (Doc. No. 125) appointing Maria M. Yip, (the "Examiner"). The United States Trustee formed an Official Committee of Unsecured Creditors consisting of, Suez WTS USA, Inc. d/b/a Suez Water Technologies & Solutions, Xerium Technologies, Inc., and Atkore International Group, Inc. (the "Committee".) on February 15, 2019.  The Committee, working with the Examiner, and with the cooperation of the Debtors' counsel, began the process of identifying potential sources of recovery and potential litigation targets to recover any assets transferred outside of the estate.

On March 6, 2019, the Examiner filed the first (of three) *Examiner's Interim Report* (Doc. No. 182). The *Second Interim Report of Examiner* was filed April 2, 2019 (Doc. No. 276), and the *Examiner's Third Interim Report* was filed May 10, 2019 (Doc. No. 382), (collectively, the "Examiner Reports"). The Examiner made extensive efforts to investigate the multiple bank accounts in multiple countries at Bank of America, Regions Bank, and TD Bank. The Examiner's analysis indicating substantial problems with segregating client funds, unexplained and/or suspicious transfers, and significant and ongoing operating losses in multiple offices. The Examiner Reports recognized the inherent value of the Debtor's assets and recommended preservation of the business as a going concern. The Examiner Reports made additional recommendations regarding eventual distribution of customer funds from the various bank accounts.

On April 5, 2019, the Court issued its *Order Granting Motion to Appoint Trustee*. (Doc. No. 290). The U.S. Trustee filed its *Notice of Appointment of Chapter 11 Trustee (Alex Moglia)* the same day. (Doc. No. 291). On April 8, 2019, The U.S. Trustee filed its *Notice of Acceptance*

*of Appointment as Chapter 11 Trustee (Alex Moglia)*. (Doc. No. 297). The Court subsequently issued its *Order Granting Motion to Appoint Trustee*. (Doc. No. 308).

The *Notice of Examiner's Proposed Procedures For Resolution of Issues, If Any, Concerning Recommendations Regarding Accounts Maintained by the Debtor and Notice of Opportunity to Object to Proposed Procedures* was filed on April 19, 2019, (Doc. No. 328), and amended April 22, 2019 (Doc. No. 333), providing the Examiner's final assessment of appropriate distributions of customer funds based upon an analysis of various bank accounts. The Court subsequently issued its *Order Establishing Procedures and Deadlines for Resolution of Issues Concerning Examiner's Recommendations Regarding Accounts Maintained by the Debtor*, (the "Resolutions Procedure Order"), on May 6, 2019. (Doc. No. 375).

On May 17, 2019, the Chapter 11 Trustee filed his *Emergency Motion for the Entry of an Order (1) Approving Competitive Bidding and Sale Procedures for the Sale of Substantially All of Debtor's Assets, (2) Scheduling Dates to Conduct Auction and Hearing to Consider Final Approval of Sale, Including Treatment of Executory Contracts, (3) Approving the Form and Manner of Notices, (4) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, and (5) Granting Related Relief*, (the "Asset Sale Motion"). (Doc. No. 392).   The Court entered the corresponding *Order* and the *Amended Order* approving the procedures on May 30, 2019. (Doc. Nos. 411 and 412).

On June 12, 2019, after extensive negotiations with nineteen claimants pursuant to the Resolutions Procedure Order, the Chapter 11 Trustee filed his *Omnibus Motion Pursuant to Fed. R. Bankr. P. 9019 for an Order Approving the Compromise and Settlement of Creditor Claims*, (the "9019 Motion"). (Doc. No. 426). The Court entered its *Order* approving the 9019 Motion on July 17, 2019. (Doc. No. 453).

8

On June 25, 2019, the Court entered its *Order (A) Authorizing Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims and Interests; (B) Approving Asset Purchase Agreement; (C) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (D) Granting Other Relief*, (the "Asset Sale"). (Doc. No. 435). Pursuant to the Asset Sale Motion, the Chapter 11 Trustee conducted the duly notice auction on June 19, 2019, with Europe Management, SPRL, being the highest and best bidder. The Asset Sale closed in July 2019 and the amount of $2,300,000 was paid into the estate.

On June 26, 2019, the Chapter 11 Trustee filed his *Second Omnibus Motion Pursuant to Fed. R. Bankr. P. 9019 for an Order Approving the Compromise Settlement of Creditor Claims*. (Do. No. 437), further supplemented on July 1, 2019 (Doc. No. 440), (the "Second 9019 Motion"). The Court entered its Order approving the Second 9019 Motion on July 26, 2019. (Doc. No. 466).

On September 17, 2019, the Chapter 11 Trustee filed its Motion to Approve Compromise of Controversy or Settlement Agreement Pursuant to Bankruptcy Rule 9019, (the "Third 9019 Motion"). (Doc. No. 500). The 9019 Motion reviews the dispute between the Debtor and Delgado & Romanik, PLLC and an alleged pre-petition fraudulent transfer. The Motion remains pending before the Court.

Through the Trustee's efforts in respect of: (i) the bank account reconciliation and settlement; and (ii) the Asset Sale, the estate has in excess of $10,000,000 as of September 30, 2019.

## III.    THE PLAN

**THE FOLLOWING SUMMARY IS INTENDED ONLY TO PROVIDE AN OVERVIEW OF DEBTOR'S PLAN. ANY PARTY IN INTEREST CONSIDERING A VOTE ON THE PLAN SHOULD CAREFULLY READ THE PLAN IN ITS ENTIRETY BEFORE MAKING A DETERMINATION TO VOTE IN FAVOR OF OR AGAINST THE PLAN. THIS SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN.**

A. Overview

The Plan provides for a Liquidating Trust with a Liquidating Trustee with a mandate to generate the maximum possible amount of Extraordinary Income in as short a time as possible to distribute such Extraordinary Income equitably among the holders of Allowed Claims. This is essentially the same function that the Chapter 11 Trustee is currently fulfilling; accordingly, the first Liquidating Trustee will be Alex D. Moglia. The Liquidating Trustee will oversee all tasks necessary to maximize recoveries for the estate.

