**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

**In re**

**IPS WORLDWIDE, LLC**

**Debtor.**

_____/

**CASE NO. 6:19-bk-00511-KSJ**

**CHAPTER 11**

## AMENDED PLAN OF LIQUIDATION FOR IPS WORLDWIDE, LLC.

R. Scott Shuker, Esq.
Mariane L. Dorris, Esq.
John B. Dorris, Esq.
Shuker & Dorris, P.A.
121 S. Orange Ave., Suite 1120
Orlando, FL 32801
Telephone: (407) 337-2060
Facsimile: (407) 337-2050
_Counsel for Chapter 11 Trustee_

Submitted December 16, 2019

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re

IPS WORLDWIDE, LLC

      Debtor.

_____/

**CASE NO. 6:19-bk-00511-KSJ**

**CHAPTER 11**

## AMENDED PLAN OF LIQUIDATION FOR IPS WORLDWIDE, LLC

**IPS WORLDWIDE, LLC** (the "Debtor" or "IPS"), through the Chapter 11 Trustee, by and through its undersigned counsel, hereby proposes the following Amended Plan of Liquidation (the "Plan") pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

## ARTICLE I – DEFINITIONS

1.     **Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in §§ 503(b) or 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Bankruptcy Case of preserving the Debtor's Estate and operating the Debtor's business, including wages, salaries, or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under §§ 330(a) or 331 of the Code, and all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code.

2.     **Administrative Claims Bar Date** means the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed. The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

3.     **Allowed Administrative Claim** means all or any portion of an Administrative Claim that has been or becomes allowed by Order of the Bankruptcy Court.

4.     **Allowed Amount** shall mean the amount of an Allowed Claim.

5.     **Allowed Claim** means a Claim (a) with respect to which a Proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Bankruptcy Code § 501 and Bankruptcy Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Final Order of the Bankruptcy Court; (b) deemed filed pursuant to Bankruptcy Code § 1111(a) by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Code § 521(1) and Rule 1007(b) and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court.  Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtor within any applicable period of limitation fixed by the Plan, by Rule 3003, or any Final Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order.  Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a).  Unless otherwise specified in the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

6.     **Allowed Interest** means an Interest (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or a Final Order; or (b) that has been scheduled in the list of equity security holders prepared and filed by the Debtor with the Bankruptcy Court pursuant to Rule 1007(b); and in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or any Final Order of the Bankruptcy Court.

7.    **Allowed Priority Claim** means a Priority Claim pursuant to §507, exclusive of §507(a)(8) of the Bankruptcy Code; to the extent such Priority Claim is or becomes an Allowed Claim.

8.    **Allowed Priority Tax Claim** means a Priority Claim pursuant to § 507(a)(8) of the Bankruptcy Code; to the extent such Priority Claim is or becomes an Allowed Claim.

9.    **Allowed Secured Claim** means a Secured Claim to the extent provided under § 506 of the Bankruptcy Code and to the extent that neither the lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided herein.

10.    **Allowed Unsecured Claim** means an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

11.    **Assets** means each and every item of Property of the Estate and every interest of the Debtor and its Estate as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, whether or not controlled by the Debtor, and includes without limitation: (a) all real and personal property and Cash; (b) all rights, Claims, demands, or Causes of Action, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law; (c) any and all amounts owed to the Debtor, including accounts receivable, contract rights, or other rights, including without limitation rights to payment, contribution or distribution from Insiders, whether due prior or subsequent to the Petition Date; (d) all of the Debtor's books, records, and privileges; and (e) all Executory Contracts, and other contracts, agreements, licenses, and leases.

12.    **Ballot** means the ballot accompanying the Plan and Disclosure Statement that will be sent to all Creditors entitled to vote on the Plan, on which such Creditors will indicate their vote to accept or reject the Plan.

13.    **Ballot Date** means the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

14.    **Bankruptcy Case** means the Debtor's bankruptcy case that is pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to Chapter 11 of the Bankruptcy Code, case number 6:19-bk-00511-KSJ.

15.    **Bankruptcy Code** or **Code** means Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., including any amendments thereto, in effect during the Bankruptcy Cases.

16.    **Bankruptcy Court** or **Court** means the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which the Bankruptcy Case is pending, and any Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

17.    **Bankruptcy Estate** shall mean the estate created pursuant to § 541 of the Code by the commencement of Debtor's Chapter 11 case and shall include all property of the Estate, including Causes of Action.

18.    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated under Title 28, United States Code, § 2075, including any amendments thereto, as they may be amended from time to time during the Bankruptcy Case.

19.    **Bar Date** means the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in this Bankruptcy Case.

20.    **Business Day** means every day except Saturdays, Sundays, federal holidays, and Florida state holidays observed by the Bankruptcy Court.

21.    **Cash** means cash or cash equivalents, including, but not limited to, checks, bank deposits, negotiable instruments, or other similar items.

22.    **Causes of Action** means any and all of the Estate's and the Chapter 11 Trustee's actions, Claims, demands, rights, defenses, counterclaims, cross-claims, suits, causes of action,

liabilities, obligations, debts, judgments, remedies, damages, recoupments, setoffs, cross claims,

counterclaims, third party claims, indemnity claims, contribution claims, and any other claims,

whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate,

in law, equity or otherwise, including but not limited to the right to recover transfers voidable or

recoverable under Bankruptcy Code §§ 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or

553, and any and all other claims or rights of any value whatsoever, at law or in equity, against any

Creditor or other third party, any and all claims against any Insiders, members, officers, directors,

managers or employees of the Debtor, including any claims for contribution or indemnification for

any unauthorized post-petition obligations or transactions and any transaction or obligation incurred

by the Debtor not otherwise approved by the Bankruptcy Court; provided, however, that, when used

in the Plan, the term Causes of Action does not include any Claims, obligations, suits, judgments,

damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released

or waived pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court.  Attached

hereto as Exhibit "A" is a Litigation Analysis of potential Causes of Action; however, a Cause of

Action will not under any circumstances be waived as a result of the failure of the Chapter 11

Trustee to describe such Cause of Action with specificity in the Plan or the Disclosure Statement,

and nothing in the Plan operates as a release of any of the Causes of Action except as specifically

provided in the Plan.

23. **Chapter 11 Trustee** shall mean Alex D. Moglia.

24. **Claim** means, "claim" as defined in Bankruptcy Code § 101(5).

25. **Class** means any Class into which Claims or Interests are classified pursuant to the

Plan.

26. **Class 1 Claim, Class 2 Claim, Class 3 Claim,** etc., shall mean the specific Class

into which Claims or Interests are classified pursuant to Article II of the Plan.

27.     **Code** shall mean the United States Bankruptcy Code, 11 U.S.C. § 101, et seq., and any amendments thereof.

28.     **Confirmation** means the process leading to confirmation of the Plan, including the entry of the Confirmation Order pursuant to Bankruptcy Code § 1129.

29.     **Confirmation Date** means the date of entry of the Confirmation Order by the Bankruptcy Court on the Court's docket.

30.     **Confirmation Hearing** means the date set by the Bankruptcy Court for the hearing on confirmation of the Plan, as may be continued from time to time.

31.     **Confirmation Order** means the Final Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

32.     **Contingent** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

33.     **Creditor(s)** means "Creditor" as defined in Bankruptcy Code § 101(1).

34.     **Debtor** means IPS WORLDWIDE, LLC.

35.     **Disallowed** means, when referring to a Claim, a Claim or any portion of a Claim that has been disallowed or expunged by a Final Order of a Court.

36.     **Disclosure Statement** means the Disclosure Statement describing the Plan and approved for distribution by the Bankruptcy Court pursuant to Bankruptcy Code § 1125, together with any amendments or modifications thereto.

37.     **Disputed Claim** means every Claim or portion thereof, that is not an Allowed Claim and that has not yet been Disallowed.

38.     **Disputed Equity Interest** shall mean an Interest in the Debtor which is not an Allowed Interest and which has not been disallowed by a Final Order or the Bankruptcy Court.

39.     **Distribution** means a distribution to the Holders of Allowed Claims.

40.     **Effective Date** means fifteen (15) days after entry of the Confirmation Order provided no appeal has been filed; however, the Effective Date will still occur, notwithstanding an appeal, if the Chapter 11 Trustee files a notice of Effective Date and commences Distributions.

41.     **Estate Assets** shall mean all the assets, property and cash of the Debtor, as defined in section 541 of the Code (excluding assets previously distributed, expended or otherwise disposed of by the Debtor prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date, including, without limitation, the Causes of Action.

42.     **Equity Interest** means any and all issued or authorized equity interests, common stock, stock options and warrants in the Debtor.

43.     **Executory Contract** means every unexpired lease to which the Debtor is a party, and every other contract that is subject to being assumed or rejected by the Debtor under Bankruptcy Code § 365, pursuant to the Plan or pursuant to separate motion.