For purposes of the Plan, the term "Extraordinary Income" refers to any Cash or property recovered for the benefit of IPS's creditors. The Chapter 11 Trustee anticipates that Extraordinary Income will consist primarily of (1) assets currently held by IPS including a significant amount of Cash; and (2) recoveries from legal proceedings, both pending and yet to be filed, relating to the historical operations and management of IPS. More detailed information regarding these sources of Extraordinary Income is set forth below in the section outlining the treatment of Allowed Class 3 Claims. Based on the information developed by the Chapter 11 Trustee to date, it is likely that the Extraordinary Income recovery process will take several years to complete. The amount of Extraordinary Income that the Liquidating Trustee will be able to generate or when distributions of Extraordinary Income will occur is uncertain. However, based on a review of the litigation prospects available to the Chapter 11 Trustee, anticipated recoveries may be at least another $3,000,000. Since it is impossible to anticipate how much litigation the Liquidating Trustee will have to bring and how long that litigation will take to complete, it is also impossible to project what the aggregate amount of administrative expenses incurred will be in recovering the Extraordinary Income.

B.  <u>Classification and Treatment of Claims</u>

The Plan provides for the repayment of IPS's creditors through the treatment of their Allowed Claims.  Under the terms of the Plan, an Allowed Claim is one which is either (a) a Claim with respect to which a proof of Claim has been filed with the Court pursuant to Code §501 and Rule 3001 within the applicable period of limitation fixed by Rule 3003 or any Order of the Court; (b) a Claim which is deemed filed pursuant to Code §1111(a) by virtue of such Claim having been scheduled in the list of Creditors prepared, filed, and amended by the Debtor or Chapter 11 Trustee, with the Court pursuant to Code §521(1) and Rule 1007(b) and not listed as disputed, contingent or unliquidated; or (c) a Claim which is deemed an Allowed Claim pursuant to the provisions of the Plan or any Order of the Court.  Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Order of the Court, an Allowed Claim shall not include any Claim as to which an objection or proceeding challenging the allowance thereof has been interposed by the Chapter 11 Trustee or Liquidating Trust within any applicable period of limitation fixed pursuant to the Plan, by Rule 3003, or any Order of the Court, until such objection or proceeding has been overruled, or dismissed or settled by entry of a Final Order.  Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a).  Unless otherwise specified in the Plan or any Order of the Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim arising subsequent to the Petition Date.

The Plan divides all Claims and equity interests into Priority Administrative Claims and three classes of Unsecured Claims.  The classification scheme and treatment provided for in the Plan for each of these various categories of Claims and Interests is summarized below:

1.    <u>Priority Claims - Administrative Claims</u>.

Administrative Claims are those Claims for payment of an administrative expense of a kind specified in §503(b) of the Code and of a kind referred to in §507(a)(1) of the Code, including, without limitation, the actual and necessary costs and expenses incurred after the commencement after the chapter 11 case of preserving the Bankruptcy Estate of IPS.  Such costs include compensation for legal, accounting, and other services and reimbursement of expenses awarded under Code §§330(a) or 331, and all fees and charges assessed against Estate under chapter 123 of Title 28 of the United States Code.

Any person, including any professional who has rendered services to the Debtor or estate during the course of the Case, that asserts an Administrative Claim arising before the Confirmation Date, including Claims under Code § 503(b), shall, on or before the Administrative Claims Bar Date or other date as set by the Court, file an application, motion or request, as called for by the Rules, with the Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such claim; *provided, however,* that applicants or movants who have previously filed applications, motions or requests with the Court need not file another such paper for the same Claim.  Failure to file a timely application, motion, or request for allowance pursuant to this Section by any holder of a Non-ordinary Course Administrative Expense Claim, other than such a holder engaged in actions to recover Extraordinary Income, shall bar such a Claimant from seeking recovery on account of such Claim.

Each holder of an Administrative Claim who complies with the requirements set forth in the Plan shall be paid by the Trustee/Liquidating Trust 100% of the portion of such Claim which becomes an Allowed Claim in Cash unless otherwise ordered by the Court or agreed to by such

holder, on or before the Effective Date, or such later date as may be agreed to by such holder.  If any such Claim does not become an Allowed Claim prior to the Effective Date, on the date that any portion of such Claim becomes an Allowed Claim such portion shall become immediately payable in Cash by the Liquidating Trust.  As provided for in the Plan, Extraordinary Income shall be first used to pay Administrative Claims.  However, nothing in this provision of the Plan shall preclude Debtor from paying any holder of an Administrative Claim less than 100% of its Allowed Claim in Cash on the Effective Date provided that such Claim holder consents to payment terms other than as set forth herein.

          2.      <u>Class 1 – Priority Wage, Vacation and Benefit Claims.</u>

Class 1 consists of all Claims entitled to priority pursuant to Code § 507(a)(3) and § 507(a)(4).  Class 1 Claims are unimpaired under the Plan.  As of this date, no Claims have been filed which fall into the categories of Priority Wage, Vacation, and Benefits Claims and unless a late claim is filed and allowed in such categories, there will be no payments necessary for Priority Wage, Vacation and Benefit Claims.  To the extent that future Class 1 Claims are filed and become Allowed Claims and that such Claims are entitled to the priorities afforded by Code §507(a)(3)(4), such Allowed Class 1 Claims shall be paid in full on the Effective Date.  The proponent of the Plan does not anticipate that the Liquidating Trust will make any Payments on account of Class 1 Claims.

          3.      <u>Class 2 – Priority Tax Claims</u>.