44.     **Extraordinary Income** means any cash or properly recovered for the benefit of IPS Creditor's including, without limitation, any funds recovered in connection with (a) liquidation and collection of any Property of the Estate, including a significant amount of Cash; (b) any and all legal actions, or threatened legal actions, commenced pursuant to Code §§541 through 554 or pursuant to comparable provisions of the laws of any jurisdiction, whether Federal, state or foreign; (c) any and all Causes of Action or threatened legal actions based on theories of fraud, embezzlement, civil theft, fraudulent misrepresentation, negligent misrepresentation, breaches of fiduciary duty, violations of federal or state Racketeer Influenced and Corrupt Organizations laws or any other business tort; (d) any and all Causes of Action pertaining to the securities laws of any jurisdiction; (e) any restitution claims paid to the Liquidating Trustee in connection with criminal prosecutions of people having connections to IPS; and (f) liquidation of any existing Assets of the Bankruptcy Estate including proceeds from insurance policies.  Extraordinary Income includes not

only actual recoveries from legal proceedings but also any funds paid to settle such legal proceedings, whether or not any legal proceedings have been filed.

45.     **Final Decree** means the Bankruptcy Court's final decree pursuant to Bankruptcy Code § 350(a) and Bankruptcy Rules 3022 and 5009 closing the Bankruptcy Cases after the Estate has been fully administered.

46.     **Final Distribution Date** shall mean the date as soon as practicable after the last to occur of: (a) the date that the last Claim becomes an Allowed Claim; or (b) the date upon which all Causes of Action have been liquidated and converted to Cash or abandoned.

47.     **Final Order** means an Order or judgment of the Bankruptcy Court that is no longer subject to appeal or *certiorari* proceedings and as to which no appeal or *certiorari* proceeding is pending.

48.     **Holder** means the holder of a Claim or Interest, as applicable.

49.     **Impaired Class** means any Class whose members are Holders of Claims or Interests that are impaired within the meaning of Bankruptcy Code § 1124.

50.     **Insider** means "insider" as defined in Bankruptcy Code § 101(31).

51.     **Interest(s)** means an issued or authorized outstanding membership interest, a warrant or warrants for the issuance of such membership interests, or any other equity instruments in the Debtor.

52.     **Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity of scope of such interest is challenged by the Debtor, the Liquidating Trustee, or any other party with standing to bring such challenge.

53.     **Liquidating Trustee** shall mean the person or entity who is in charge of the Liquidating Trust and who will manage and control the Trust Assets on the Effective Date of the

Plan. It is currently contemplated that Alex D. Moglia will be the Liquidating Trustee. In addition to the powers noted herein, the Liquidating Trustee shall have all the powers and authority of a trustee under applicable Florida law and will be a fiduciary to the Estate and its creditors.

54.     **Liquidating Trust** shall mean the IPS Liquidating Trust to be established on the Effective Date.

55.     **Nonordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

56.     **Order** shall mean a determination, decree, adjudication or judgment issued or entered by the Bankruptcy Court.

57.     **Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred in the ordinary course of business of the Debtor; *provided, however*, that any due and unpaid, post-petition payment in respect of rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

58.     **Payment** shall mean the Cash to be paid under the Plan to the holders of Allowed Claims.

59.     **Person** means "person" as defined in Bankruptcy Code § 101(41).

60.     **Personal Property** means all tangible personal property of the Debtor subject to taxation under Florida law.

61.     **Petition Date** means January 25, 2019, the date on which Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

62.     **Plan** means this Amended Chapter 11 Plan of Liquidation, in accordance with the terms hereof or in accordance with the Bankruptcy Code.

63.     **Plan Payments** means payments made by the Debtor pursuant to the terms of the Plan.

64.    **Post-Confirmation Fees and Expenses** shall mean the fees and expenses of the Liquidating Trust including any fees and expenses of the Liquidating Trustee and any professionals employed by the Liquidating Trust.

65.    **Prepetition** means the period of time preceding the Petition Date and concluding on the Petition Date.

66.    **Priority Claim** means an Unsecured Claim, other than an Administrative Claim, to the extent such Unsecured Claim is entitled to priority in payment under Bankruptcy Code § 507.

67.    **Priority Tax Claim** means every Unsecured Claim or portion thereof that is entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

68.    **Priority Unsecured Claim** means every Unsecured Claim or portion thereof that is not an Administrative Claim or a Priority Tax Claim, and that is entitled to priority under any applicable provision of Bankruptcy Code § 507.

69.    ***Pro Rata*** means proportionate, and when applied to a Claim means the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of consideration distributed on account of all Allowed Claims in such Class.

70.    **Professional** means: (i) any professional retained by the Chapter 11 Trustee in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with Bankruptcy Code §§ 327 or 1103; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Bankruptcy Code § 503(b); and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to Bankruptcy Code § 1129(a)(4).

71.    **Professional Fees** means the Administrative Claims for compensation and reimbursement submitted pursuant to Bankruptcy Code §§ 328, 330, 331, or 503(b) of Professionals (i) employed pursuant to an order of the Bankruptcy Court under Bankruptcy Code §§ 327 or 328;

or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code § 503(b) or by other Final Order.

72.     **Proof of Claim** means the form filed in the Bankruptcy Court by a Creditor on which the specifics of a Claim are set forth as required by the Bankruptcy Code and the Bankruptcy Rules.

73.     **Property of the Estate** means "property of the estate" as defined in Bankruptcy Code § 541.

74.     **Rule** or **Rules** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

75.     **Sale Proceeds** means the sale of substantially all of the Debtor's assets pursuant to the asset purchase agreement approved by the Court through its Order on June 25, 2019. (Doc. No. 435).

76.     **Schedules** means the schedules of assets and liabilities and any amendments thereto filed by the Debtor with the Bankruptcy Court in accordance with Bankruptcy Code § 521(1).

77.     **Secured Claim** means a Claim secured by a Lien against the Debtor's Assets, or any part thereof, to the extent of the value of any interest in such Assets securing such Claim, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or to the extent of the amount of such Claim subject to setoff in accordance with Bankruptcy Code § 553, in either case as determined pursuant to Bankruptcy Code § 506(a).

78.     **Security Interest** means "security interest" as defined in Bankruptcy Code § 101(51).

79.     **Trust Assets** shall mean all Property of the Estate including, without limitation, the Sale Proceeds, all Cash, existing on the Effective Date, and all Causes of Action.

80.     **Unclaimed Payment** shall mean any cash, or any other Property of the Debtor unclaimed for a period of one-hundred and twenty (120) days after any Distribution or, in the event

that the Distribution was made on the Final Distribution Date, one-hundred twenty (120) days after the Final Distribution Date.

81.    **Unimpaired Class** means any Class the members of which are the holders of Claims or Interests, which are not impaired within the meaning of Bankruptcy Code § 1124.

82.    **Unsecured Claim** means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

83.    **United States Trustee** shall have the meaning ascribed to it in 28 U.S.C. § 581, *et. Seq*. and, as used in the Plan, means the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

## ARTICLE II – CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests treated under Articles IV of the Plan are divided into the following classes, which shall be mutually exclusive:

A.    <u>Class 1– Priority Wage, Vacation and Benefit Claims</u>.

Class 1 consists of all Claims entitled to priority pursuant to Code § 507(a)(3) and § 507(a)(4).  Class 1 Claims are unimpaired under the Plan.

B.    <u>Class 2 – Priority Tax Claims</u>.

Class 2 consists of the Allowed Secured Claims of the United States of America's Internal Revenue Service ("IRS") or any other taxing authority which relate to any unpaid taxes of the Debtor which accrued prior to the Petition Date. Class 2 is unimpaired under the Plan.

C.    <u>Class 3 – Unsecured Claims (General)</u>.

Class 3 consists of the Allowed Claims of all Unsecured Creditors, Class 3 Claims represent the overwhelming majority of Claims against the Debtor and are Impaired under the Plan.

D.    <u>Class 4 – Equity Interests in Debtor</u>.

Class 4 consists of all Equity Interests in the Debtor.  Upon the Effective Date or as soon thereafter as practical, all existing equity interests in the Debtor shall be cancelled.

# **ARTICLE III – ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS.**

A.    Priority Claims - Administrative Expense Claims.

Administrative Claims are those Claims for payment of an administrative expense of a kind specified in §503(b) of the Code and of a kind referred to in §507(a)(1) of the Code, including, without limitation, the actual and necessary costs and expenses incurred after the commencement after the Chapter 11 case of preserving the Bankruptcy Estate of IPS.  Such costs include compensation for legal, accounting, and other services and reimbursement of expenses awarded under Code §§330(a) or 331, and all fees and charges assessed against the Bankruptcy Estate under Chapter 11 of Title 28 of the United States Code.

Any person, including any professional who has rendered services to the Debtor, Chapter 11 Trustee,  or Bankruptcy Estate during the course of the Case, that asserts an Administrative Claim arising before the Confirmation Date, including Claims under Code § 503(b), shall, on or before the Administrative Claims Bar Date or other date as set by the Court, file an application, motion or request, as called for by the Rules, with the Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such claim; *provided, however,* that applicants or movants who have previously filed applications, motions or requests with the Court need not file another such paper for the same Claim.  Failure to file a timely application, motion, or request for allowance pursuant to this Section by any holder of a Nonordinary Course Administrative Expense Claim, other than such a holder engaged in actions to recover Extraordinary Income, shall bar such a Claimant from seeking recovery on account of such Claim.