Class 2 consists of the Allowed Secured Claims of the United States of America's Internal Revenue Service ("IRS") or any other taxing authority which relate to any unpaid taxes of the Debtor which accrued prior to the Petition Date.  As of the date of the Plan, the Chapter 11 Trustee does not anticipate the existence of any such Claims.  However, to the extent any

allowed Class 2 Claim arises, each holder of an Allowed Class 2 Claim shall receive from the Liquidating Trust, in full satisfaction of such claim, Cash equal to the amount of such Allowed Claim on the Effective Date.   Accordingly, Class 2 Claims are unimpaired under the Plan. Hence, the Holders of Allowed Class 2 Claims, if any, will not be entitled to cast ballots for the acceptance or rejection of the Plan**.**

        4.      Class 3 – Unsecured Claims (General).

        Class 3 consists of the Allowed Claims of all Unsecured Creditors, Class 3 Claims represent the overwhelming majority of Claims against the Debtor and are Impaired under the Plan.  As of September 30, the filed amount of Class 3 Claims totals in excess of $100,000,000. The Holders of Allowed Class 3 Claims shall be entitled to cast ballots to accept or reject the Plan as provided for herein.   Each Holder of an Allowed Class 3 Claim shall become a beneficiary of the Liquidating Trust.

        a.      Source of Payments.  Allowed Class 3 Claims shall be paid in Cash by the Liquidating Trustee from either from the liquidation of assets of the Debtor or Extraordinary Income derived from the sources set forth below.   Due to the uncertainties surrounding the recovery of Extraordinary Income in terms of both the amount ultimately recovered and the time required to cover such amount, it is not possible to project exactly either the aggregate amount of such payments or when they will be received by Holders of Allowed Claims.  Based on the information developed by the Chapter 11 Trustee to date, however, it is believed that the Extraordinary Income recovery process will take several years to complete. The Chapter 11 Trustee predicts that most of the Extraordinary Income will be generated from the following sources:

i.      <u>Litigation and Settlement Proceeds</u>.

To date, the Chapter 11 Trustee has identified several potential litigation targets and the Chapter 11 Trustee continues to review documents and transactions anticipating additional targets.  As reflected on <u>Exhibit "A"</u>, the Chapter 11 Trustee has sent demand letters to certain individuals and entities.  <u>Exhibit "A"</u> also reflects other potential sources of recovery; however, the list is non-exclusive and the failure to list any person or entity as a potential target, including any creditor of the estate, shall not be deemed a release or defense to a later suit.  Due to: (a) the amount of claims in this case; and (b) the nature of such claims which arise primarily from Debtor's failure to use money it received to pay customer's freight bills (i.e. over $50,000,00 from Stanley Black & Decker alone), there appears to be a substantial amount of funds received by Debtor but not used for operations.  <u>Exhibit "A"</u> reflects transfers that have previously been discovered but these are a small fraction of the unaccounted for amounts.  The Liquidating Trustee will continue its investigation and pursue all parties who received improper transfers and seek claims against any officers, directors, owners, or professional who directly, or indirectly, contributed to the claims and loses.  In the interest of preserving the maximum value from this potential litigation for the benefit of the Bankruptcy Estate, no further information, other than <u>Exhibit "A"</u> regarding the potential litigation targets or the relevant causes of action will be disclosed herein.

On the Effective Date, the Liquidating Trustee on behalf of the Debtor and in his own capacities under the Plan, shall receive, retain, and pursue, at the sole and absolute discretion of and for the benefit of holders of Allowed Claims, any and all Causes of Action, as that term is defined in the Plan.  Any recovery from the Causes of Action will be paid to the

holders of Allowed Claims as provided for in the Plan, less the actual costs of recovering or attempting to recover Extraordinary Income through the Causes of Action.

ii.       Existing Assets of the Estate.

In addition to, and potentially in connection with, the recovery of Extraordinary Income through litigation and attendant settlements, the Liquidating Trustee will also attempt to generate Extraordinary Income through the liquidation, through sale or otherwise, of the existing assets of the Debtor.  As noted, the estate currently has in excess of $10,000,000 in cash from liquidation of bank accounts and the Assets Sale.  Additionally, the estate also holds several Secured and Unsecured obligations owed by third parties which are being collected in ordinary course.

b.       Timing and Amount of Payments.  Payments to Holders of Allowed Class 3 Claims shall be made from time to time in Cash by the Liquidating Trustee.  There shall not be any fixed intervals or payment dates for such Payments; instead, such Payments shall be made by the Liquidating Trustee anytime: (i) the estate has at least $1,500,000 in cash; and (ii) at least $1,000,000 can be distributed.  For example, on the Effective Date, if the estate has cash equal to $5,000,000, the amount of $3,500,000 will be distributed, pro rata, to the Holders of Allowed Class 3 Claims.  Thereafter, any time the cash is at or above $2,500,000, another pro rata distribution will be made.

c.       Disputed Claims Reserve.  Any Claim, or portion thereof, which is to be paid in Cash under the Plan and which is challenged, shall be protected by requiring the Chapter 11 Trustee or Liquidating Trustee, as appropriate, to segregate and set aside in an escrow account a reserve sufficient to treat such Claim in the same fashion as though the objection had been denied.  The reserve so segregated shall be distributed in accordance with the provisions of the

Plan in the event that the objection is overruled or a dispute is resolved in favor of the claimant. In the event the disputed Claim is disallowed by Final Order of the Court, the retained Cash so segregated shall become Extraordinary Income and shall be distributed in accordance with the provisions of the Plan with the holder of the disallowed Claim being excluded in the amount of the disallowed Claim from participating on a *Pro Rata* Share basis in future payments.

5.    Interests: Class 4 – Equity Interests in Debtor.

Class 4 consists of all Equity Interests in the Debtor.  Upon the Effective Date or as soon thereafter as practical, all existing equity interests in the Debtor shall be cancelled.

C.  Means of Implementation

As described in greater detail above, recoveries for creditors in this case will come from the Extraordinary Income generated from the liquidation of the Debtor's assets owned (either directly or indirectly) on the Petition Date, the proceeds from litigation, proceeds from avoidance actions arising under sections 544 through 553 of the Bankruptcy Code, proceeds from other causes of action and the proceeds from settlements.