Each holder of an Administrative Claim who complies with the requirements set forth in the Plan shall be paid by the Chapter 11 Trustee/Liquidating Trust 100% of the portion of such Claim which becomes an Allowed Claim in Cash unless otherwise ordered by the Court or agreed to by such holder, on or before the Effective Date, or such later date as may be agreed to by such holder.  If any such Claim does not become an Allowed Claim prior to the Effective Date, on the

date that any portion of such Claim becomes an Allowed Claim such portion shall become immediately payable in Cash by the Liquidating Trustee.  As provided for in the Plan, Extraordinary Income shall be first used to pay Administrative Claims.  However, nothing in this provision of the Plan shall preclude the Chapter 11 Trustee/Liquidating Trustee from paying any holder of an Administrative Claim less than 100% of its Allowed Claim in Cash on the Effective Date provided that such Claim holder consents to payment terms other than as set forth herein.

## ARTICLE IV – CLASSIFICATION AND TREATMENT OF CLASSES.

A.    <u>Determination of Allowed Amounts.</u>

The Plan provides for the repayment of IPS's creditors through the treatment of their Allowed Claims.  Under the terms of the Plan, an Allowed Claim is one which is either (a) a Claim with respect to which a proof of Claim has been filed with the Court pursuant to Code §501 and Rule 3001 within the applicable period of limitation fixed by Rule 3003 or any Order of the Court; or (b) a Claim which is deemed an Allowed Claim pursuant to the provisions of the Plan or any Order of the Court.  Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Order of the Court, an Allowed Claim shall not include any Claim as to which an objection or proceeding challenging the allowance thereof has been interposed by the Chapter 11 Trustee or Liquidating Trust within any applicable period of limitation fixed pursuant to the Plan, by Rule 3003, or any Order of the Court, until such objection or proceeding has been overruled, or dismissed or settled by entry of a Final Order.  Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a).  Unless otherwise specified in the Plan or any Order of the Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim arising subsequent to the Petition Date.

The Plan divides all Claims into two Priority Claims and one class of Unsecured Claims. The classification scheme and treatment provided for in the Plan for each of these various categories of Claims and Interests is summarized below.

      B.      <u>Priority Claims</u>.

      1.      <u>Class 1 – Priority Wage, Vacation, and Benefit Claims</u>

      Class 1 consists of all Claims entitled to priority pursuant to Code § 507(a)(3) and § 507(a)(4). Class 1 Claims are unimpaired under the Plan. As of this date, three Claims have been filed which fall into the categories of Priority Wage, Vacation, and Benefits Claims. Such Priority Claims total $17,811.56 and shall be unimpaired as they will be paid in full with interest on the later of the Effective Date or the date the Priority Claim becomes an Allowed Priority Claim. Hence, the Holders of Allowed Class 1 Claims, if any, will not be entitled to cast ballots for the acceptance or rejection of the Plan. There were two (2) claims filed under Code Section 507(a)(2) (claims 27 and 49) but such were improperly classified and will be considered in Class 3.

      2.      <u>Class 2 – Priority Tax Claims</u>.

Class 2 consists of the Allowed Priority Tax Claims of the United States of America's Internal Revenue Service ("IRS") or any other taxing authority which relate to any unpaid taxes of the Debtor which accrued prior to the Petition Date. As of the date of the Plan, the Internal Revenue Service has filed Claim No. 1, which ia a Priority Tax Claim in the amount of $1,388.00 pursuant to Code § 507(a)(8). Each holder of an Allowed Class 2 Claim shall receive from the Liquidating Trust, in full satisfaction of such claim, Cash equal to the amount of such Allowed Priority Tax Claim on the Effective Date. Accordingly, Class 2 Claims are unimpaired under the Plan, and will not be entitled to cast ballots for the acceptance or rejection of the Plan**.**

C.    Unsecured Claims.

3.    Class 3 – Unsecured Claims (General).

Class 3 consists of the Allowed Claims of all Unsecured Creditors, Class 3 Claims represent the overwhelming majority of Claims against the Debtor and are Impaired under the Plan.  As of September 30, the filed amount of Class 3 Claims totals in excess of $100,000,000. The Holders of Allowed Class 3 Claims shall be entitled to cast ballots to accept or reject the Plan as provided for herein.  Each Holder of an Allowed Class 3 Claim shall become a beneficiary of the Liquidating Trust.

a.    Source of Payments.  Allowed Class 3 Claims shall be paid in Cash by the Liquidating Trustee from the liquidation of assets of the Debtor or Extraordinary Income derived from the sources set forth below.  Due to the uncertainties surrounding the recovery of Extraordinary Income in terms of both the amount ultimately recovered and the time required to cover such amount, it is not possible to project exactly either the aggregate amount of such payments or when they will be received by Holders of Allowed Claims.  Based on the information developed by the Chapter 11 Trustee to date, however, it is believed that the Extraordinary Income recovery process will take several years to complete. The Chapter 11 Trustee predicts that most of the Extraordinary Income will be generated from the following sources:

i.    Litigation and Settlement Proceeds.

To date, the Chapter 11 Trustee has identified several potential litigation targets and the Chapter 11 Trustee continues to review documents and transactions anticipating additional targets.  The Litigation Analysis attached as Exhibit "A" outlines the status of the investigation.

The Litigation Analysis outlines: (a) the status of tracing efforts; (b) a list of filed and to be filed (prior to Confirmation) adversary proceedings; (c) a list of continuing areas of investigation with potential avenues of recoveries; and (d) an outline of the fee structure related to

the Causes of Action.  The Causes of Action noted in the Litigation Analysis is a non-exclusive list and the failure to list any person or entity as a potential target, including any creditor of the Bankruptcy Estate, shall not be deemed a release or defense to a later suit.  Due to: (a) the amount of claims in this case; and (b) the nature of such claims which arise primarily from Debtor's failure to use money it received to pay customer's freight bills (i.e. over $50,000,000 from Stanley Black & Decker alone), there appears to be a substantial amount of funds received by Debtor but not used for operations.  Exhibit "A" reflects transfers that have previously been discovered but these are a small fraction of the unaccounted-for amounts.  The Liquidating Trustee will continue its investigation and pursue all parties who received improper transfers and seek claims against any officers, directors, owners, or professional who directly, or indirectly, contributed to the claims and loses.  In the interest of preserving the maximum value from this potential litigation for the benefit of the Bankruptcy Estate, no further information, other than Exhibit "A" regarding the potential litigation targets or the relevant Causes of Action will be disclosed herein.

On the Effective Date, the Liquidating Trustee on behalf of the Debtor and in his own capacities under the Plan, shall receive, retain, and pursue, at the sole and absolute discretion of and for the benefit of holders of Allowed Claims, any and all Causes of Action, as that term is defined in the Plan.  Any recovery from the Causes of Action will be paid to the holders of Allowed Claims as provided for in the Plan, less the actual costs of recovering or attempting to recover Extraordinary Income through the Causes of Action.

ii.    Existing Assets of the Bankruptcy Estate.

The Liquidating Trustee will also attempt to generate Extraordinary Income through the liquidation (via sale or otherwise) of the existing assets of the Debtor.  As noted, the Bankruptcy Estate currently has in excess of $8,000,000 in cash from liquidation of bank accounts and the Assets Sale.  Additionally, the Bankruptcy Estate also holds several loan obligations owed by third parties which are being collected in ordinary course or, upon default, through collection actions.

b.      <u>Timing and Amount of Payments</u>.  Payments to Holders of Allowed Class 3 Claims shall be made from time to time in Cash by the Liquidating Trustee.  There shall not be any fixed intervals or payment dates for such Payments; instead, such Payments shall be made by the Liquidating Trustee anytime: (i) the Liquidating Trust has at least $2,500,000 in cash; and (ii) at least $1,000,000 can be distributed.  For example, on the Effective Date, if the Liquidating Trust has cash equal to $7,000,000 (after payment of administrative claims as described in Section III.B.1.), the amount of $5,500,000 will be distributed, pro rata, to the Holders of Allowed Class 3 Claims. Thereafter, any time the Liquidating Trust's cash is at or above $2,500,000, another pro rata distribution will be made, so long as $1,500,000 is retained until the time of final distribution from the Liquidating Trust.

c.      <u>Disputed Claims Reserve</u>.  Any Claim, or portion thereof, which is to be paid in Cash under the Plan and which is challenged, shall be protected by requiring the Chapter 11 Trustee or Liquidating Trustee, as appropriate, to segregate and set aside in an escrow account a reserve sufficient to treat such Claim in the same fashion as though the objection had been denied. The reserve so segregated shall be distributed in accordance with the provisions of the Plan in the event that the objection is overruled or a dispute is resolved in favor of the claimant.  In the event the disputed Claim is disallowed by Final Order of the Court, the retained Cash so segregated shall become Extraordinary Income and shall be distributed in accordance with the provisions of the Plan with the holder of the disallowed Claim being excluded in the amount of the disallowed Claim from participating on a *Pro Rata* Share basis in future payments.

D.      <u>Equity Interests</u>.

1.      <u>Interests: Class 4 – Equity Interests in Debtor</u>.

Class 4 consists of all Equity Interests in the Debtor.  Upon the Effective Date or as soon thereafter as practical, all existing equity interests in the Debtor shall be cancelled.  Class 4 is impaired and deemed to reject the Plan.  Class 4 will not be entitled to vote and the Court will be

asked to confirm the Plan pursuant to a cramdown of Class 4.