The Estates and the Exculpated Parties[1] shall not have or incur any liability to any person or Entity, including any Holder of a Claim or Equity Interest, for any act or omission taken or not taken in connection with, relating to, or arising out of the Chapter 11 Case, including but not limited to: the negotiation and Filing of the Plan, the Filing of the Chapter 11 Case, the prosecution and/or settlement of Claims, the performance, termination or rejection of Executory Contracts, the pursuit of confirmation of the Plan, the consummation of the Plan, the

---

[1] Exculpated Parties means, collectively, (i) the Chapter11 Trustee and (ii) the Committee; and with respect to each of (i) and (ii) each of their respective current and former officers, directors, managers, employees, agents, attorneys, financial advisors, accountants, investment bankers, investment advisors, consultants, agents, representatives and

administration of the Plan or the property to be Distributed under the Plan (collectively, the "Post-Petition Activities"), except for their willful misconduct or gross negligence or any obligations that they have under or in connection with the Plan or the transactions contemplated in the Plan. For the avoidance of doubt, other than the Exculpated Parties, no other Person or Entity shall be exculpated for any Post-Petition Activities under the terms of the Plan. Nothing herein shall preclude the Exculpated Parties from asserting as a defense to any claim of willful misconduct or gross negligence that he or she reasonably relied upon the advice of counsel with respect to his duties and responsibilities in the Chapter 11 Case, under the Plan or otherwise.

1.     Liquidating Trust.

The Plan provides for the creation of the Liquidating Trust, responsible for the recovery of Extraordinary Income for the benefit of IPS's creditors with Allowed Claims. The Liquidating Trust will be vested with all of the estate and have a maximum life of five (5) years unless extended pursuant to court order. The Liquidating Trust will also own 100% of the equity of Debtor and will determine how and when to terminate the existence of Debtor. Holders of Allowed Claims shall be beneficiary of the Liquidating Trust and entitled to distributions based on the priority and timing set forth in the Plan. The Liquidating Trust will be controlled by the Liquidating Trustee.

2.     The Liquidating Trustee

The Plan provides for the role of a Trustee (the "Liquidating Trustee") to control the Liquidating Trust and guide efforts to recover Extraordinary Income for the benefit of creditors with Allowed Claims. The Liquidating Trustee shall be governed by the terms of the Plan, as described below. The Liquidating Trustee shall have the duties and responsibilities as set forth in

---

other professionals, specifically including Elliott Greenleaf, P.C., CohnReznick LLP, Moglia Advisors, R. Scott

the Plan and shall be retained, and may be terminated, as provided for in the Plan. However, the Liquidating Trustee shall have all the powers and rights of a Trustee under chapter 7 and 11 of the Bankruptcy Code.

      a.     <u>Timing</u>. The Chapter 11 Trustee shall continue to serve the interests of the Bankruptcy Estate until the Effective Date. Upon the Effective Date, the position of Chapter 11 Trustee as it pertains to the Case shall terminate; at the same time, the position of Liquidating Trustee shall be created.

      b.     <u>Identity and Appointment</u>. The initial Liquidating Trustee shall be Alex D. Moglia, who shall cease being the Chapter 11 Trustee when he becomes the Liquidating Trustee. Subsequent Liquidating Trustees, if any, shall be selected as noted below.

      c.     <u>Tenure</u>. Any Liquidating Trustee shall continue to serve in that capacity until the earlier of (1) his or her resignation (to be filed with he Court at least thirty (30) days prior to its effective date), (2) his or her inability or failure to perform the duties of Liquidating Trustee for a period of thirty (30) consecutive days or more, (3) his or her death, (4) the Termination Date, as defined in the Plan or (5) upon his/her removal via Court order after a motion and hearing for cause, including fraud or gross mismanagement. Upon removal for any reason, the new Liquidating Trustee will be selected by the United States Trust subject to Court approval.

      d.     <u>Compensation</u>. As of the date of his or her appointment as Liquidating Trustee pursuant to the Plan, a Liquidating Trustee shall be entitled to compensation only as set forth in the Plan. This compensation structure can be summarized as follows: (i) <u>Base Hourly Rate</u>. The Liquidating Trustee shall be entitled to a base hourly rate of compensation equal $450 per hour. Such compensation shall only be payable after the Office of the United States Trustee

and Post Conformation Service List has received notice that compensation has been sought, with a copy of all invoices, and have had at least twenty-one (21) days to object to the fees sought. In the event that any party objects to such fees being paid, the Liquidating Trustee shall file a fee application with the Court and no payments shall be made until approved by the Court at a properly noticed hearing. The Liquidating Trustee shall not seek payment more frequently than every two (2) months; (ii) <u>Reimbursement of Costs</u>. The Liquidating Trustee shall be entitled to reimbursement from the Extraordinary Income Account on a monthly basis of all reasonable out-of-pocket expenses incurred for the benefit of the Bankruptcy Estate. All requests for reimbursement shall be submitted to the Office of the United States Trustee for review and approval prior to payment by the Liquidating Trustee from the Extraordinary Income Account. Any disputes regarding the reasonableness of such expenses shall be resolved by the Court; (iii) <u>Cap on Payments</u>. The hourly compensation and the reimbursement of expenses provided for herein shall be capped based on the amount of Extraordinary Income disbursed by the Liquidating Trustee after the Effective Date to creditors (the "Excess Recovery Payments")[2] calculated based upon the percentages set forth in Code § 326(a) as follows:

- 25% of the first $5,000 of Extraordinary Income recovered and distributed;

- 10% of Extraordinary Income recovered and distributed in excess of $5,000 but less than $50,000;

- 5% of Extraordinary Income recovered and distributed in excess of $50,000 but less than $1,000,000;

---

[2] To the extent the Chapter 11 Trustee has unpaid, pre-confirmation amounts because of the limitations on compensation pursuant to Bankruptcy Code §326, such amount may thereafter be paid based on post-confirmation disbursements but such disbursements shall not be included to calculate the cap noted herein.

and

- 3% of Extraordinary Income recovered and distributed in excess of $1,000,000.