## ARTICLE V – UNEXPIRED LEASES AND EXECUTORY CONTRACTS.

A.    Assumption or Rejection of Unexpired Leases and Executory Contracts.

To the extent the Chapter 11 Trustee rejects any executory contract or unexpired lease prior to the Confirmation Date, any party asserting a Claim pursuant to Section 365 of the Code arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease. Allowed Claims resulting from rejection shall be Class 3 General Unsecured Claim, except as otherwise provided herein. The Chapter 11 Trustee previously rejected, via the Order Approving Asset Sale, dated June 25, 2019 (Doc. No. 435), all executory contracts as of Petition Date.  Accordingly, any claim for rejection should have been filed no later than July 25, 2019.  The Chapter 11 Trustee's position is that the executory contracts listed on the Schedule of Executory Contracts filed pursuant to Rule 1007 are the only executory contracts to which the Debtor was a party as of the Petition Date.

## ARTICLE VI – MEANS OF IMPLEMENTATION.

As described in greater detail above, recoveries for creditors in this case will come from the Extraordinary Income generated from: (i) liquidation of the Debtor's assets owned (either directly or indirectly) on the Petition Date; (ii) proceeds from avoidance Causes of Action including actions arising under sections 544 through 553 of the Bankruptcy Code; (iii)  proceeds from other Causes of Action and noted in the Litigation Analysis.

The Bankruptcy Estate and the Exculpated Parties[1] shall not have or incur any liability to any person or Entity, including any Holder of a Claim or Equity Interest, for any act or omission

---

1 Exculpated Parties means, collectively, (i) the Chapter 11 Trustee and (ii) the Committee; and with respect to (i) and (ii) each of their respective current and former officers, directors, managers, employees, agents, attorneys, financial advisors, accountants, investment bankers, investment advisors, consultants, agents, representatives and other

taken or not taken in connection with, relating to, or arising out of the Chapter 11 Case, including but not limited to: the negotiation and Filing of the Plan, the Filing of the Chapter 11 Case, the prosecution and/or settlement of Claims, the performance, termination or rejection of Executory Contracts, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be Distributed under the Plan (collectively, the "Post-Petition Activities"), except for their, fraud, willful misconduct, or gross negligence or any obligations that they have under or in connection with the Plan or the transactions contemplated in the Plan.  For the avoidance of doubt, other than the Exculpated Parties, no other Person or Entity shall be exculpated for any Post-Petition Activities under the terms of the Plan. Nothing herein shall preclude the Exculpated Parties from asserting as a defense to any claim of willful misconduct or gross negligence that he or she reasonably relied upon the advice of counsel with respect to his duties and responsibilities in the Chapter 11 Case, under the Plan or otherwise.

A.    The Liquidating Trust.

The Plan provides for the creation of the Liquidating Trust, responsible for the recovery of Extraordinary Income for the benefit of IPS's creditors with Allowed Claims.  The Liquidating Trust will be governed by a separate trust documents, with a taxpayer ID number, and it shall be vested with all of the estate and have a maximum life of five (5) years unless extended pursuant to court order.  The Liquidating Trust will also own 100% of the equity of Debtor and will determine how and when to terminate the existence of Debtor.  Holders of Allowed Claims shall be beneficiary of the Liquidating Trust and entitled to distributions based on the priority and timing set forth in the Plan.  The Liquidating Trust will be controlled by the Liquidating Trustee, subject to the trust agreement and the Plan.

---

professionals, specifically including Winderweedle, Haines, Ward & Woodman, P.A., Elliott Greenleaf, P.C., CohnReznick LLP, Moglia Advisors, R. Scott Shuker, Esq., Shuker & Dorris, P.A.

B.    <u>Liquidating Trustee</u>.

The Plan provides for the role of a Trustee (the "Liquidating Trustee") to control the Liquidating Trust and guide efforts to recover Extraordinary Income for the benefit of creditors with Allowed Claims. The Liquidating Trustee shall be governed by the terms of the Plan, as described below. The Liquidating Trustee shall have the duties and responsibilities as set forth in the Plan and shall be retained, and may be terminated, as provided for in the Plan.  However, the Liquidating Trustee shall have all the powers and rights of a Trustee under Chapter 7 and 11 of the Bankruptcy Code.

a.    <u>Timing</u>.  The Chapter 11 Trustee shall continue to serve the interests of the Bankruptcy Estate until the Effective Date.  Upon the Effective Date, the position of Chapter 11 Trustee as it pertains to the Case shall terminate; at the same time, the position of Liquidating Trustee shall be created.

b.    <u>Identity and Appointment</u>.  The initial Liquidating Trustee shall be Alex D. Moglia, who shall cease being the Chapter 11 Trustee when he becomes the Liquidating Trustee. Subsequent Liquidating Trustees, if any, shall be selected as noted below.

c.    <u>Tenure</u>.  Any Liquidating Trustee shall continue to serve in that capacity until the earlier of (1) his or her resignation (to be filed with the Court at least thirty (30) days prior to its effective date), (2) his or her inability or failure to perform the duties of Liquidating Trustee for a period of thirty (30) consecutive days or more, (3) his or her death, (4) the Termination Date, as defined in the Plan or (5) upon his/her removal pursuant to the terms of the Plan and noted herein. Upon removal for any reason, the new Liquidating Trustee will be selected by the Oversight Committee (as defined below) subject to Court approval.

d.    <u>Compensation</u>.  As of the date of his or her appointment as Liquidating Trustee pursuant to the Plan, a Liquidating Trustee shall be entitled to compensation only as set forth in the Plan.  This compensation structure can be summarized as follows: (i) <u>Base Hourly Rate</u>.  The

Liquidating Trustee shall be entitled to a base hourly rate of compensation equal $450 per hour but subject to the cap noted below.  Such compensation shall only be payable after the Post Confirmation Service List has received notice that compensation has been sought, with a copy of all invoices, and have had at least twenty-one (21) days to object to the fees sought.  In the event that any party objects to such fees being paid, the Liquidating Trustee shall file a fee application with the Court and no payments shall be made until approved by the Court at a properly noticed hearing.  The Liquidating Trustee shall not seek payment more frequently than every two (2) months; (ii) Reimbursement of Costs.  The Liquidating Trustee shall be entitled to reimbursement on a monthly basis of all reasonable out-of-pocket expenses incurred for the benefit of the Liquidating Trust.  All requests for reimbursement shall be submitted in the same manner as fees.  Any disputes regarding the reasonableness of such expenses shall be resolved by the Court; (iii) Cap on Payments.  The hourly compensation and the reimbursement of expenses provided for herein shall be capped based on disbursements by the Liquidating Trustee after the Effective Date to parties-in-interest including creditors (the "Excess Recovery Payments") calculated based upon the percentages set forth in Code § 326(a) as follows:

- 25% of the first $5,000 of Extraordinary Income recovered and distributed;

- 10% of Extraordinary Income recovered and distributed in excess of $5,000 but less than $50,000;

- 5% of Extraordinary Income recovered and distributed in excess of $50,000 but less than $1,000,000; and

- 3% of Extraordinary Income recovered and distributed in excess of $1,000,000.

e.    Duties. The Liquidating Trustee shall be responsible for (1) implementing all strategies for the recovery of Extraordinary Income and handling the day-to-day management of any

litigation or other activity commenced for that purpose including, without limitation, the negotiations of any settlements in connection with such litigation; (2) retaining and paying such Professionals as may be required to implement such strategies, and reviewing any requests for payment or reimbursement of expenses to any Professionals retained by Liquidating Trustee; (3) the orderly and efficient completion of the claims objection process; (4) control of the Debtor and, if needed, acting as manager; and (5) providing the Oversight Committee with all information it may request regarding Extraordinary Income recovery efforts, the fees or expenses incurred by the Liquidating Trustee or any Professionals or others retained by the Liquidating Trustee, any disbursement of funds which exceeds ten thousand dollars ($10,000.00), and the status of the Extraordinary Income. Additionally, the Liquidating Trustee shall comply with L.R. 3020-1, provide to the Oversight Committee on a privileged basis, quarterly written litigation summaries which shall set forth the status of all litigation, the fees and expenses expended in connection with each piece of litigation, the anticipated recovery to be generated by each piece of litigation, and a calendar of future events in each piece of litigation.  The Liquidating Trustee shall have authority to negotiate settlements for any litigation or other action pertaining to the recovery of Extraordinary Income, but subject to the terms of the Plan and FRBP 9019.

    f. <u>Professionals</u>.  Upon notice, with twenty-one (21) days to object, to the Oversight Committee and the Post Confirmation Service List, the Liquidating Trustee may employ professionals, provided such professionals meet the requirements of Bankruptcy Code Section 327. If there is an objection to any professional, employment will be decided by the Court after notice and hearing.  The professionals employed by the Chapter 11 Trustee will automatically be deemed to be retained by the Liquidating Trustee without the necessity for additional application.  Currently, the Liquidating Trustee expects to retain: (i) Shuker & Dorris, as general counsel on an hourly basis with the same rates as set forth in the Application to Employ Shuker &Dorris; (ii) Moglia Advisors as forensic and financial advisor on an hourly basis with the same rates as set forth in the Application to

Employ Moglia Advisors; (iii) Felsberg Advogados, as the Liquidating Trustee's special counsel in respect of issues in Brazil, on an hourly basis with the same rates as set forth in the Application to Employ Thomas Felsberg and the Law Firm of Felsberg Advogados; and (iv) Genovese, Joblove & Battista as special counsel for matters, and with a fee structure, set forth in the Litigation Analysis. The Liquidating Trustee may also employ special litigation counsel on a contingency basis or blended basis but such will be subject to review and approval of the Oversight Committee. Compensation for professionals retained by the Liquidating Trustee may be paid upon notice of requested fees and expenses (filed no more than every 60 days), with such notice providing twenty-one (21) days to object, and served along with invoices, upon the Oversight Committee and the Post Confirmation Service List. If an objection is timely filed, the fee notice will be set for hearing and no amounts paid absent Court order after notice and hearing.