     e.    <u>Duties</u>. The Liquidating Trustee shall be responsible for (1) implementing all strategies for the recovery of Extraordinary Income and handling the day-to-day management of any litigation or other activity commenced for that purpose including, without limitation, the negotiations of any settlements in connection with such litigation; (2) retaining and paying such Professionals as may be required to implement such strategies, and reviewing any requests for payment or reimbursement of expenses to any Professionals retained by Liquidating Trustee; (3) the orderly and efficient completion of the claims objection process; (4) control of the Debtor and, if needed, acting as manager; and (5) providing the parties with all information it may request regarding Extraordinary Income recovery efforts, the fees or expenses incurred by the Liquidating Trustee or any Professionals or others retained by the Liquidating Trustee, any disbursement of funds held for the benefit of IPS's creditors with Allowed Claims which exceeds five thousand dollars ($5,000.00), and the status of the Extraordinary Income Account. Additionally, the Liquidating Trustee shall provide to the U.S. Trustee quarterly written litigation summaries which shall set forth the status of all litigation, the fees and expenses expended in connection with each piece of litigation, the anticipated recovery to be generated by each piece of litigation, and a calendar of future events in each piece of litigation. The Liquidating Trustee shall have authority to negotiate settlements for any litigation or other action pertaining to the recovery of Extraordinary Income, but such subject to Court approval pursuant to FRBP 9019.

     f.    <u>Professionals</u>. Fees – Hourly – disclosed form of payments - Upon notice, with twenty-one (21) days to object, to the U.S. Trustee and the Post Confirmation Service List,

the Liquidating Trustee may employ professionals, provided such professionals meet the requirements of Bankruptcy Code Section 327.  If there is an objection to any professional, employment will be decided by the Court after notice and hearing.  The professionals employed by the Chapter 11 Trustee will automatically be deemed to be retained by the Liquidating Trust without the necessity for additional application.  Currently, the Liquidating Trust expects to retain: (i) Shuker & Dorris, as general counsel on an hourly basis with the same rates as set forth in the Application to Employ Shuker &Dorris; (ii) Moglia Advisors as forensic and financial advisor on an hourly basis with the same rates as set forth in the Application to Employ Moglia Advisors; and (iii) Felsberg Advogados, as Trustee's special counsel in respect of issues in Brazil, on an hourly basis with the same rates as set forth in the Application to Employ Thomas Felsberg and the Law Firm of Felsberg Advogados.  The Liquidating Trust may also employ special litigation counsel on a contingent basis in respect of actions against professionals. Compensation for professionals retained by the Liquidating Trust may be paid upon notice of requested fees and expenses (filed no more than every 60 days), with such notice providing twenty-one (21) days to object, and served along with invoices, upon the U.S. Trustee and the Post Confirmation Service List.  In an objection is timely filed, the fee notice will be set for hearing and no amounts paid absent Court order after notice and hearing.

3.    <u>Relevant Dates under the Plan</u>.

a.    <u>Confirmation Date</u>.  The Confirmation Date means the date of entry by the Court of the Order confirming the Plan in accordance with the provisions of the Code.

b.    <u>Effective Date</u>.  The Effective Date shall mean a date which is the later of the date occurring eleven (11) days after the Confirmation Date provided that no appeal is taken of the Confirmation Order in the previous ten (10) days, the date upon which any appeal of the

Confirmation Order is finally resolved by a court of competent jurisdiction, or the date upon which **the** last of the Conditions Precedent has been met as provided for in the Plan.

      c.    <u>Termination Date</u>. The Termination Date shall mean the date upon which the Liquidating Trustee determines in his sole discretion that all reasonable prospects for recovering Extraordinary Income have been exhausted and provides written notice to that effect to all holders of unpaid Allowed Claims as of the date of that determination.

      4.    <u>Distributions.</u>

      a.    <u>Order of Payments</u>.  As of the Effective Date, all Allowed Class 1 and 2 Claims should be fully satisfied and all Interests shall be extinguished, all as provided for in the Plan.  Allowed Class 3 Claims shall be paid as provided for herein.

      b.    <u>Final Payment</u>.  Upon the occurrence of the Termination Date, the Liquidating Trustee shall, as rapidly as practical in light of any ongoing Extraordinary Income recovery activities, distribute all remaining funds in the Extraordinary Income Account as provided for in the Plan.  In the event that the amount of such Final Payment exceeds the aggregate unpaid balance of all remaining Allowed Claims, then any excess Extraordinary Income above such level shall be divided among all Holders of Allowed Claims on a *pro rata* basis.  After making the Final Payment, the Liquidating Trustee shall close the Extraordinary Income Account.

      c.    <u>Extraordinary Income</u>.  Extraordinary Income is all income of Debtor received after the Petition Date including, without limitation, any funds recovered in connection with (a) any and all legal actions, or threatened legal actions, commenced pursuant to Code §§541 through 554 or pursuant to comparable provisions of the laws of any jurisdiction, whether Florida, state or foreign; (b) any and all causes of actions or threatened legal actions based on

theories of fraud, embezzlement, civil theft, fraudulent misrepresentation, negligent misrepresentation, breaches of fiduciary duty, violations of federal or state Racketeer Influenced and Corrupt Organizations laws or any other business tort; (c) any and all causes of action pertaining to the securities laws of any jurisdiction; (d) any restitution claims made to the Chapter 11 Trustee or the Liquidating Trustee in connection with criminal prosecutions of people having connections to IPS; and (e) liquidation of any existing Assets of the estate including proceeds from insurance policy.  Extraordinary Income includes not only actual recoveries from legal proceedings but also any funds paid to settle such legal proceedings, whether or not any legal proceedings have been filed.  Extraordinary Income shall only be used as provided for in the Plan.  Since the Debtor is no longer engaged in its ordinary business operations after consummating the sale of substantially all of its assets, all income received by the Liquidating Trustee after the Petition Date will be Extraordinary Income.

    5.  <u>Creditors Committee.</u>

   On the Effective Date, the Creditors Committee will be dissolved with no further duties.

    6.  <u>Miscellaneous Provisions</u>**.**

    a.  <u>Determination of Allowed Amounts</u>.  The treatment prescribed for Claims shall in all events refer exclusively to the Allowed Amount of each respective Claim.  In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of the Allowed Amount of such Claim by agreement or through the entry of a Final Order.  Notwithstanding Confirmation of the Plan, the Chapter 11 Trustee or the Liquidating Trustee, as appropriate, shall have the right to object to any Claim for any reason

authorized by applicable bankruptcy and non-bankruptcy law as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief. Entry of the Confirmation Order shall be deemed to be recognition that the Court expressly retains jurisdiction as to determination of all such issues pursuant to the terms of the Plan and of the Confirmation Order.

    b. <u>Unclaimed Payments.</u>  If the Holder of an Allowed Claim fails to negotiate a check issued to such Holder pursuant to the Plan within ninety (90) days of the relevant Payment Date on which such check was issued, then the Liquidating Trustee shall provide written notice to such Holder at the Holder's last address as set forth in the Bankruptcy Court's records stating that unless such Holder negotiates such check within thirty (30) days of the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder's Claim shall no longer be deemed to be Allowed, and such Holder shall be deemed to have no further Claim in respect of such check and shall not participate in any further distributions under the Plan.