      C.    <u>Oversight Committee.</u>

      a.    <u>General</u>. On the Effective Date, an Oversight Committee (the "OC") shall be created consisting of: (i) a representative named by Stanley Black and Decker ("SBD"); (ii) a representative named by the Creditors Committee (who may be a current member of the Creditors Committee); and (iii) a representative chosen jointly by SBD and the Creditor's Committee but reasonably acceptable to the Chapter 11 Trustee. The exact identity of each member, and notice address, shall be filed not later than five (5) days prior to Confirmation. Each member of the OC shall serve without compensation.

      b.    <u>Duties</u>. The OC shall have standing as a party-in-interest under 11 U.S.C 1109 and be consulted by the Liquidating Trustee prior to: (i) retention of professionals for the Liquidating Trustee (other than existing professionals); (ii) terms of professional retention; (iii) approval of any expenses in excess of $10,000; (iv) any settlement of Motion under FRBP 9019 of a Claim, Cause of Action or controversy in excess of $50,000; (v) any settlement of Claims objections; (vi) the proposed sale, of any asset in excess of $25,000; (vii) the abandonment of any asset; and

(viii) other duties as consistent with a committee exercising oversight of a liquidating trustee.  If, after such consultation, the Liquidating Trustee cannot obtain OC approval, the Liquidating Trustee may still seek Court approval.  Approval of the OC shall not be a substitute for Court approval.  The Liquidating Trustee will give periodic review of existing and upcoming litigation and any claims of litigation.

          c.    <u>Powers</u>.  The OC will have standing to appear and be heard as a party-in-interest under 11 U.S.C § 11009 on any matter brought before the Court, including, without limitation, standing to object to: (i) the proposed retention (or terms thereof) of any professional proposed to be retained by the Liquidating Trustee; (ii) the allowance of professional fees and reimbursement of expenses; and (iii) any compromise under FRBP 9019.  If a member of the OC resigns or is removed for cause, the new member shall be selected by the remaining members.  The OC shall also, upon unanimous vote, have the power to replace the Liquidating Trustee for cause including breach of duty, incapacity, fraud, or gross negligence. To remove the Liquidating Trustee, the OC must first give five (5) business days' written notice specifying the cause. Prior to the expiration of the five (5) days, the Liquidating Trustee may challenge such removal by filing a motion with the Court which, after notice and hearing, shall determine whether removal is warranted.  The existing Liquidating Trustee shall remain in place until determination of any challenge by the Bankruptcy Court.  If a Liquidating Trustee resigns or is removed pursuant to the terms of the Plan as reflected herein, the OC, by unanimous vote, shall select a replacement Liquidating Trustee.

          d.    <u>Counsel</u>.  The OC shall, upon unanimous consent, be entitled to retain legal counsel with such legal counsel compensated by the Liquidating Trust pursuant to the same mechanism applicable to professionals retained by the Liquidating Trustee.

D.    <u>Authority of the Liquidating Trust</u>.

The Liquidating Trust, through the Liquidating Trustee, shall have the full and complete power and authority to perform the following acts, in addition to any powers granted by law or conferred to it by any other provisions of the Plan; provided, however, that enumeration of the following powers shall not be considered in any way to limit or control the power of the Liquidating Trust to act as specifically authorized by any other provision of this Plan and to act in such manner as the Liquidating Trust may deem necessary or appropriate to discharge all obligations assumed by the Liquidating Trust or provided herein and to conserve and protect the Trust Assets or to confer on the Creditors the benefits intended to be conferred upon them by this Plan. The Liquidating Trust will also automatically be substituted as a party in any pending Causes of Action and have the full rights and powers of the Debtor in any such action without the requirement of obtaining further order from the Court. In addition to foregoing, the Liquidating Trust's authority shall include, but not be limited to, the ability to:

1.    Perfect and secure the Liquidating Trust's right, title and interest to all property comprising the Trust Assets.

2.    Reduce all Trust Assets to the Liquidating Trust's possession and hold same.

3.    Hire one or more professionals to assist in the collection and liquidation process.

4.    Release, convey or assign any right, title or interest in the Trust Assets.

5.    Deposit Estate funds, proceeds, and draw checks and make Distributions.

6.    Take such other action as the Liquidating Trust may determine to be necessary or desirable to carry out the purpose of the Plan.

7.    Commence or prosecute, for its own account or in the name of the Debtor, the Causes of Action, any lawsuit or other legal or equitable action, including filing objections to Claims, in any court of competent jurisdiction, which are necessary to carry out the terms and

conditions of the Plan. The Liquidating Trustee shall also be vested with all right, powers and benefits afforded to a "trustee" under Section 704 and 1106 of the Bankruptcy Code, including specifically, the power to waive any attorney-client privilege which existed for the Debtor prior to Confirmation.

8.      Settle, compromise or adjust pursuant to the standards of Bankruptcy Rule 9019 (which shall be deemed to apply to all Post-Confirmation settlements), any disputes or controversies in favor of, or against, the Liquidating Trust, subject to review by the OC and approval by the Bankruptcy Court.

9.      Prepare and file any required tax returns.

E.      <u>Court Approval</u>.

Although full operational control of the Liquidating Trust will be vested in the Liquidating Trustee, the Liquidating Trustee will be required to obtain OC approval for the matters noted *infra* and  Court approval for: (a) any compromise or settlement of any Causes of Action or Objection to Claim; (b) any asset sale not specifically authorized in the Plan in excess of $10,000.00; and (c) payment of any fees or expenses to which an objection has been filed.  The approvals required hereunder may be obtained by the use of negative notice upon fourteen (14) days' notice to the OC and any party who provides notice that it wishes to be notified of the actions of the Liquidating Trustee contemplated herein ("Post Confirmation Notice"). A request to receive Post Confirmation Notice shall be filed with the Court and served on the Liquidating Trustee. The Liquidating Trust via the Liquidating Trustee may retain professionals on such terms as the Liquidating Trustee deems reasonable subject to review by the OC, without Bankruptcy Court approval, except that payments to the professionals for Post-Confirmation Fees and Expenses shall be made only as noted herein.

F.    Operations of the Liquidating Trust.

1.    The Liquidating Trustee shall have full and complete authority to perform all acts, execute all documents and make all payments and disbursements of funds directed to be done, executed, performed, paid and disbursed by the provisions of the Plan on behalf of the Liquidating Trust.

2.    The Liquidating Trustee shall prepare monthly reports regarding the distribution of Trust Assets and recoveries obtained from Causes of Action. The Liquidating Trustee shall also prepare a budget for the planned liquidation of the Trust Assets, which takes into consideration the expected expenses of liquidating the Trust Assets.

3.    The Liquidating Trustee shall keep an accounting of receipts and disbursements, which shall be open to inspection and review by the Court and creditors of the Debtor (upon reasonable notice, and without unduly interfering with the operations of the Liquidating Trustee). The Liquidating Trustee shall provide copies of quarterly reports to creditors who request same in writing and shall be responsible for payment of all U.S. Trustee fees.

4.    No recourse shall ever be had, directly or indirectly, against the Liquidating Trustee, his officers or directors, or any employee or professional retained of the Liquidating Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidating Trustee under the Plan or by reason of the creation of any indebtedness by the Liquidating Trustee under this Plan for any purpose authorized by the Plan, it being expressly understood and agreed that all such liabilities, covenants, and agreements of the Liquidating Trustee, its officers, directors and employees, whether in writing or otherwise, under this Plan shall be enforceable only against, and be satisfied only out of, the Trust Assets, or such part thereof as shall, under the terms of any such agreement, be liable therefor or

shall be evidence only of a right of payment out of the income, proceeds and avails of the Trust Assets, as the case may be; every undertaking, contract, covenant, or agreement entered into in writing by the Liquidating Trustee shall provide expressly against the personal liability of the Liquidating Trustee.

5.      The Liquidating Trustee shall not be liable for any act he may do, or omit to do hereunder while acting in good faith and in the exercise of his best judgment, and the fact that such act or omission was advised, directed or approved by an attorney acting as attorney for the Liquidating Trustee, shall be conclusive evidence of such good faith and best judgment. However, this paragraph shall not apply to any gross negligence, willful misconduct, or fraud by the Liquidating Trustee or his agents, officers, or employees.