    If a distribution pursuant to the Plan to any Holder of an Allowed Claim is returned to the Liquidating Trustee due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made to the Liquidating Trustee as to such distribution within one hundred twenty (120) days of the return of such distribution, then the amount of Cash attributable to such distribution shall be deemed to be unclaimed and such Holder shall be deemed to have no further Claim in respect of such distribution and shall not participate in any further distributions under the Plan.

    Any unclaimed Cash distribution as described above shall be retained by the Liquidating Trustee for future distribution to the Holders of Allowed Class 3 Claims as provided for in the

Plan or for inclusion in the final payment described above, as appropriate.

c.     Treatment of De Minimis Claims.  To avoid the disproportionate expense and inconvenience associated with making distributions in amounts of less than $25.00 each with respect to Allowed Class 3 Claims, the Liquidating Trustee shall not be required to make, and shall be excused from making, distributions or payments in amounts of less than $25.00 to any holders of Allowed Class 3 Claims.  However, any payment not made due to its *de minimis* nature shall accrue for the benefit of its Allowed Claimant and shall be added to any additional payment due to such Claimant in the event a subsequent payment is made by the Liquidating Trustee.

d.     Determination of Claims.  Unless otherwise ordered by the Bankruptcy Court, and except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court on or before one hundred and eighty (180) days following the Effective Date (unless such period is extended by the Bankruptcy Court) and the Confirmation Order shall include appropriate language to that effect.

Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Case, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and distribution.  Upon receipt of a timely-filed Proof of Claim, the Chapter 11 Trustee or the Liquidating Trustee, as appropriate, or any other party in interest may file a request for estimation along with its objection to the Claim set forth therein.  The determination of Claims in estimation hearings shall be binding for purposes of establishing the maximum

amount of the Claim for purposes of allowance and distribution.    Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Rules and the need for prompt determination of the Disputed Claim.

        e.      <u>Transfers of Claims</u>.  If the holder of any Claim shall transfer such Claim on or after the Effective Date, it shall immediately advise the Liquidating Trustee in writing of such transfer.  The Liquidating Trust shall be entitled to assume that no transfer of any Claim has been made by any holder unless and until the Liquidating Trustee shall have received written notice to the contrary.   Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Liquidating Trustee shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

        f.      <u>Setoff</u>.  Subject to the limitations provided in Section 553 of the Code, the Liquidating Trustee may, but shall not be required to, set off against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtor, the Liquidating Trust, or the Liquidating Trustee may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim against such Holder and the right of set off and recoupment held by the estate is specifically preserved.

        g.      <u>Discharge and Release</u>.  Since the Debtor's business has not continued after the Petition Date and the sole goal of the Plan is to generate the maximum amount of Extraordinary Income possible for the benefit of the Holders of Allowed Claims, the Plan does

not provide for the discharge of any claims or liabilities.

h.    Term of Injunction or Stays.    Unless otherwise provided in the Confirmation Order, all injunction or stays provided for Chapter 11 cases pursuant to sections 105 or 362 of the Code or previously imposed in this case by the Court or otherwise in existence on the Confirmation Date shall remain in full force and effect until the entry of a final decree dismissing this Case.

i.    Corporate Actions.    All matters provided for under the Plan involving the corporate structure of the Debtor or the Liquidating Trust, or any corporate action to be taken by or required of the Debtor or the Liquidating Trust or the Liquidating Trustee, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by any entity.

j.    Successors and Assigns.    The rights, benefits, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

k.    Tax Consequences of the Plan.    The Plan has been designed to maximize the opportunities for the recovery by creditors of the maximum possible amount of Extraordinary Income; however, the Liquidating Trust shall be a limited life liquidating trust and, as such, not subject to income taxes.    The effect which such recoveries and their *pro rata* distribution to Holders of Allowed Claims will have on the tax situation of each such Holder will depend on their own unique circumstances.    Accordingly, no generic statements can be offered regarding the potential tax consequences of confirmation of the Plan upon such Holders and all such Holders are encouraged to seek advice on their specific situation from competent tax advisors in the jurisdiction in which such Holders are resident for tax reporting purposes.

l.      <u>Acceptance of Plan and Vote Required for Class Acceptance</u>.    As the holder of an Allowed Claim entitled to vote, your vote on the Plan is extremely important.    In order for the Plan to be accepted and thereafter confirmed by the Bankruptcy Court without resorting to the "cram-down" provisions of Section 1129(b) of the Bankruptcy Code, votes representing at least two-thirds in amount and more than one-half in number of Allowed Claims of each impaired Class of Claims that are voted must be cast in favor of accepting the Plan.    The Chapter 11 Trustee is soliciting acceptances only from holders of Allowed Claims entitled to vote, therefore you may be contacted with regard to your vote on the Plan.

To meet the requirements for confirmation of the Plan under the "cram-down" provisions of the Bankruptcy Code with respect to any impaired Class of Claims which votes to reject the Plan (a "Rejecting Class"), it's necessary to show that all Classes junior to the Rejecting Class will not receive or retain any property under the Plan unless all holders of Claims in the Rejecting Class receive funds or property having a value equal to the full amount of their Allowed Claims.    For a more complete description of the implementation of the "cram-down" provisions of the Bankruptcy Code pursuant to the Plan, see "VOTING ON AND CONFIRMATION OF THE PLAN—Confirmation Without Acceptance by All Impaired Classes," below.