G.      Distributions.

a.      Order of Payments.  As of the Effective Date, all Allowed Class 1 and 2 Claims should be fully satisfied and all Interests shall be extinguished, all as provided for in the Plan. Allowed Class 3 Claims shall be paid as provided for herein. Payments shall be mailed to the address indicated on each claim, or to such other address as claimant may provide to the Liquidating Trustee.  Payments will be made by check unless the Liquidating Trustee agrees to another method.

b.      Final Payment.  Upon the occurrence of the Termination Date, the Liquidating Trustee shall, as rapidly as practical in light of any ongoing Extraordinary Income recovery activities, distribute all remaining funds in the Extraordinary Income Account as provided for in the Plan.  In the event that the amount of such Final Payment exceeds the aggregate unpaid balance of all remaining Allowed Claims, then any excess Extraordinary Income above such level shall be divided among all Holders of Allowed Claims on a *pro rata* basis.  After making the Final Payment, the Liquidating Trustee shall close the Extraordinary Income Account.

c.      Extraordinary Income.  Extraordinary Income is defined in Article 1. Extraordinary Income shall only be used as provided for in the Plan.  Since the Debtor is no longer

engaged in its ordinary business operations after consummating the sale of substantially all of its assets, all income received by the Liquidating Trustee after the Petition Date will be Extraordinary Income.

H.    Creditors Committee.

On the Effective Date, the Creditors Committee will be dissolved with no further duties.

I.    Dissolution of the Liquidating Trust.

Upon making the Final Distribution under the Plan, the Liquidating Trustee shall file a final report and if required, a final tax return and dissolve the Liquidating Trust.

J.    Procedures for Resolving Disputed Claims.

1.    Prosecution of Objections to Claims.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, the Liquidating Trustee shall have the exclusive right to make and file objections to all Claims.  All objections commenced prior to the Confirmation Date shall be finished by the Liquidating Trust.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made within 180 days after the Effective Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order, or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that either Debtor had immediately prior to the commencement of the Bankruptcy Cases against or with respect to any Claim or Equity Interest, with the exception of claims against any creditor who holds a stipulated and Allowed Claim under the Plan.  Except as set forth in the Plan, upon Confirmation the Liquidating Trust shall have, retain, reserve and be entitled

to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that either Debtor had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

2.      <u>Estimation of Claims</u>.

Pursuant to the Plan, the Chapter 11 Trustee may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to § 502(c) of the Code, regardless of whether the Chapter 11 Trustee has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Chapter 11 Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

3.      <u>Cumulative Remedies</u>.

In accordance with the Plan, all of the aforementioned Claims objections, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  Until such time as an Administrative Claim, Claim, or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, distributions, and voting under the Plan.

4.    Payments and Distributions on Disputed Claims.

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid by the Liquidating Trustee such that the Holder of such Allowed Claim receives all payments and distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question.  Except as otherwise provided in the Plan, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order.  Unless otherwise agreed to by the Liquidating Trust or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a distribution until such dispute is resolved by settlement or Final Order.

5.    Allowance of Claims and Interests.

(i)    Disallowance of Claims.

According to the Plan, all Claims held by entities against whom the Debtor or Chapter 11 Trustee has obtained a Final Order establishing liability for a Cause of Action under  §§ 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Code shall be deemed disallowed pursuant to § 502(d) of the Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that entity have been settled or resolved by a Final Order and all sums due the Liquidating Trust by that Entity are turned over to the Liquidating Trust.  The Liquidating Trust reserves and shall have the exclusive right and authority to bring any Causes of Action before and after the Effective Date.

(ii)    Allowance of Claims.

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Cases, unless and until such Claim or Equity Interest is deemed Allowed under the

Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Cases allowing such Claim or Equity Interest.

(iii)    Determination of Claims.

Unless otherwise ordered by the Bankruptcy Court, and except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court on or before one hundred and eighty (180) days following the Effective Date (unless such period is extended by the Bankruptcy Court) and the Confirmation Order shall include appropriate language to that effect. Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Case, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and distribution. Upon receipt of a timely-filed Proof of Claim, the Chapter 11 Trustee or the Liquidating Trustee, as appropriate, or any other party in interest may file a request for estimation along with its objection to the Claim set forth therein. The determination of Claims in estimation hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and distribution. Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Rules and the need for prompt determination of the Disputed Claim.

(iv)    Determination of Allowed Amounts.

The treatment prescribed for Claims shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of the Allowed Amount of such Claim by agreement or through the entry of a Final Order. Notwithstanding

Confirmation of the Plan, the Liquidating Trustee, shall have the right to object to any Claim for any reason authorized by applicable bankruptcy and non-bankruptcy law as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.  Entry of the Confirmation Order shall be deemed to be recognition that the Court expressly retains jurisdiction as to determination of all such issues pursuant to the terms of the Plan and of the Confirmation Order.

6.    Controversy Concerning Impairment.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date.  If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

**ARTICLE VII – MISCELLANEOUS.**

A.    Authority to Effectuate the Plan.

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides that all matters provided for under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court.  The Liquidating Trustee shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve consummation and carry out the Plan.

B.    Post-Confirmation Status Report.

Pursuant to the Plan, within 90 days of the entry of the Confirmation Order, the Liquidating Trustee will file a status report with the Bankruptcy Court attaching a detailed accounting of all payments made under the Plan and explaining what progress has been made toward consummation of the confirmed Plan.  The status report will be served on the United States

Trustee, and those parties who have requested special notice post-confirmation.  The Bankruptcy Court may schedule subsequent status conferences in its discretion.

        C.      <u>Treatment of De Minimis Claims.</u>

To avoid the disproportionate expense and inconvenience associated with making distributions in amounts of less than $25.00 each with respect to Allowed Class 3 Claims, the Liquidating Trustee shall not be required to make, and shall be excused from making, distributions or payments in amounts of less than $25.00 to any holders of Allowed Class 3 Claims. However, any payment not made due to its *de minimis* nature shall accrue for the benefit of its Allowed Claimant and shall be added to any additional payment due to such Claimant in the event a subsequent payment is made by the Liquidating Trustee.

        D.      <u>Transfer of Claims.</u>

If the holder of any Claim shall transfer such Claim on or after the Effective Date, it shall immediately advise the Liquidating Trustee in writing of such transfer.  The Liquidating Trust shall be entitled to assume that no transfer of any Claim has been made by any holder unless and until the Liquidating Trustee shall have received written notice to the contrary.  Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Liquidating Trustee shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

        E.      <u>Setoff.</u>

Subject to the limitations provided in Section 553 of the Code, the Liquidating Trustee may, but shall not be required to, set off against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature

whatsoever the Debtor, the Liquidating Trust, or the Liquidating Trustee may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim against such Holder.

      F.    <u>Discharge and Release.</u>

      Since the sole goal of the Plan is to generate the maximum amount of Extraordinary Income possible for the benefit of the Holders of Allowed Claims, the Plan does not provide for the discharge of any claims or liabilities.

      G.    <u>Term of Injunction or Stays.</u>

      Unless otherwise provided in the Confirmation Order, all injunction or stays provided for Chapter 11 cases pursuant to sections 105 or 362 of the Code or previously imposed in this case by the Court or otherwise in existence on the Confirmation Date shall remain in full force and effect until the entry of a final decree dismissing this Case.

      H.    <u>Corporate Actions.</u>

      All matters provided for under the Plan involving the corporate structure of the Debtor or the Liquidating Trust, or any corporate action to be taken by or required of the Debtor or the Liquidating Trust or the Liquidating Trustee, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by any entity.

      I.    <u>Successors and Assigns.</u>

      The rights, benefits, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

J.    <u>Preservation, Prosecution, and Defense of Causes of Action</u>.

Except as set forth herein, upon Confirmation, the Liquidating Trustee shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, including all pending adversary proceedings, whether or not such causes of action have been commenced as of the Effective Date, and shall be substituted as the real party-in-interest in any such actions commenced by or against the Debtor, the Bankruptcy Estate, or the Committee. The Liquidating Trustee shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Liquidating Trustee  and collection; provided, however, that the Liquidating Trustee shall be authorized at any point in any litigation (a) to enter into such settlements as the Liquidating Trustee deems to be in the best interest of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (b) to abandon, dismiss and/or decide not to prosecute any such litigation if the Liquidating Trustee deems such action to be in the best interest of creditors without Bankruptcy Court or other approval.

K.    <u>Conditions to Effectiveness</u>.

The Effective Date shall occur upon the conditions set forth in this Plan. However, the Effective Date shall not occur until the entry of the Confirmation Order by the Bankruptcy Court in form and content acceptable to Chapter 11 Trustee and expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; *provided, however*, that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, the Chapter 11 Trustee may in writing elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.  The Effective Date shall automatically occur without further order of the Bankruptcy Court, provided that all of the conditions to effectiveness of the Plan set forth herein have been met.

L.      Police Power.

Nothing in this Article VII shall be deemed to affect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtor for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to § 1141 of the Code.