## IV.    **CONFIRMATION HEARING**

Section 1128 of the Code requires the Bankruptcy Court, after notice, to hold a Confirmation Hearing on the Plan at which time any party in interest may be heard in support of or in opposition to Confirmation.    The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement to be made at the Confirmation Hearing. Any objection to Confirmation must be made in writing and filed with the Clerk, and delivered to the following persons, at least seven (7) days prior to Confirmation Hearing:

29

**Counsel for the Chapter 11 Trustee**:
R. Scott Shuker, Esquire
Mariane L. Dorris,  Esquire
Shuker & Dorris, P.A.
121 S. Orange Ave., Suite 1120
Orlando, Florida 32801

**United States Trustee:**
Audrey Aleskovsky, Esq.
135 West Central Blvd., Suite 620
Orlando, Florida 32801

A.  Causes of Action to be Pursued for the Benefit of the Estate.

On the Effective Date, the Liquidating Trust shall receive, retain, and pursue through its Liquidating Trustee and for the benefit of Holders of Allowed Claims, any and all Causes of Action, as defined in the Plan.  Any rights to claim any legal privileges previously enjoyed by the Debtor, the Committee, and the Chapter 11 Trustee shall also vest in the Liquidating Trust to be exercised by the Liquidating Trustee.  Any recovery from the Causes of Action will be paid to the Holders of Allowed Claims as provided for in the Plan, less the actual costs of recovering or attempting to recover Extraordinary Income through the Causes of Action.

It is not possible to accurately estimate the full extent of the Extraordinary Income which will be derived from pursuing or settling the Causes of Action.  Accordingly, for purposes of voting on the Plan, all Creditors are advised the Liquidating Trustee will have at least the same rights under the Plan that the Chapter 11 Trustee has or that a chapter 7 trustee would have in the event of a liquidation proceeding under chapter 7 of the Code.  Accordingly, the Confirmation of the Plan, the approval of the Disclosure Statement, the entry of the Confirmation Order, and the consummation of the Plan will not be *res judicata* so as to preclude the post-Confirmation prosecution of any Causes of Action and will not in any way estop (judicially or otherwise) the Liquidating Trustee from pursuing any Causes of Action.  Any references to Causes of Action

herein or in the Plan should not be viewed or deemed as a waiver of any other Causes of Action, each of which is preserved under the Plan.

It is not possible to make accurate predictions regarding the value, nature, or possible legal effects of any such Causes of Action and therefore offer no opinion on the merits of any specific Cause of Action or on the recoverability of any amounts as a result of any such specific Cause of Action. For purposes of providing notice, any party in interest that engaged in business or other transactions with the Debtor or which received payments from the Debtor may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation. No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order to obtain, or on the belief that it will obtain, any defense to any such Cause of Action.

Based on information presently available, there are no determinations as to (a) the amounts which may be recovered from the prosecution of the Causes of Action, (b) the costs of administration or attorneys' fees and other costs attendant to the prosecution of the Causes of Action, (c) the likelihood of success and the collection problems, if any, with respect to the Causes of Action, or (d) the estimated time to complete the prosecution of the Causes of Action. One of the first tasks of the Liquidating Trustee will be to develop detailed information on each of the preceding points and to develop a comprehensive litigation strategy to maximize the value of the Causes of Action for creditors of IPS.

    B.  <u>Confirmation of the Plan</u>

    1.    <u>Generally</u>.

In order to confirm the Plan, the Code requires that the Court make a series of determinations concerning the Plan including that (a) the Plan has classified Claims in a permissible manner, (b)

the Plan complies with the technical requirements of chapter 11 of the Code, (c) the Plan has been proposed in good faith, and (d) the disclosures required by chapter 11 of the Code have been adequate and have included information concerning all payments made or promised in connection with the Plan. The Chapter 11 Trustee believes that all of these requirements will have been met by the date of the Confirmation Hearing and will seek rulings of the Court to such effect at that hearing.

As previously noted, the Code also requires that the Plan be accepted by the requisite votes of Creditors (except to the extent that "cram-down" is available under Section 1129(b) of the Code, as described at "Confirmation Without Acceptance By All Impaired Classes" below); that the Plan be feasible (that is, that there be a reasonable prospect that the obligations can be performed under the Plan without further financial reorganization); and that the Plan be in the "best interests" of all impaired Creditors (that is, that impaired Creditors will receive pursuant to the Plan value at least equal to the value they would receive in a chapter 7 liquidation).  To confirm the Plan, the Court must find that all of these requirements are met. Thus, even if the Creditors accept the Plan by the requisite number of votes (i.e., greater than one half of the number of creditors casting ballots <u>and</u> greater than two-thirds of the dollar amount of all creditors casting ballots), the Court must make independent findings respecting the Plan's feasibility and whether it is in the best interests of the Creditors before it may confirm the Plan. These statutory conditions to confirmation are discussed below.

2.    <u>Classification of Claims</u>.

The Bankruptcy Code requires that a plan of reorganization place each Creditor's claim in a class with other claims which are "substantially similar."  The Proponents believe that the Plan meets the classification requirements of the Code.

3.      Voting

a.      Impaired Classes.  As a condition to confirmation, the Code requires that each impaired Class of Claims accept the Plan. A Class is "impaired" if the legal, equitable or contractual right attaching to the Claims of that Class are modified, other than by curing defaults and reinstating maturity or by payment in full in cash. The Code defines acceptance of a plan by an impaired Class of Claims as acceptance by holders of at least two-thirds in dollar amount of Class members casting ballots and more than one-half in number of Claims allowed for voting purposes of that Class.  Holders of Claims who fail to vote are not counted as either accepting or rejecting the Plan.

b.      Classes That Are Not Impaired.  Classes of Claims that are not "impaired" under the Plan are deemed to have accepted the Plan.

4.      Best Interests of Creditors.

Notwithstanding acceptance of the Plan, as provided for in the Code, by Creditors of each Class, in order to confirm the Plan the Court must independently determine that the Plan is in the best interests of all Classes of Creditors impaired by the Plan. This "best interests" test requires that the Court find that the Plan provides to each member of each Impaired Class of Claims a recovery which has a value at least equal to the value of the distribution which each such person would receive if the Debtor were liquidated under chapter 7 of the Code. The Chapter 11 Trustee believes that distributions to all Classes of impaired Creditors in accordance with the terms of the Plan would have a value at least equal to the value of net distribution that would otherwise take place in chapter 7.  Chapter 11 Trustee will file a liquidation analysis prior to the disclosure statement hearing.