M.      Revocation and Withdrawal of this Plan.

The Chapter 11 Trustee reserves the right to withdraw this Plan and Disclosure Statement at any time before entry of the Confirmation Order.  If (i) the Chapter 11 Trustee revokes and withdraws this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

N.      Modification of Plan.

The Chapter 11 Trustee may seek to amend or modify this Plan in accordance with § 1127(b) of the Code, remedy any defect or omission, or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

On or before substantial consummation of the Plan, the Chapter 11 Trustee may issue, execute, deliver or file with the Bankruptcy Court, or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

O.      Retention of Jurisdiction.

After the Effective Date, the Liquidating Trustee will be free to perform all functions assigned to it herein without approval of the Bankruptcy Court, except as specifically set forth herein. The itemization below is in no way meant to limit, restrict, or circumscribe the inherent

jurisdictional authority of the Bankruptcy Court. Confirmation of the Plan acts as consent of the parties to agree to the Bankruptcy Court's ability to enter binding final judgments and rulings as the Bankruptcy Court will continue to retain jurisdiction in this Bankruptcy Case to determine or take the following actions:

1.    All objections to the allowance of Claims and Interests and the compromise of Claims;

2.    All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in Debtor's case by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; provided, however, that fees of professionals for services rendered after the Effective Date may be paid by the Liquidating Trustee pursuant to Article VI, section B(f) of the Plan.

3.    Any adversary proceedings or contested matters brought by the Debtor or the Liquidating Trustee, the proceedings then pending or thereafter brought pursuant to §§ 544, 545, 547, 548, 549, and 550 of the Code, or other proceedings calculated to generate payments to Holders of Allowed Class 3 Claims;

4.    All controversies and disputes arising under or in connection with the Plan;

5.    The enforcement and interpretation of the provisions of the Plan;

6.    To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.    Any motion to modify the Plan in accordance with Code § 1127, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.    All Claims arising from the rejection of any executory contract or lease;

9.    Such other matters as may be provided for in the Code or the Plan;

10.    To protect the Property of the Estate from adverse claims or interference inconsistent with the Plan;

11.    To ensure that Distributions are accomplished as provided herein and to resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law or under a contract or agreement; and

12.    To hear and determine any action or controversy by or against the Liquidating Trust.

P.    <u>Headings</u>.

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

Q.    <u>Confirmation Without Acceptance by all Impaired Classes: "Cramdown."</u>

The Code contains provisions for confirmation of a plan even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted it. These "cram-down" provisions of the Code are set forth in Section 1129(b) of the Code.

The Plan may be confirmed under the cram-down provisions and be binding on a non-accepting impaired Class if, in addition to satisfying the other requirements of Section 1129 of the Bankruptcy Code, (a) it "does not discriminate unfairly" and (b) it is "fair and equitable" with respect to each Class of Claims that is impaired under, and has not accepted, the Plan.  As used by the Code, the phrases "discriminate unfairly" and "fair and equitable" have narrow and specific meanings unique to bankruptcy law.

The requirement that a plan not "discriminate unfairly" means that a dissenting class must be treated equally with respect to other classes of the same rank.  The Proponents believe that the Plan does not "discriminate unfairly" with respect to any Class of Claims because no Class is afforded treatment which is disproportionate to the treatment afforded other Classes of equal rank.

The "fair and equitable" standard, also known as the "absolute priority rule," requires that a dissenting Class receive full compensation for its Allowed Claims before any junior Class receives any distribution. The Chapter 11 Trustee believes the Plan is fair and equitable to all Classes pursuant to this standard.

Accordingly, if necessary, the Chapter 11 Trustee believes that the Plan meets the requirements for confirmation by the Court, notwithstanding the non-acceptance by an Impaired Class of Claims.

The Chapter 11 Trustee intends to evaluate the results of the balloting and determine whether to seek confirmation of the Plan in the event that Classes of Impaired Claims do not vote to accept the Plan. The determination as to whether to seek confirmation under such circumstances will be announced before or at the Confirmation Hearing.

R.    Notices.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by facsimile transmission or mailed by United States Mail to the following:

> **Counsel for the Chapter 11 Trustee**:
> R. Scott Shuker, Esquire
> Mariane L. Dorris,  Esquire
> Shuker & Dorris, P.A.
> 121 S. Orange Ave., Suite 1120
> Orlando, Florida 32801
>
> **United States Trustee:**
> Audrey Aleskovsky, Esq.
> 400 W. Washington Street, Suite 1100
> Orlando, Florida 32801

S.    Manner of Payment.

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Liquidating Trustee, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Liquidating Trustee.

T.      Tax Consequences of the Plan.

The Plan has been designed to maximize the opportunities for the recovery by creditors of the maximum possible amount of Extraordinary Income.  The effect which such recoveries and their pro rata distribution to Holders of Allowed Claims will have on the tax situation of each such Holder will depend on their own unique circumstances.  The Liquidating Trust will be a limited life trust and, as such, not subject to federal income taxes.  Accordingly, no generic statements can be offered regarding the potential tax consequences of confirmation of the Plan upon such Holders and all such Holders are encouraged to seek advice on their specific situation from competent tax advisors in the jurisdiction in which such Holders are resident for tax reporting purposes.

U.      Transmittal of Distributions to Parties Entitled Thereto.

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid.  All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made.  Except as otherwise agreed with the holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive distributions, (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (v) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor's books and records.

V.      Distribution of Unclaimed Payments.

If the Holder of an Allowed Claim fails to negotiate a check issued to such Holder

pursuant to the Plan within ninety (90) days after relevant Payment Date on which such check was issued, then the Liquidating Trustee shall provide written notice to such Holder at the Holder's last known address as set forth in the respective proof of claim stating that unless such Holder negotiates such check within thirty (30) days of the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder's Claim shall no longer be deemed to be Allowed, and such Holder shall be deemed to have no further Claim in respect of such check and shall not participate in any further distributions under the Plan.

If a distribution is mailed pursuant to the Plan to any Holder of an Allowed Claim is returned to the Liquidating Trustee due to an incorrect or incomplete address for the Holder of such Allowed Claim, or if the Claimant moved, the Liquidating Trustee shall take reasonable efforts to locate a valid current address such Claimant, and re-send the check to such current address. If no claim is made to the Liquidating Trustee as to such distribution within one hundred twenty (120) days of the return of such distribution, then the amount of Cash attributable to such distribution shall be deemed to be unclaimed and such Holder shall be deemed to have no further Claim in respect of such distribution and shall not participate in any further distributions under the Plan.

Any unclaimed Cash distribution as described above shall be retained by the Liquidating Trustee for future distribution to the Holders of Allowed Class 3 Claims as provided for in the Plan or for inclusion in the final payment described above, as appropriate.

**RESPECTFULLY SUBMITTED** this 16th day of December 2019.

/s/ R. Scott Shuker
R. Scott Shuker, Esq.
Mariane L. Dorris, Esq.
John B. Dorris, Esq.
Shuker & Dorris, P.A.
121 S. Orange Ave., Suite 1120
Orlando, FL 32801
Telephone: (407) 337-2060
Facsimile: (407) 337-2050
*Counsel for Chapter 11 Trustee*

**EXHIBIT A**

# LITIGATION ANALYSIS

As noted in the Liquidation Analysis, the assets of the post-confirmation estate will consist primarily of Cash and Causes of Action. The Causes of Action comprise any and all legal claims and rights of the Bankruptcy Estate including existing adversary proceedings, future actions under Bankruptcy Code Sections 544 through 553, and clams and rights held by Debtor as of Petition Date under tort and contract theories. The Chapter 11 Trustee has divided the Causes of Action into the following categories: (a) Avoidance Actions; (b) Professional Liability Actions; (c) Financial Institution Actions; (d) Insider/Responsible Party Actions; and (e) Collection Actions.

THE LIST BELOW IS NON-EXCLUSIVE AND ADDITIONAL ACTIONS AND DEFENDANTS WILL LIKELY BE ADDED POST CONFIRMATION. THE FAILURE TO LIST ANY ACTION OR DEFENDANT BELOW WILL NOT BE DEEMED A WAIVER AS TO ANY PARTY OR CAUSE OF ACTION NOT SO LISTED.  THE INCLUSION OF A POTENTIAL TARGET OR DEFENDANT IN ONE OR MORE OF THE LISTED CATEGORIES IS NOT INTENDED TO PRECLUDE OR BAR THE ASSERTION OF OTHER CAUSES OF ACTION AGAINST SUCH PERSON OR ENTITY.

I.   Avoidance Actions:  Avoidance actions consist of those arising under Bankruptcy Code Sections 544 through 553. The two most common avoidance actions are fraudulent transfer actions and preference actions, and, in this particular instance, a number of unauthorized post-petition transfers, as well.

   a.   Fraudulent Transfers:
      Sections 544 and 548 of the Bankruptcy Code establish Causes of Action for both actual and fraudulent transfers under state and federal law.  Generally speaking, an actual fraudulent transfer is a transfer made by a debtor with the actual intent to hinder, delay and defraud creditors.  A constructive fraudulent transfer requires no such actual intent, but is a transfer made while the debtor is in impaired financial condition, for which the debtor fails to receive less than reasonably equivalent value in exchange.