5.      Feasibility.

As provided for in the Code, in order to confirm the Plan the Court must determine that the Plan is not likely to be followed by the need for further reorganization or liquidation.  Since the Plan at issue calls for the orderly liquidation of the Debtor in a manner calculated to maximize the recovery of Extraordinary Income and repayments to creditors, there is no possibility that the Plan will be followed by a need for further reorganization since there will be no remaining entity to reorganize.

6.      Confirmation Without Acceptance by all Impaired Classes.

The Code contains provisions for confirmation of a plan even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted it. These "cram-down" provisions of the Code are set forth in Section 1129(b) of the Code.

The Plan may be confirmed under the cram-down provisions and be binding on a non-accepting impaired Class if, in addition to satisfying the other requirements of Section 1129 of the Bankruptcy Code, (a) it "does not discriminate unfairly" and (b) it is "fair and equitable" with respect to each Class of Claims that is impaired under, and has not accepted, the Plan.  As used by the Code, the phrases "discriminate unfairly" and "fair and equitable" have narrow and specific meanings unique to bankruptcy law.

The requirement that a plan not "discriminate unfairly" means that a dissenting class must be treated equally with respect to other classes of the same rank.  The Proponents believe that the Plan does not "discriminate unfairly" with respect to any Class of Claims because no Class is afforded treatment which is disproportionate to the treatment afforded other Classes of equal rank.

The "fair and equitable" standard, also known as the "absolute priority rule," requires that

a dissenting Class receive full compensation for its Allowed Claims before any junior Class receives any distribution. The Chapter 11 Trustee believes the Plan is fair and equitable to all Classes pursuant to this standard.

Accordingly, if necessary, the Chapter 11 Trustee believes that the Plan meets the requirements for confirmation by the Court, notwithstanding the non-acceptance by an Impaired Class of Claims.

The Chapter 11 Trustee intends to evaluate the results of the balloting and determine whether to seek confirmation of the Plan in the event that Classes of Impaired Claims do not vote to accept the Plan. The determination as to whether to seek confirmation under such circumstances will be announced before or at the Confirmation Hearing.

7.      Alternatives to Confirmation and Consummation of the Plan.

If the Plan is not confirmed, the potential alternatives include (a) alternative plans of liquidation under Chapter 11, or (b) conversion of the Case to a liquidation case under chapter 7 of the Code.

a.      Alternative Plans of Reorganization.   If the Plan is not confirmed, the Chapter 11 Trustee or other parties in interest could attempt to formulate and propose a different plan or plans.  This would entail additional delays in the confirmation of a reorganization plan and, potentially, additional costs to the Bankruptcy Estate of the Debtor.

b.      Liquidation under Chapter 7.  If the Plan is not confirmed, the Case may be converted to a liquidation proceeding under chapter 7 of the Code.  In a chapter 7 case, a chapter 7 Trustee would be elected or appointed to liquidate the assets of the Debtor.  The proceeds of the liquidation would be distributed to the Creditors of the Debtor in accordance with the priorities established by the Code.  At a minimum, a chapter 7 would add additional delay and additional administrative expenses and, as such, the Chapter 11 Trustee believes that

liquidation under chapter 7 would result in a substantial diminution of the value of the interests of the Creditors arising from the failure to realize the full value of the Debtor's assets (especially the Debtor's Causes of Action).   The Chapter 11 Trustee will separately file a liquidation analysis prior to the disclosure statement hearing.

        8.     <u>Police Power</u>.

        Nothing in this Article VII shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtor for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to § 1141 of the Code.

        9.     <u>Revocation and Withdrawal of this Plan</u>.

        The Chapter 11 Trustee reserves the right to withdraw this Plan and Disclosure Statement at any time before entry of the Confirmation Order.  If (i) the Chapter 11 Trustee revokes and withdraws this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

        10.    <u>Modification of Plan</u>.

        The Chapter 11 Trustee may seek to amend or modify this Plan in accordance with § 1127(b) of the Code, remedy any defect or omission, or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

        On or before substantial consummation of the Plan, the Chapter 11 Trustee may issue, execute, deliver or file with the Bankruptcy Court, or record any agreements and

other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

## V.    **SUMMARY, RECOMMENDATION, AND CONCLUSION**

The Chapter 11 Trustee believes that the Plan represents the most efficient and productive method for ensuring the maximum repayment to claimants in the most expedient manner possible.  The Plan builds on the work performed to date by the Chapter 11 Trustee, the Committee, and certain active creditors and provides a framework for deploying this work product quickly and efficiently to recover Extraordinary Income from all available sources. Accordingly, the Chapter 11 Trustee strongly recommends that holders of Claims vote to accept the Plan by completing the enclosed ballot and returning it to the Clerk of the Court.

Dated this 1st day of November 2019 in Orlando, Florida.

/s/ R. Scott Shuker
R. Scott Shuker, Esq.
Mariane L. Dorris, Esq.
John B. Dorris, Esq.
Shuker & Dorris, P.A.
121 S. Orange Ave., Suite 1120
Orlando, FL 32801
Telephone: (407) 337-2060
Facsimile: (407) 337-2050
*Counsel for Chapter 11 Trustee*

**EXHIBIT A**

| POTENTIAL DEFENDANT | STATUS |
|---|---|
| 1. Carlos Lira & Amanda Lira | Demand letter sent for $298,612.61 |
| 2. Michael McNett | Demand letter sent for $1,425,140.71 |
| 3. Jacques McNett | Demand letter sent for $961,622.46 |
| 4. Michael O'Rourke | Demand letter sent for $370,975.34 |
| 5. Anthony Albanese | Demand letter sent for $11,931.80 |
| 6. ExFreight Zeta | Ongoing discussions with possible recovery approximating $1,000,000 |
| 7. Officers & Directors including William Davies, Michael McNett, Steve Huntley, Freight Rate Company and Dacaco | Ongoing investigation |
| 8. Professionals including lawyers, accountants and financial advisors including Cobb Cole, Klayer & Associates, and Moore Group | Ongoing investigation |