      Over the course of IPS' operations, it failed to pay freight bills of its customers with total unpaid obligations related to such failure totaling in excess of $80,000,000 (the "Freight Payment Claims"). Because customers transferred money to IPS to pay the freight bills, there should have been no Freight Payment Claims had IPS properly transferred customer money to pay customer freight bills. Based on a review by the Chapter 11 Trustee, funds received by IPS for freight bills were used to cover operating losses, pay the freight bills of a different customer, make loans or "invest" in businesses, or make transfers to insiders and third parties for no value. While it appears a significant amount of the funds giving rise to the Freight Payment Claims or to cover losses going back over a decade (at least $35,000,000), there were significant funds from Freight Payment Claims used for transfers subject to avoidance as a fraudulent transfer.
      The Amended Plan expressly preserves all Causes of Action of this type, both

2

actual and constructive fraudulent transfers, and all remedies against both the initial transferee and any successor transferee under section 550(a) of the Bankruptcy Code. Due to the volume of the transfers made from the Debtor's many accounts at Bank of America, Wells Fargo Bank, Regions Bank, and potentially other institutions, and the lack of visibility into the subsequent transfers made by certain of the initial transferees, it is functionally impossible for this Amended Disclosure Statement to identify the potential targets of fraudulent transfer claims. Accordingly, the disclosures herein are not intended as comprehensive, but represent the best effort by the Chapter 11 Trustee and his counsel to identify with specificity those transfers that will be investigated and pursued under applicable law.

b. Preference Actions:

Preference Actions are based on Bankruptcy Code Section 547, which allows avoidance and recovery of payments on antecedent debts incurred within 90 days of Petition Date (1 year for insiders). A list of all payments made in the preference period is available upon request. However, the Bankruptcy Estate has waived preference claims as to any former customer/creditor with whom a settlement was reached as to existing bank accounts noted in the 9019 Motion and Second 9019 Motion.

c. Post-petition Transfers:

Post-petition Transfer Actions are based on Bankruptcy Code Section 549, which allows for the avoidance and recovery of unauthorized payments made after the commencement of the bankruptcy case. Based on a review by the Chapter 11 Trustee a number of unauthorized transfers were made on or after January 25, 2019.

d. Existing Avoidance Actions:

The Chapter 11 Trustee has filed, or will file prior to confirmation, the following avoidance actions:

| Defendant | Amount in Controversy[5] |
|---|---|
| (i) ExFreight of Florida, LLC<br>ExFreight of Zeta, LLC<br>Dacaco Holdings, LLC<br>Stephen Huntley | $1,300,000 |
| (ii) Michael McNett | $1,425,140 |
| (iii) Jacques McNett | $961,622 |

---

[5] These amounts are estimates and may increase or decrease.

3

(iv) Michael O'Rourke                 $370,975

(v)  Anthony Albanese                 $12,000

e.   Potential Avoidance Actions (non-exclusive list):

| | Defendant | Amount in Controversy |
|---|---|---|
| (i) | Douglas Cook | TBD |
| (ii) | Andria Harscher | TBD |
| (iii) | Charles Casey | $2,500,000.00 |
| (iv) | PCN Network LLC | $315,765.09 |
| (v) | Cobb Cole, P.A. | $34,330.50[6] |
| (vi) | Tranistic Data | $54,634.23 |
| (vii) | Conduent Business Services | $54,687.73 |
| (viii) | AT &T Global | $4,667.42 |
| (ix) | Spherion Staffing | $15,500.97 |
| (x) | The Freight Rate Co. | $175,225.00[7] |
| (xi) | Upchurch, Bailey & Upchurch, P.A. | $86,735.49[8] |
| (xii) | Roadrunner Transportation Services | $40,000.00 |
| (xiii) | Synter Resources | $18,473.10 |
| (xiv) | Help Systems | $20,000.00 |
| (xv) | Owen Consulting, LLC | $40,000.00 |
| (xvi) | Patrick Gearhart | $31,750.22 |
| (xvii) | Sellers Logistics | $22,000.00 |

---

[6] May also assert a professional liability claim.

[7] May also assert an action against insiders with respect to The Freight Rate Co.

[8] May also assert a professional liability claim.

4

II.    <u>Professional Liability Actions:</u> Professional Liability Actions include actions against CPAs, financial advisors, lawyers and other professionals.  In general, any professional is required to perform to a certain standard of care.  If such professional performs below the standard of care, the Bankruptcy Estate has a claim, and may seek recovery of damages. Given the amount of Freight Payment Claims, the Chapter 11 Trustee believes that certain professionals, subject to continued investigation, may have liability to the Bankruptcy Estate. Through counsel, the Liquidating Trustee will request documents and 2004 exams of potential defendants. The non-exclusive list of professionals[9] being investigated include:

| Professional Firm | Services |
|---|---|
| (i) Cobb Cole, P.A. | Legal |
| (ii)  Martin, Klayer, & Associates | Accounting[10] |
| (iii)    Klayer & Associates, Inc. | Accounting[11] |
| (iv) Moore Group, Inc. | Auditing |
| (v)  Grant Thornton | Accounting |
| (vi) Smith Hood Perkins Loucks | Legal |
| (vii) Smith Bigman Brock | Legal |
| (viii)  Upchurch, Bailey & Upchurch, P.A. | Legal |

III.    <u>Financial Institutions:</u> The Chapter 11 Trustee is investigating whether certain financial institutions may have liability to the Bankruptcy Estate for failure to comply with the "Know your Customer" rules; failure to properly adhere to account agreements, and/or failure to act according to customary banking standards including improper honoring of checks. Although the Chapter 11 Trustee is still investigating, he believes the following financial institutions may have liability: Bank of America, Regions Bank, and Wells Fargo.[12]  Through counsel, the Liquidating Trustee will request documents and 2004 exams to determine the merits of litigation and claims.

---

[9] Claims may exist against officers, directors, employees, partners, shareholders and members of such firms and entities in addition to the entity itself, **and all such claims are expressly preserved**.

[10] May also assert an avoidance action under Bankruptcy Code Section 550.

[11]  May also assert an avoidance action under Bankruptcy Code Section 550.

[12] Claims may exist against officers, directors, employees, partners, shareholders and members of such firms and entities in addition to the entity itself, **and all such claims are expressly preserved.**

IV.    <u>Insider/Responsible Parties:</u> Based on the amount of Freight Payment Claims, the Chapter 11 Trustee has determined that certain officers, directors, owners, and others in control of IPS operations have liability for failure to perform up to the expected standard of care, failure to comply with fiduciary duties, neglect, intentional torts, and fraud.

    a.    <u>Existing Insider Actions:</u> The Chapter 11 Trustee has filed, or will file prior to confirmation, the following actions:

| <u>Defendant</u> | <u>Amount in Controversy</u> |
|---|---|
| (i) William Davies | $10,000,000 |

    b.    <u>Potential Insider Actions:</u>

| <u>Defendant</u> | <u>Amount in Controversy</u> |
|---|---|
| (i) Steven Huntley | TBD |
| (ii) Michael McNett | TBD |
| (iii) Jacques McNett | TBD |
| (iii) Dacaco, LLC | $85,000,000 |

V.    <u>Collection Actions:</u> Prior to Petition Date, IPS made loans to certain entities or individuals. All of these loans are in default. To the extent the Chapter 11 Trustee can confirm underlying instruments were executed, the Chapter 11 Trustee will commence collection actions. To the extent the Chapter 11 Trustee cannot confirm or locate underlying instruments, a suit for fraudulent transfer will be commend.  Based upon the condition of the Debtor's books and records, it is possible that the Liquidating Trustee will identify additional Causes of Actions against the named parties and other parties.

    a.    <u>Existing Collections:</u> The Chapter 11 Trustee has filed, or will file prior to confirmation, the following Collection Actions.

| <u>Defendant</u> | <u>Amount in Controversy</u> |
|---|---|
| (i) ExFreight of Florida, LLC<br>ExFreight of Zeta, LLC<br>Dacaco Holdings, LLC<br>Stephen Huntley | $1,100,000 |
| (ii) Carlos and Amanda Lira | $300,000 |
| (iii) Freight Rate Company | $1,700,000 |

b. <u>Potential Collection Actions:</u>

| Defendant | Amount in Controversy |
|-----------|----------------------|
| (i) Charles Casey | $2,5000,000 |
| (ii) Stephen Huntley | $150,000 |

VI.   <u>Fees and Expenses:</u> The litigation described by above will primarily undertaken by two law firms: Shuker & Dorris, P.A. and Genovese, Joblove & Battista, P.A. The areas of representation and fee structure of each is as follows:

a. <u>Shuker & Dorris:</u> The firm will represent the Liquidating Trustee in the matters set forth in Sections I, IV and V, and such other matters as may be agreed by and among the firm, the Liquidating Trustee and the Oversight Committee. The fees will be based on an hourly basis. Mr. Shuker's rate is $575 per hour. Other attorneys and paralegals in the firm have rates from $165 to $450. An exact amount of fees is impossible to predict but Mr. Shuker will report to the Liquidating Trustee and Oversight Committee as to fees incurred and expected as matters progress.

b. <u>Genovese Joblove & Battista:</u> The firm will represent the Liquidating Trustee in the matters set forth in Sections II and III, and such other matters as may be agreed by and among the firm, the Liquidating Trustee and the Oversight Committee. Subject to Court approval, the firm will bill on a blended basis with a greatly reduced hourly rate of $275 per hour plus 20% of any recovery (via settlement of judgment collection).

c. <u>Additional Professionals:</u>  In addition to the two law firms listed above, the Liquidating Trustee shall have the option to seek to engage additional professional firms to investigate and support the pursuit of Causes of Action, as necessary.